UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALAN A. TARZY, ESQ. | : |
| Plaintiff, | : |
| v. | : |
| ANDREW DWYER, DWYER & BARRETT, L.L.C., formerly known as THE DWYER LAW FIRM, L.L.C., | : |
| Defendants. | : |

Hon. John F. Keenan, U.S.D.J.

Civil Action No.
18-cv-1456 (JFK) (SDA)

**DEFENDANTS' BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) AND FOR PARTIAL DISMISSAL OF THE COMPLAINT**

Andrew Dwyer (AD-7793)
    Of Counsel and
    On the Brief

DWYER & BARRETT, L.L.C.
17 Academy Street, Suite 1201
Newark, New Jersey 07102
(973) 242-3636
andy@dwyerbarrett.com

Attorneys for Defendants

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .............................................................................................1

PROCEDURAL BACKGROUND ....................................................................................1

STATEMENT OF FACTS ...............................................................................................1

ARGUMENT

I.    BECAUSE THE LOCUS OF OPERATIVE FACTS FOR THIS
      CASE IS IN NEW JERSEY, DEFENDANTS' MOTION TO
      TRANSFER VENUE SHOULD BE GRANTED .......................................................3

II.   BECAUSE PLAINTIFF ONLY HAS A POTENTIAL CLAIM FOR
      QUANTUM MERUIT, DEFENDANTS' MOTION FOR PARTIAL
      DISMISSAL OF THE COMPLAINT SHOULD BE GRANTED............................12

      A.    Plaintiff's Breach Of Contract Claim Must Be Dismissed..........................12

      B.    Plaintiff's Other Equitable Contract Claims Must Be Dismissed ..............16

      C.    Plaintiff's Tort Claims Must Be Dismissed ................................................18

      D.    Plaintiff's Claim For Punitive Damages Must Be Dismissed ....................22

CONCLUSION ............................................................................................................22

i

## PRELIMINARY STATEMENT

Defendants, by their undersigned attorneys, respectfully submit this Brief in support of their motion to transfer venue to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 1404(a), and for partial dismissal of the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

## PROCEDURAL BACKGROUND

Plaintiff Alan Tarzy filed this action in the New York State Supreme Court on February 14, 2018.  Defendants were served on February 16, 2018.  Declaration of Andrew Dwyer, ¶ 57 (Mar. 9, 2018) ("Dwyer Decl.").  Defendants removed the action to this court on February 17, 2018.  Id., ¶ 60.

## STATEMENT OF FACTS

This action is a dispute over attorney's fees arising out of a prior lawsuit litigated in New Jersey.  Plaintiff Alan Tarzy is a New York attorney who was retained in February, 2013, to represent a New Jersey resident ("Client"), who worked in New Jersey for a company headquartered in New Jersey ("Company").[1]  The Client alleged he had been fired from his job in January, 2013, for discriminatory reasons, which would constitute a violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.  Complaint, ¶¶ 1, 6.  (Any references to the "Complaint" in this Brief are to the Complaint filed in this action, *not* to the complaint filed in the underlying New Jersey employment discrimination suit.)  Mr. Tarzy was not admitted in New Jersey, and so could not bring suit on the Client's behalf.  Mr. Tarzy contacted defendants in early June, 2013, about representing the Client in the employment discrimination case (although nothing had been filed anywhere at that point).  Complaint, ¶ 9.  Defendant Andrew Dwyer is an attorney admitted in New Jersey, and defendant Dwyer & Barrett,

---

[1] Because the underlying New Jersey lawsuit was ultimately settled pursuant to an Agreement with strict confidentiality provisions, defendants are endeavoring to avoid mentioning the particular parties or the details of the settlement in this Brief.  Complete information about the underlying New Jersey litigation is provided in the accompanying attorney declaration, which we are asking to file under seal.

L.L.C. is a law firm based in New Jersey.  Complaint. ¶¶ 2, 4.  The Complaint does not allege whether Mr. Tarzy performed any work at all for the Client prior to contacting defendants.

Mr. Tarzy alleges he met at his office in New York on June 13, 2013, with the Client and defendant Andrew Dwyer to discuss the case.  He claims on that date the attorneys made an *oral* agreement to split fees with Mr. Tarzy receiving 40% of any fees recovered, and defendants receiving 60%.  Complaint, ¶¶ 10-11.  He alleges the Client knew about and consented to this fee split, although there is nothing in writing showing the Client's agreement to any fee sharing arrangement.  Mr. Tarzy alleges an email was subsequently sent confirming the agreement to split fees, although the email quoted in the Complaint actually refers to a prior "phone discussion," and not to anything discussed at an in person meeting.  Complaint, ¶ 11.  The Complaint does not allege anything in writing about a fee split was ever given to the Client, and it does not allege the Client ever agreed in writing to any fee split.  See Complaint, ¶¶ 10-11.  Significantly, the Complaint does *not* allege there was any agreement by defendants to pay Mr. Tarzy a "referral fee."  Instead, the Complaint alleges the parties agreed "the attorneys would be sharing fees in connection with their joint representation of [Client]."  Complaint, ¶ 10; see also id., ¶ 10 (referring to "fee sharing arrangement" between the parties); id., ¶ 11 (the parties "agreed to divide the legal fees earned" and "to split any legal fees paid 60/40 in consideration of their joint representation of [Client]"). [2]

---

[2] Defendants dispute these allegations.  They maintain nothing was discussed at the June 13, 2013 meeting regarding fees at all.  Defendants allege on a subsequent phone call (where the Client was not present), Mr. Tarzy and Mr. Dwyer orally agreed to split fees with the expectation that both attorneys would be actively involved in the litigation, so the fees would be divided in proportion to the services performed.  This was never memorialized in a written agreement, and the Client's consent was never obtained, in writing or otherwise.  Dwyer Decl., ¶¶ 26-32 and Exhibits F and G annexed thereto.  As explained infra, this factual dispute is immaterial to Mr. Tarzy's claims, because under both New Jersey and New York ethics rules, no pure "referral fees" are allowed, and attorneys may only split fees based on a flat percentage (regardless of the services performed by each lawyer) if the client agrees to the split *in writing*.  New Jersey RPC 1.5(e); New York RPC 1.5(g).  Because Mr. Tarzy does not allege any written agreement with the Client regarding splitting fees, the alleged "contract" is invalid under both New Jersey and New York law, regardless of what allegedly occurred at the June 13, 2013 meeting.

This one meeting on June 13, 2013, is the only event alleged to have occurred in New York.  Once defendants agreed to represent the Client, a lawsuit was filed in New Jersey Superior Court.  Complaint, ¶ 13.  The case was litigated for the next three-and-a-half years in the New Jersey state court system.  Complaint, ¶¶ 13-15.  In January, 2017, the Client and the Company settled the lawsuit, and funds were disbursed to both pay the Client and to pay attorney's fees, per the terms of the Settlement Agreement in the underlying New Jersey discrimination lawsuit.  Complaint, ¶¶ 15-16.

Mr. Tarzy alleges defendants breached the alleged fee splitting agreement by failing to give him 40% of the fees generated by the settlement.  Complaint, ¶¶ 17-18.  The Complaint further alleges Mr. Tarzy was deceived or mislead by defendants.  The Complaint, however, does not allege a specific false representation defendants ever made.  Instead, the Complaint alleges Mr. Tarzy was deceived, because he was unfamiliar with New Jersey ethics rules, and defendants failed to disclose to him that the alleged fee-splitting agreement would be unethical, void and unenforceable under New Jersey law.  The Complaint specifically alleges that these omissions not only occurred when the parties allegedly entered into an agreement to split fees, but also that the omissions continued to occur for the next three-and-a-half years while the underlying discrimination suit was being litigated in New Jersey.  Complaint, ¶¶ 19-21.

Significantly, the Complaint never alleges there was anything in writing whereby the Client agreed or consented to any fee splitting arrangement between Mr. Tarzy and defendants.

## ARGUMENT

I.   **BECAUSE THE LOCUS OF OPERATIVE FACTS FOR THIS CASE IS IN NEW JERSEY, DEFENDANTS' MOTION TO TRANSFER VENUE SHOULD BE GRANTED**

Unlike subject matter jurisdiction, venue is a "personal privilege[]" that a party may waive.  Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979).  "In addition, a court may transfer a case from one district court to another, even if venue in the original

3

location is proper." I Create Int'l v. Mattel, Inc., 2004 U.S. Dist. LEXIS 15477, at *5 (S.D.N.Y. Aug. 4, 2004) (Keenan, J.) (copy annexed hereto). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).

"The decision to transfer an action 'lies within the sound discretion of the district court.'" Coker v. Bank of America, 984 F. Supp. 757, 764 (S.D.N.Y. 1997). As this Court has observed, "the United States Supreme Court has suggested that the Court's discretionary power in ruling on motions to transfer is very broad." Carta Cartoni Cellulosa, S.P.A. v. M.V. Costa Atlantica, 1986 U.S. Dist. LEXIS 28168, at *3 (S.D.N.Y. Mar. 14, 1986) (Keenan, J.) (copy annexed hereto).

> We believe that Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to transfer upon a lesser showing of inconvenience [than under the doctrine of forum non conveniens]. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.

Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955) (quoted in Carta Cartoni, supra). "The burden is on the defendant to make a showing that the proposed transferee district is a more convenient one, and that a trial in the transferee district would better serve the interests of justice." United States Fire Ins. Co. v. M/V "TFL Jefferson", 1985 U.S. Dist. LEXIS 18813, at *2 (S.D.N.Y. June 18, 1985) (Keenan, J.) (copy annexed hereto). "The goal of Section 1404(a) 'is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Ratner v. Martel Elecs. Corp., 2008 U.S. Dist. LEXIS 124174, at *10 (E.D.N.Y. Sept. 30, 2008) (copy annexed hereto). See also Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 372-73 (S.D.N.Y. 2006). "While normally the plaintiff's choice of forum should not be disturbed, '[t]he core determination under Section 1404(a) is the center of gravity of the litigation.'" Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co., 245 F.

4

Supp. 2d 523, 525 (S.D.N.Y. 2003); Iragorri v. United Techs. Corp., 274 F.3d 65, 71 (2d Cir. 2001).

On a motion to transfer venue, "a court must decide whether the action could have been brought in the transferee forum, and whether the convenience of the parties and the interests of justice warrant transfer." I Create Int'l v. Mattel, Inc., 2004 U.S. Dist. LEXIS 15477, at *5; Berman v. Informix Corp., 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998). Answering the first question is easy. Under 28 U.S.C. § 1391(b)(1), an action can be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Both defendants here "reside" in the District of New Jersey. Complaint, ¶¶ 2, 4. Likewise, under 28 U.S.C. § 1391(b)(2), the case could also be brought in the District of New Jersey because "a substantial part of the events or omissions giving rise to the claim occurred" there. There can be no question the first prong for transferring venue is met.

As to the second prong, as this court has explained:

> Courts weigh a number of factors in determining whether a transfer serves the convenience of the parties and the interests of justice. These factors include (1) the locus of operative facts, (2) the convenience of witnesses, (3) the convenience of parties, (4) the location of relevant documents and ease of access to sources of proof, (5) the availability of process to compel attendance of unwilling witnesses, (6) the relative means of the parties, (7) the transferee forum's familiarity with governing law, (8) the weight accorded plaintiff's choice of forum, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. . . . No single factor is determinative, and a court's discretion will not be overturned on appeal absent a clear showing of abuse.

I Create Int'l v. Mattel, Inc., 2004 U.S. Dist. LEXIS 15477, at *5-*6 (citations omitted); see also Ratner v. Martel Elecs. Corp., 2008 U.S. Dist. LEXIS 124174, at *11-*12; Larew v. Larew, 2012 U.S. Dist. LEXIS 2891, at *9-*10 (S.D.N.Y. Jan. 10, 2012) (copy annexed hereto).

> Of the nine factors listed above, the locus of operative facts carries significant weight. Hyland, 2003 U.S. Dist. LEXIS 22239, 2003 WL 22928644 at *5 ("primary factor"); Lighting World, Inc. v. Birchwood Lighting, Inc., 2001 U.S. Dist. LEXIS 16981, No. 01 Civ. 4751 (BSJ), 2001 WL 1242277 at *3 (S.D.N.Y. Oct. 16, 2001) ("most important" because it "informs the court's analysis of several other factors").

I Create Int'l v. Mattel, Inc., 2004 U.S. Dist. LEXIS 15477, at *9.  See also Kolko v. Holiday Inns, Inc., 672 F. Supp. 713, 716 (S.D.N.Y. 1987) ("[t]he public interest requires that 'localized controversies [be] decided at home'"); TM Claims Service v. KLM Royal Dutch Airlines, 143 F. Supp. 2d 402, 404 (S.D.N.Y. 2001) ("[t]he location of the operative events is a primary factor in determining a § 1404(a) motion to transfer"); Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d at 375 (the "locus of operative facts . . . is a 'primary factor' in a motion to transfer venue").

As noted, Mr. Tarzy's principal claims in this case are (a) defendants breached the alleged "agreement" to split fees, and (b) defendants made misrepresentations by omission.  Complaint, ¶¶ 17-21.  "For a breach of contract claim, the place of negotiation, execution, performance, and breach of the alleged contract are considered."  I Create Int'l v. Mattel, Inc., 2004 U.S. Dist. LEXIS 15477, at *9.  See also PI, Inc. v. Quality Prods., Inc., 907 F. Supp. 752, 757-58 (S.D.N.Y. 1995).  In this case, the location of the "negotiation" of the alleged contract ostensibly occurred in both districts, since the communications were by phone and email (with Mr. Tarzy in New York, and the defendants in New Jersey).  Dwyer Decl., ¶¶ 27-28 and Exhibit G. Everything else about the alleged "contract" occurred in New Jersey.  The performance and alleged "breach" by defendants consisted of the litigation of the New Jersey case, the ultimate settlement of the Client's claims against the Company, the payment of the settlement monies, and defendants' refusal to pay 40% of the attorney's fees to Mr. Tarzy.  All of these actions occurred in New Jersey – not New York.  Dwyer Decl., ¶¶ 6-15, 45-52.  Likewise, the disputed attorney's fees are deposited in a trust account in New Jersey.  Dwyer Decl., ¶ 3.

With regard to Mr. Tarzy's allegations of fraud or misrepresentation, these also all occurred in New Jersey.  "When examining claims for misrepresentation on a motion to transfer venue, 'misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they were received.'"  Larew v.

6

Larew, 2012 U.S. Dist. LEXIS 2891, at *19 (quoting In re Nematron Corp. Secs. Litig., 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1988)).  Again, the alleged misrepresentations and omissions supposedly made by defendants occurred in New Jersey, because that is where defendants were located the entire three-and-a-half year period of their representation of the Client.  According to Mr. Tarzy's complaint, during this entire time defendants were engaged in a "joint representation" with Mr. Tarzy, and they were failing to inform him the entire 3.5 years that the putative agreement was void. Complaint, ¶¶ 19-21.

In addition to the allegations of the Complaint, the evidence is overwhelming that the "center of gravity" of this case is New Jersey.  Mr. Tarzy's entire claim is that he was engaged in a "joint representation" of the Client while his lawsuit against the Company was pending in the New Jersey state court system for three-and-a-half years.  Mr. Tarzy alleges he should be paid for this extended joint representation.  Yet, that alleged "joint representation" occurred almost entirely in New Jersey.  There were thousands of pages of documents exchanged, countless depositions producing thousands of pages of transcripts, over 20 separate discovery motions, three appeals to the Appellate Division, a massive summary judgment motion, extensive trial preparation and appearance at trial, and ultimately the resolution of the case  These events took place in New Jersey, where the case was always pending.  This was not by happenstance.  The Client lived and worked in New Jersey, the Company was headquartered in New Jersey, and the litigation arose out of discrimination claims during the Client's employment in New Jersey.  Dwyer Decl., ¶¶ 6-15.

This is particularly important because, as we argue in Point II infra, Mr. Tarzy's only potentially viable claim is one for quantum meruit recovery (what his Complaint calls "unjust enrichment").  Under that theory of recovery, Mr. Tarzy is asserting a claim to compensation based on the value of the alleged services he rendered during the lawsuit.  See Goldberger & Shinrod v. Baumgarten, 378 N.J. Super. 244, 252-53

(App. Div. 2005).  Because the amount of attorney's fees recovered in the case was a finite amount (based on a one-third percentage of the Client's recovery), the value of Mr. Tarzy's services can only be evaluated by comparison to the overall work performed on the lawsuit.  It is defendants' contention that Mr. Tarzy performed almost no work on the litigation whatsoever.  Dwyer Decl., ¶¶ 18-19, 35-43.  Equally important, when the enormous volume of work undertaken by defendants is considered, Mr. Tarzy's contribution to the case appears to be almost microscopic.  Almost all of defendants' effort for the New Jersey litigation was performed in New Jersey.

Courts have "interpreted the locus of operative facts as 'the place where events and actors material to proving liability are located.'"  Larew v. Larew, 2012 U.S. Dist. LEXIS 2891, at *19-*20.  In this case, that place is New Jersey.  By comparison, New York has only a "weak link" to Mr. Tarzy's claims.  The only New York connection to this case is a single intake meeting that took place at Mr. Tarzy's office in June, 2013.  Dwyer Decl., ¶ 64.  "[T]his factor strongly favors transfer."  I Create Int'l v. Mattel, Inc., 2004 U.S. Dist. LEXIS 15477, at *10.

The convenience of the witnesses likewise favors transfer.  "The significance of each witness's testimony is more important than the number of witnesses in each district. . . .  Greater weight is given to the convenience of a non-party witness than a party witness, and little weight is given to the convenience of witnesses outside both the transferor and transferee districts."  I Create Int'l v. Mattel, Inc., 2004 U.S. Dist. LEXIS 15477, at *11.  The "court must qualitatively evaluate the materiality of the testimony that the witnesses may provide."  Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d at 373.

The key witnesses in this case are people who can testify as to what work was performed in the underlying litigation, because that is the key to the quantum meruit claim being advanced by Mr. Tarzy.  On defendants' side, three witnesses can testify to those facts (Mr. Dwyer, his law partner La Toya Barrett, and their paralegal John Ellis),

and all three of them work and reside in New Jersey.  Dwyer Decl., ¶ 65.  The Client would also be able to testify to these and other issues, but he resides in neither the Southern District of New York, nor the District of New Jersey.  However, he is close enough that his testimony could be compelled anyway under Fed. R. Civ. P. 45(c)(1)(A).  On information and belief, the Client would not object to coming to New Jersey to testify, if it is even necessary.  Dwyer Decl., ¶ 66.  The only material witness in this case who resides in the Southern District of New York is Mr. Tarzy himself.  It is not unreasonable to ask him to travel the short distance to New Jersey, given the sums he is claiming for allegedly being engaged in a "joint representation" of a case that was litigated for three-and-a-half years in the New Jersey courts.

The location of relevant documents and ease of access to sources of proof also favor transfer.  As explained in the accompanying attorney declaration, the New Jersey litigation resulted in a massive case file that occupies multiple file cabinets.  This was because there was extensive discovery, endless motion practice, repeated appeals, and a massive effort to prepare for a trial that would have lasted several weeks.  Most of the file is *not* in electronic format.  If the file were stacked end to end, it would be approximately 38 feet high.  Dwyer Decl., ¶¶ 12-14.  By contrast, it appears Mr. Tarzy has no physical file whatsoever.  Dwyer Decl., ¶ 22 and Exhibit B.  This factor also favors transfer.  I Create Int'l v. Mattel, Inc., 2004 U.S. Dist. LEXIS 15477, at *13.  See also Coker v. Bank of America, 984 F. Supp. at 766; Raines v. Switch Mfg. Corp., 1996 U.S. Dist. LEXIS 10367, at *6-*7 (S.D.N.Y. July 24, 1996) (Keenan, J.) (copy annexed hereto).  As the court once explained:

> The location of documents ". . . is clearly an important consideration in motions to transfer . . . ."  . . . .Plaintiffs argue that, because shipping documents worldwide is neither difficult nor expensive due to advances in technology, this factor should be accorded little weight.  However, when faced with this identical argument, this court has previously noted, "[C]ommon sense suggests that retaining this case in New York, imposes some incrementally greater burden, however, slight, on Defendants to copy or transport documents that they would not incur if the case proceeded in California."

9

Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d at 374-75 (citations omitted).

Because Mr. Tarzy's claims all concern conduct by defendants that allegedly occurred in New Jersey in the course of handling the underlying New Jersey litigation, and because it particularly concerns the validity of fee sharing arrangements between attorneys representing a client in New Jersey, this litigation will be governed by New Jersey law. While this is not a heavily weighted factor, "this factor certainly does not support keeping the case in New York." Coker v. Bank of America, 984 F. Supp. at 767. This factor's importance is heightened here, because New Jersey (not New York) has a special interest in the regulation of the legal profession for litigation undertaken within its borders.

Normally, a plaintiff's choice of forum is respected and given some weight. "However, that choice's importance is diminished when the Southern District of New York 'has only a tenuous connection to the operative facts of the litigation.'" I Create Int'l v. Mattel, Inc., 2004 U.S. Dist. LEXIS 15477, at *16. As we have explored at length, the locus of operative facts in this case is in New Jersey, and the Southern District of New York has only a weak link to this case. "Plaintiff's choice of forum, therefore, is not entitled to great weight." Id. See also Raines v. Switch Mfg. Corp., 1996 U.S. Dist. LEXIS 10367, at *8 (deference to plaintiff's choice of forum "fades if, as here, 'the balance of factors weighs strongly in favor of the defendant'"); Coker v. Bank of America, 984 F. Supp. at 766 ("when the connection between the forum and the facts and issues in the case is minimal, the 'court need not give great weight to plaintiff's choice of forum'"); Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d at 376 (same); Ratner v. Martel Elecs. Corp., 2008 U.S. Dist. LEXIS 124174, at *18 (even though plaintiff resided in the transferor district, because the operative facts occurred in the transferee district, "Plaintiff's choice of forum does not weigh against transfer in this case"); Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co., 245 F. Supp. 2d at 525 (same). Plaintiff's choice of forum in this case should be given especially little weight,

we submit, when it is apparent it was part of a "race to the courthouse" to avoid being sued in New Jersey.  Dwyer Decl., ¶¶ 54-57.

Regarding the convenience of the parties, Mr. Tarzy cannot argue litigating in New Jersey is more inconvenient for him than it would be for defendants to be forced to litigate in the Southern District of New York.  "To the extent that a transfer causes a mere shift of inconvenience from one party to the other, this factor is neutral. . . .This factor does not weigh in favor of either party."  I Create Int'l v. Mattel, Inc., 2004 U.S. Dist. LEXIS 15477, at *12; see also Ratner v. Martel Elecs. Corp., 2008 U.S. Dist. LEXIS 124174, at *16 (where plaintiff "offered no documentation showing that litigating this action [in the transferee district] would impose an undue hardship on him . . . the Court will treat this factor as neutral").

Likewise, in considering the relative means of the parties, "this factor will be accorded 'little or no significance' absent a showing of disparity of means between plaintiffs and defendants."  Larew v. Larew, 2012 U.S. Dist. LEXIS 2891, at * 22. There's no such showing here.  Nor is there any suggestion in the record that Mr. Tarzy would be unable to retain counsel in New Jersey to represent him.  In fact, Mr. Tarzy *did* retain New Jersey counsel to represent him in this particular suit, and was originally going to file suit in New Jersey, but changed his mind.  (This also shows Mr. Tarzy did not consider New Jersey to be a burdensome forum.)  Dwyer Decl., ¶¶ 51-55.

Nor is the availability of process to compel witnesses to testify a factor here.  All of the material witnesses are subject to either court's subpoena power under Fed. R. Civ. P. 45(c)(1)(A).  Therefore this is also a neutral factor.

Finally, considering all of the factors as a whole, trial efficiency and the interests of justice strongly favor transfer.  At bottom this fee dispute is about the regulation of fee sharing between attorneys.  Because the underlying lawsuit was at all times in the New Jersey state court system, and the attorneys were representing a client who was a New Jersey resident, New Jersey has the interest in this case, not New York.  The fact that

11

Mr. Tarzy resides in New York is not a factor when he elects to go across the river and become involved (however peripherally) in a lawsuit pending in the New Jersey courts. Given the strong connection to the District of New Jersey, and the weak link to the Southern District of New York, "[t]rial efficiency and the interests of justice therefore weigh in favor of transfer." I Create Int'l v. Mattel, Inc., 2004 U.S. Dist. LEXIS 15477, at *16-*17. The "center of gravity" of this litigation, the "core determination under § 1404(a)," Bordiga v. Directors Guild of America, 159 F.R.D. 457, 462-63 (S.D.N.Y. 1995), clearly lies in New Jersey.[3]

II.   **BECAUSE PLAINTIFF ONLY HAS A POTENTIAL CLAIM FOR QUANTUM MERUIT, DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT SHOULD BE GRANTED**

A.   **Plaintiff's Breach Of Contract Claim Must Be Dismissed**

Mr. Tarzy's claim for breach of contract (the First Cause of Action in the Complaint) is based on the allegation that defendants allegedly violated the putative fee-splitting "agreement" by not paying Mr. Tarzy 40% of the legal fees recovered in the underlying New Jersey discrimination suit. Complaint, ¶¶ 22-24. We strongly disagree with Mr. Tarzy's recitation of the events leading up to defendants' representation of the Client. Dwyer Decl., ¶¶ 20-29. But we recognize on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), we have to accept the allegations in the Complaint as true. Even if we do accept the Complaint's allegations as true, however, Mr. Tarzy's breach of contract claim is fatally defective, because the putative contract was void and unenforceable.

It is critical to understand the Complaint does not allege Mr. Tarzy was eligible to receive a "referral fee" for referring the case to defendants. Instead, he expressly

---

[3] Statistics also show that while 19.1% or 2,379 cases in the Southern District of New York were over three years old, the same figures for the District of Jersey are 4.1% or 690 cases. Dwyer Decl., ¶ 72 and Exhibit I. This is also a factor favoring transfer. Larew v. Larew, 2012 U.S. Dist. LEXIS 2891, at *25; Coker v. Bank of America, 984 F. Supp. at 768; Raines v. Switch Mfg. Corp., 1996 U.S. Dist. LEXIS 10367, at *8-*9.

claims that the parties entered into a "joint representation" agreement to represent the

Client in the underlying lawsuit, and he bases his claim for 40% of the fees on that

putative agreement.  The Complaint does not allege 40% of the fees is in proportion to

the services Mr. Tarzy performed in the litigation.  He simply claims the alleged "joint

representation" agreement entitled him to a flat 40% of the fees.  Complaint, ¶¶ 10-11.

Such an unwritten agreement is invalid under New Jersey law.  The standards

under which attorneys from different firms may share or split fees are set forth in New

Jersey RPC 1.5(e), which states:

> (e)     Except as otherwise provided by the Court Rules, a division of fee
> between lawyers who are not in the same firm may be made only if:
>
> (1)     the division is in proportion to the services performed by each
> lawyer, or, **by written agreement with the client**, each lawyer assumes joint
> responsibility for the representation; and
>
> (2)     the client is notified of the fee division; and
>
> (3)     the client consents to the participation of all the lawyers involved;
> and
>
> (4)     the total fee is reasonable.

NJ RPC 1.5(e) (emphasis added).

The Complaint is a little sketchy on the Client's involvement in the alleged

agreement to split fees.  It states the Client "was invited to attend the meeting . . . to

give knowing consent that the attorneys would be sharing fees in connection with their

joint representation of [the Client]."  Complaint, ¶ 10.  This is not quite the same thing as

saying the Client *did* consent, but rather only states this was the (alleged) purpose of he

meeting.  (Again, we completely dispute this.  Nothing about fees or fee splitting was

discussed at the meeting, or any other time in the Client's presence.  Dwyer Decl., ¶¶

26-28 and Exhibits F and G.  But again, we recognize we have to live with plaintiff's

false allegations on this motion.)  Nowhere in the Complaint does Mr. Tarzy actually say

in plain English that the Client did consent to any fee split.

The Complaint goes on to state that the Client was told (at the same meeting) by

13

Mr. Tarzy that "any legal fees, recovered by way of trial or settlement, would still be calculated on the basis of a one-third contingency fee and that the fee sharing arrangement between Plaintiff and Defendant would have no impact on the agreed upon legal fees to be paid by [the Client] and set forth in the Retainer."  Complaint, ¶ 10.[4]  This would suggest the Client was told about the existence of fee splitting (albeit not the precise division of fees), but still there's no allegation the Client consented to anything.

Finally, the Complaint alleges that Mr. Tarzy and defendants agreed to a 60/40 fee split.  However, there is still no statement that the Client agreed or consented.  As described in the Complaint the Client is not a party to this alleged agreement. Complaint, ¶ 11 (the "Plaintiff and Defendant agreed"); id. ("Defendant . . . agreed with Plaintiff").

But even if we pretend the Complaint expressly alleged that the Client consented to the fee split (and even if we leave aside our vehement disagreement with Mr. Tarzy's recitation of the facts), there is still nothing that even remotely alleges the Client agreed *in writing* to any type of fee splitting arrangement.

And that defect, standing alone, is fatal to Mr. Tarzy's contract claim.  Goldberger & Shinrod v. Baumgarten, 378 N.J. Super. 244 (App. Div. 2005) is directly on point.  In that case, like here, the plaintiff (an attorney) sued claiming that he and the defendant (another attorney) had orally agreed to split fees on a case, where plaintiff would get 25% of the fees (this was disputed).  The trial court dismissed the plaintiff's claims, holding that the alleged fee splitting agreement was an unlawful referral fee.  On appeal, the Appellate Division disagreed with this reasoning, holding that "the rules pertaining to the payment of referral fees have no application to this dispute."  Id. at 251.  Rather than claiming he was entitled to a referral fee, the plaintiff was claiming he was entitled to

---

[4] The "Retainer" here refers to the one-third contingency retainer Mr. Tarzy had with the client before defendants became involved.  Complaint, ¶ 7.  It has nothing to do with fee splitting.

25% of the fees because of the alleged, oral joint representation agreement. This is exactly the claim Mr. Tarzy makes in this case. The Appellate Division held, however, that such an agreement violated RPC 1.5(e), and therefore the plaintiff's breach of contract claim had to be dismissed:

> According to plaintiff, the parties agreed that plaintiff would receive 25% of the fee earned in the action brought by defendant on behalf of the Estate. This alleged agreement to divide fees is not "in proportion to the services" performed by the lawyers. Moreover, ***there was no written agreement with the clients*** under which it was agreed that plaintiff and defendant would assume joint representation. In addition, there is no evidence that the clients were notified of the alleged fee division, nor is there any evidence that the clients consented to the participation of all of the lawyers involved. In the circumstances, the judge correctly found that the alleged agreement did not satisfy the requirements of RPC 1.5(e). Relief could not be awarded for a breach of the alleged agreement because it was contrary to law.

Id. at 252 (emphasis added). The same reasoning bars Mr. Tarzy's breach of contract claim here. Regardless of the Complaint's failure to ever state the Client consented to the fee split, there is no question there was no ***written agreement*** with the client to any joint representation. This requires the dismissal of Mr. Tarzy's breach of contract claim.[5]

Curiously, the Complaint seems to acknowledge the alleged agreement is void and unenforceable, because elsewhere in the Complaint it is alleged that defendants defrauded Mr. Tarzy by not telling him the putative agreement was void. Complaint, ¶¶ 21, 29, 32, 39, 52. Obviously, that could only constitute fraud if the putative agreement was, in fact, void. (We address Mr. Tarzy's various fraud claims infra.)

The dismissal of the breach of contract claim does not mean Mr. Tarzy is left without a remedy. As the Appellate Division explained, even though the fee-sharing agreement is void, the attorney can still claim fees on a theory of quantum meruit:

---

[5] Contrary to some of the statements in the Complaint, ¶ 19, Mr. Tarzy's claim has nothing to do with whether or not defendant Andrew Dwyer was or was not a certified civil trial attorney. This is immaterial because Mr. Tarzy never alleges he was entitled to a referral fee. Rather, his claim is that he had an oral "joint representation" agreement that entitled him to a percentage of the fees. Complaint, ¶¶ 10-11. The breach of contract claim is thus governed by RPC 1.5, not something else.

15

Quantum meruit is a form of quasi-contractual recovery and "rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. . . . Recovery is permitted in quasi-contract because one party has conferred a benefit on the other and, in the circumstances, it would be unjust to deny recovery. . . . To recover under quantum meruit, plaintiff must establish: 1) that the services were performed in good faith; 2) the services were accepted by the person for whom they were rendered; 3) plaintiff reasonably expected compensation for performing the services; and 4) the value of the services is reasonable.

Goldberger & Shinrod v. Baumgarten, 378 N.J. Super. at 252-53.

Mr. Tarzy has asserted a claim for recovery under quantum meruit, although he calls it "unjust enrichment" (Seventh Cause of Action).  (Also related to this is Mr. Tarzy's claim for what he calls a "constructive trust and equitable tracing," the Ninth Cause of Action.  This is not an independent cause of action, but rather is a remedy for a claim based on quantum meruit or unjust enrichment.)  We believe evidence will show this claim has very little merit, because Mr. Tarzy in reality did almost nothing to assist the litigation.  Nonetheless, using the standards for a motion to dismiss, we recognize Mr. Tarzy should be permitted to attempt to prove his claim for recovery on a theory of quantum meruit.  Consequently, we are not seeking to dismiss the Seventh and Ninth Causes of Action at this time.

However, as explained infra, the other causes of action are simply attempts to get around the defects in Mr. Tarzy's breach of contract claim.  These claims must also be dismissed.[6]

## B.    Plaintiff's Other Equitable Contract Claims Must Be Dismissed

Aside from breach of contract itself, Mr. Tarzy also asserts two equitable claims.

---

[6] Whether the putative contract violates the RPC is obviously governed by New Jersey law, because the alleged "joint representation" agreement was to provide legal services to a New Jersey resident in the New Jersey courts.  However, we will note that the result would be the same under New York's RPC. Fee sharing in New York is governed by RPC 1.5(g), and while the wording is slightly different, the effect is the same, namely, the client must still agree in writing to the fee splitting.  No such written agreement is alleged in this case.  Complaint, ¶¶ 10-11.  Oddly, in the Complaint Mr. Tarzy seems to try to justify the oral agreement by reference to the old DR 2-107 under the New York Code of Professional Responsibility.  Complaint, ¶ 10.  Mr. Tarzy appears to be unaware that the Code of Professional Responsibility was replaced in 2009 by the New York Rules of Professional Conduct.  Thus, DR 2-107 no longer exists (and did not exist when defendants agreed to work on the Client's case in 2013), and it has been replaced by RPC 1.5(g).  See Dwyer Decl., ¶¶ 30-32.

The Fourth Cause of Action asserts a claim for "promissory estoppel."  Complaint, ¶¶ 31-34.  A claim for promissory estoppel exists where (a) there is a clear and definite promise; (b) made with the expectation that the promisee would rely on it; (c) the promisee did reasonably rely on the promise; and (d) suffered harm in his reliance. Ergowerx Int'l, LLC v. Maxell Corp. of Am., 18 F. Supp. 3d 430, 442 (S.D.N.Y. 2014). However, the only promise alleged in the Complaint is the alleged promise to split the fees with Mr. Tarzy.  Complaint, ¶ 32.  Consequently, this is just a restatement of the breach of contract claim, which is based on the alleged promise to split the fees 60/40. Simply making the exact same contract claim but calling it "promissory estoppel" does not avoid the fact that the putative contract is void for being against public policy. Goldberger & Shinrod v. Baumgarten, 378 N.J. Super. at 252.  In these circumstances, "an equitable claim cannot lie where a contract governs the relationship between the parties that gives rise to the equitable claim."  Ergowerx, 18 F. Supp. 3d at 442.  The court in Goldberger & Shinrod clearly states the remedy for an attorney who purported to enter into an invalid fee sharing arrangement is recovery via quantum meruit. Goldberger & Shinrod v. Baumgarten, 378 N.J. Super. at 253.  Mr. Tarzy should not be permitted to escape that result by pouring the same old wine into a new bottle. Consequently, the Fourth Cause of Action for "promissory estoppel" must be dismissed.

Likewise, the Fifth Cause of Action for "breach of implied in fact contract," is simply a restatement of the breach of contract claim.  The idea here, apparently, is that even if there was not an express agreement to split fees 60/40, it was implied by the parties' actions.  Mr. Tarzy never alleges what actions supposedly created this "implied in fact contract."  But, obviously, it runs into the same problem as Mr. Tarzy's breach of contract claim.  Under RPC 1.5(e), a fee splitting arrangement not in proportion to the services performed by each lawyer is unenforceable if the client does not agree to it in writing.  Consequently, an "implied" agreement that is not even explicitly agreed to orally would also be invalid under RPC 1.5(e).  Consequently, the Fifth Cause of Action for

17

"breach of implied in fact contract" must be dismissed.

### C.   Plaintiff's Tort Claims Must Be Dismissed

The Complaint asserts a variety of tort claims, including claims based on fraud. The Second Cause of Action is for "fraudulent inducement."  Complaint, ¶¶ 25-27.  The contention is the defendants "represented to the Plaintiff that if Plaintiff agreed to the joint representation of [the Client] the Defendants would agree to pay the Plaintiff 40 (40%) percent [sic] of the one-third contingency fee agreement previously agreed to between the Plaintiff and [the Client], the Defendant knowing that Defendant's representation was false when made."  Complaint, ¶ 26.  Thus, the alleged misrepresentation for this claim is the agreement to pay the fees.  As this court has explained, under New Jersey law the elements of "fraud in the inducement" and "common law fraud" are identical.  Ergowerx, 18 F. Supp. 3d at 444.  The elements are:

> (1) a material representation of a presently existing or past fact, (2) made with knowledge of its falsity and (3) with the intention that the other party rely thereon, (4) resulting in reliance by that party, (5) to his detriment.

Jewish Ctr. of Sussex Cty. v. Whale, 86 N.J. 619, 624 (1981); Ergowerx, 18 F. Supp. 3d at 444-45.

Under Fed. R. Civ. P. 9(b), a heightened pleading standard is imposed on claims alleging fraud or mistake, and the circumstances of the fraud must be "stated with particularity."  The precise misconduct must be specified in the Complaint, which must "allege facts that give rise to a strong inference of fraudulent intent."  Ergowerx, 18 F. Supp. 3d at 445.  Merely alleging the defendants made promises and knew the promises were false does not plead with sufficient particularity.  In Ergowerx, for example, the court dismissed fraudulent inducement claims, in part, because they did not specify with particularity the claim that the statements were made with fraudulent intent.  For example, the claim that the defendant promised to invest money in the future, and then later failed to do so, was inadequate to state a fraud claim, because there were no concrete facts showing the defendant "did not intend to keep such

18

promises.  Such conclusory pleadings are inadequate."  Id. at 446.

But the problem goes deeper, because the only alleged fraudulent promise is the promise to abide by the alleged contract.  A party cannot turn every failure to perform under a contract into a fraud claim.  "Promising to abide by a contract's terms, and then allegedly breaching the contract, does not constitute fraud; it constitutes breach of contract."  Ergowerx, 18 F. Supp. 3d at 445.  A fraud claim can only proceed alongside a contract claim if "the underlying allegations involve misrepresentations unrelated to the performance of the contract."  State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC, 646 F. Supp. 2d 668, 676 (D.N.J. 2009).  Because the only "fraud" plaintiff alleges is the promise to perform under the alleged "contract," the Second Cause of Action for "fraudulent inducement" must be dismissed.

For the same reason, the Third Cause of Action for "negligent misrepresentation" must also be dismissed.  This claim is the same as the fraud claim, except it is alleged defendants "negligently" misrepresented they would perform under the contact.  Complaint, ¶¶ 28-30.  Again, such a claim cannot proceed alongside a breach of contract claim, unless "the underlying allegations involve misrepresentations unrelated to the performance of the contract."  State Capital Title, 646 F. Supp. 2d at 676.  Under New Jersey's "economic loss doctrine," a party cannot recover economic tort damages caused by a breach of contract.  Dean v. Barrett Homes, Inc., 406 N.J. Super. 453, 470 (App. Div. 2009); Ergowerx, 18 F. Supp. 3d at 441.  Therefore, the Third Cause of Action for "negligent misrepresentation" must also be dismissed.

The Sixth Cause of Action asserts a claim for "breach of fiduciary duty."  Complaint, ¶¶ 38-40.  The claim here is that defendants became Mr. Tarzy's fiduciary simply by entering into the alleged fee-sharing arrangement with him.  Merely entering into an alleged contract together does not create a fiduciary relationship under New Jersey law.  "Where a party does not owe another a duty of care absent the existence of a contract, a separate duty of care cannot arise simply by virtue of the existence of the

19

contract."  Int'l Minerals & Min. v. Citicorp, N.A., 736 F. Supp. 587, 597 (D.N.J. 1990).

Thus, as this court explained in rejecting a claimed fiduciary relationship arising out of a

contract:

> A fiduciary relationship exists only "where one party has the power and opportunity to take advantage of the other, because of that other's susceptibility or vulnerability." . . .
>
> Here, based on the allegations in the FAC [First Amended Complaint], Smartfish and Maxell are business entities that undertook an arms-length relationship pursuant to a distribution agreement; the FAC does not allege facts indicating that either party had special power over the other.  Such an ordinary commercial transaction does not give rise to a fiduciary relationship.

Ergowerx, 18 F. Supp. 3d at 452.  Nothing alleged in the Complaint would support a

claim that defendants had some special power or control over Mr. Tarzy, nor anything

else that would support the existence of a fiduciary relationship.  Accordingly, the Sixth

Cause of Action for "breach of fiduciary duty" must also be dismissed.[7]

The Tenth Cause of action asserts a claim for "fraudulent omission."  The

allegation, apparently, is that defendants "fraudulently" failed to disclose to Mr. Tarzy

how New Jersey's ethics rules worked.  Aside from the failure to plead fraud with the

required particularity under Fed. R. Civ. P. 9(b), New Jersey simply does not recognize

a general common law claim for fraudulent omission.  Other than statutory claims, such

as the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., a common law claim

for "fraudulent omission" first requires a showing of a fiduciary obligation.  United Jersey

Bank v. Kensey, 306 N.J. Super. 540, 551 (App. Div. 1997).  As we just explained, there

---

[7] We note that at various points in the Complaint Mr. Tarzy alleges he was so easily tricked because he did not know anything about the ethics rules in New Jersey governing fee sharing.  See, e.g., Complaint, ¶ 19.  The problem with this argument is that the putative unwritten fee-splitting agreement was invalid under New York law, namely New York RPC 1.5(g).  Presumably Mr. Tarzy, as an attorney admitted and practicing in New York, was charged with that knowledge.  Likewise, presumably he knew generally that paying a pure "fee referral" to another lawyer was impermissible under New York RPC 7.2 (with exceptions not relevant here).  The Complaint never states defendants made a misrepresentation that Mr. Dwyer was a certified civil trial attorney (or any other misrepresentation about the New Jersey RPC), and the Complaint never states Mr. Tarzy ever asked Mr. Dwyer if he was a certified civil trial attorney.  If Mr. Tarzy knew an unwritten fee-splitting arrangement was invalid under New York law, and he was genuinely unaware of New Jersey's ethics rules, he cannot explain why he decided to enter into such an arrangement without inquiring as to New Jersey's rules.

is nothing in the Complaint that would support a claim that a fiduciary relationship or duty existed between the parties.  Accordingly, the Tenth Cause of Action for "fraudulent omission" must also be dismissed.

The Eighth Cause of Action asserts a claim for "tortuous [sic] interference with contract."  The allegation here is that Mr. Tarzy had a "binding" retainer with the Client, and defendants made "untrue, false and/or misleading statements" which caused Mr. Tarzy to relinquish his retainer with the Client.  Complaint, ¶¶ 44-46.  There are a number of problems with this claim.  First, the Complaint never states what the alleged "untrue, false and/or misleading statements" were.  Indeed, the Complaint never actually accuses defendants of making *any* false statement, other than claiming the alleged promise to split fees was knowingly false.  Second, Mr. Tarzy's understanding of his arrangement with the Client is incorrect.  He had no "binding" contract with the Client in the sense that it could not be terminated.  A client may terminate his attorney at any time.  As to whether Mr. Tarzy could recover any fees from the Client if terminated, that would depend on whether he had provided any useful services.  At the time defendants began representing the Client, it is not clear Mr. Tarzy had performed *any* work for the Client.  Merely signing a retainer agreement and performing no work does not entitle the attorney to payment.

But the more basic problem is that the tortious interference claim, like the other tort claims, runs afoul of New Jersey's economic loss doctrine, because the harm alleged is completely encompassed by the breach of contract claim.  Ergowerx, 18 F. Supp. 3d at 443 (tortious interference claim dismissed because "the harm alleged . . . is fairly encompassed by the breach of contract claim").  Indeed, in the "tortious interference" claim Mr. Tarzy alleges the exact same claim for damages that he alleges for the breach of contract claim.  Complaint, ¶ 46.  Accordingly, the Eighth Cause of Action for "tortious interference" must be dismissed.

21

**D.      Plaintiff's Claim For Punitive Damages Must Be Dismissed**

Finally, aside from dismissing several of the causes of action in the Complaint, this court must also dismiss Mr. Tarzy's claim for punitive damages.  This case, at bottom, is a breach of contract claim, where the putative contract is in violation of public policy and thus is void.  As a consequence, Mr. Tarzy's only remedy is a form of quasi-contractual recovery under a theory of quantum meruit.  Goldberger & Shinrod v. Baumgarten, 378 N.J. Super. at 252-53.  In New Jersey, punitive damages are simply not available for breach of contract claims.  Buckley v. Trenton Sav. Fund Soc., 217 N.J. Super. 705, 715-16 (App. Div. 1987).  Accordingly, all claims for punitive damages must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to transfer venue and for partial dismissal of the Complaint should be granted in its entirety.

Respectfully submitted,

Dated: March 9, 2018                        DWYER & BARRETT, L.L.C.


By:**/s/ Andrew Dwyer**
Andrew Dwyer (AD 7793)
17 Academy Street, Suite 1201
Newark, New Jersey 07102
(973) 242-3636
(973) 242-3399 (fax)
andy@dwyerbarrett.com

Attorneys for Defendants

22

# APPENDIX TO BRIEF

 Positive
As of: March 9, 2018 8:32 PM Z

# *I Create Int'l, Inc. v. Mattel, Inc.*

United States District Court for the Southern District of New York

August 6, 2004, Decided ; August 9, 2004, Filed

03 Civ. 3993 (JFK)

**Reporter**
2004 U.S. Dist. LEXIS 15477 *; 2004 WL 1774250

I CREATE INTERNATIONAL, INC., Plaintiff, -against-MATTEL, INC. AND FISHER PRICE, INC., Defendants.

**Disposition:** [*1] Defendants' motion to transfer venue granted. Clerk directed to transfer case to Western District of New York.

## Core Terms

witnesses, venue, patent, infringement, operative facts, reside, locus, unfair competition, convenience, parties, interest of justice, place of business, employees, non-party, convenience of the parties, relevant documents, defendants', transferee, favors, cases

## Case Summary

### Procedural Posture

Plaintiff patent holder sued defendant toy makers, alleging that defendants manufactured and sold a product that infringed plaintiff's patent and violated non-disclosure agreements that were entered as part of its product development efforts. The action was filed in the Southern District of New York. Defendants moved to transfer pursuant to *28 U.S.C.S. § 1404(a)* to the Western District of New York.

### Overview

One defendant argued that all decisions relative to the accused device were made and continued to be made in East Aurora, New York, that all relevant documents were maintained at corporate offices there, and that all employees involved with the accused device were located there. East Aurora was located in the Western District of New York. The other defendant consented to venue there. Plaintiff claimed that it selected the Southern District as the least expensive, most easily accessible court for it and its witnesses. The court considered the nine factors used in determining whether a transfer served the convenience of the parties and the

interests of justice and concluded that while the Southern District of New York had little connection with the action, the connection between the case and the Western District of New York was strong. Because the locus of operative facts strongly favored transfer, trial efficiency and the interests of justice weighed in favor of transfer. As for plaintiff's claim of limited financial means, plaintiff could seek relief from the transferee court by, for example, submitting a request to hold depositions at the office of plaintiff's attorney.

### Outcome

The court granted defendants' motion to transfer.

## LexisNexis® Headnotes

Civil Procedure > ... > Venue > Federal Venue Transfers > Convenience Transfers

Civil Procedure > ... > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview

Civil Procedure > Preliminary Considerations > Venue > General Overview

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

Civil Procedure > ... > Venue > Motions to Transfer > General Overview

Civil Procedure > ... > Venue > Motions to Transfer > Convenience of Parties

Civil Procedure > ... > Venue > Motions to Transfer > Convenience of Witnesses

2004 U.S. Dist. LEXIS 15477, *1

Civil Procedure > ... > Venue > Motions to Transfer > Interests of Justice

Governments > Courts > Authority to Adjudicate

*HN1*[⬇] **Federal Venue Transfers, Convenience Transfers**

Venue refers to locality; it concerns the forum where a lawsuit may be brought and judicial authority exercised. Unlike subject matter jurisdiction, venue is a personal privilege that a party may waive. In addition, a court may transfer a case from one district court to another, even if venue in the original location is proper: For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C.S. § 1404(a). On a motion to transfer venue, a court must decide whether the action could have been brought in the transferee forum, and whether the convenience of the parties and the interests of justice warrant transfer.

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

*HN2*[⬇] **Venue, Federal Venue Transfers**

Courts weigh a number of factors in determining whether a transfer serves the convenience of the parties and the interests of justice. These factors include (1) the locus of operative facts, (2) the convenience of witnesses, (3) the convenience of parties, (4) the location of relevant documents and ease of access to sources of proof, (5) the availability of process to compel attendance of unwilling witnesses, (6) the relative means of the parties, (7) the transferee forum's familiarity with governing law, (8) the weight accorded plaintiff's choice of forum, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. No single factor is determinative, and a court's discretion will not be overturned on appeal absent a clear showing of abuse. The moving party bears the burden of making a clear and convincing showing that the balance of convenience tips in its favor.

Business & Corporate Law > ... > Corporate Formation > Place of Incorporation > Principal Office

Copyright Law > ... > Civil Infringement Actions > Jurisdiction > General Overview

Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview

Patent Law > Jurisdiction & Review > General Overview

*HN3*[⬇] **Place of Incorporation, Principal Office**

Under 28 U.S.C.S. § 1400(b), which governs patent infringement cases, an infringement action may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business. A corporation resides in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

Civil Procedure > Preliminary Considerations > Federal & State Interrelationships > Erie Doctrine

Civil Procedure > Preliminary Considerations > Venue > General Overview

Civil Procedure > Preliminary Considerations > Venue > Individual Defendants

Civil Procedure > Preliminary Considerations > Venue > Multiparty Litigation

*HN4*[⬇] **Federal & State Interrelationships, Erie Doctrine**

Where state law claims, such as breach of contract and unfair competition, arise from the same nucleus of operative fact as a federal claim, the doctrine of "pendent venue" comes into play. Under this doctrine, a federal court may hear a claim related to a properly venued federal claim even if the related claim would not otherwise fulfill venue requirements.

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

Contracts Law > Breach > General Overview

Civil Procedure > Preliminary Considerations > Venue > General Overview

2004 U.S. Dist. LEXIS 15477, *1

_HN5_[⚓]  **Venue, Federal Venue Transfers**

Of the nine factors considered in determining whether a transfer of venue serves the convenience of the parties and the interests of justice, the locus of operative facts carries significant weight. In patent infringement cases, the locus of operative facts is where the design, development, and production of an allegedly infringing product took place. For a breach of contract claim, the place of negotiation, execution, performance, and breach of the alleged contract are considered. Finally, the locus of operative facts for an unfair competition claim is in the initial forum if the acts of infringement, dilution, or unfair competition occur in that forum, but this factor only weakly favors retaining a case when no other important events occurred in the forum.

Civil Procedure > ... > Venue > Motions to Transfer > Convenience of Witnesses

Civil Procedure > Preliminary Considerations > Venue > General Overview

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

Civil Procedure > ... > Venue > Motions to Transfer > General Overview

_HN6_[⚓]  **Motions to Transfer, Convenience of Witnesses**

A party seeking to rely on the convenience of the witnesses factor on a motion to transfer venue must identify the material witnesses and supply a general description of what their testimony will cover. The significance of each witness's testimony is more important than the number of witnesses in each district. Greater weight is given to the convenience of a non-party witness than a party witness, and little weight is given to the convenience of witnesses outside both the transferor and transferee districts.

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

Civil Procedure > Preliminary Considerations > Venue > General Overview

_HN7_[⚓]  **Venue, Federal Venue Transfers**

To the extent that a transfer of venue causes a mere shift of inconvenience from one party to the other, the convenience factor is neutral.

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

Evidence > Relevance > General Overview

Civil Procedure > Preliminary Considerations > Venue > General Overview

_HN8_[⚓]  **Venue, Federal Venue Transfers**

Modern photocopying technology deprives the issue-- the location of relevant documents and ease of access to sources of proof on deciding a motion to transfer venue--of legal and practical significance. However, the location of relevant documents is often the locus of operative facts. This is especially true in patent cases, where the bulk of evidence usually comes from the alleged infringer. Convenience to counsel, and consequently the location of relevant documents at counsel's office, is not considered.

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

Civil Procedure > Preliminary Considerations > Venue > General Overview

_HN9_[⚓]  **Venue, Federal Venue Transfers**

The existence of non-party witnesses who can be compelled to appear at trial in one district but not in the other is an important consideration on a motion to transfer venue.

Civil Procedure > Preliminary Considerations > Venue > Corporations

Civil Procedure > Preliminary Considerations > Venue > General Overview

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

_HN10_[⚓]  **Venue, Corporations**

ANDREW DWYER

A "disparity of means" between the parties, when it exists, is a consideration in determining venue. However, courts place less weight on this factor when both parties are corporations. Furthermore, even when significant disparity of means does exist, courts exercise considerable discretionary power over the location of depositions and other matters that impact the financial burden a party must bear. For example, the general presumptions that a plaintiff is usually deposed in the district where the plaintiff initiated the action, and that a defendant is usually deposed in the defendant's district of residence may be overcome by affidavits demonstrating in detail that the exigencies of a particular case warrant a departure from the general presumptions.

Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview

*HN11*[⬇] **Jurisdiction & Review, Personal Jurisdiction & Venue**

Patent law is federal law and any district court may handle a patent case with equal skill.

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

*HN12*[⬇] **Venue, Federal Venue Transfers**

Unless the balance is strongly in favor of the defendant, a plaintiff's choice of forum should rarely be disturbed. However, that choice's importance is diminished when the forum has only a tenuous connection to the operative facts of the litigation.

**Counsel:** For I Create International, Inc., Plaintiff: Stoll, Miskin & Badie, Howard C. Miskin, Esq., New York, New York.

For Mattel, Inc. and Fisher Price, Inc., Defendants: Goldberg Segalla LLP, Christopher J. Belter, Esq., Kurt D. Moody, Esq., Buffalo, New York.

**Judges:** JOHN F. KEENAN, United States District Judge.

**Opinion by:** JOHN F. KEENAN

# Opinion

*OPINION and ORDER*

**JOHN F. KEENAN, United States District Judge:**

## I. BACKGROUND

Plaintiff brings claims for patent infringement, breach of contract, and unfair competition. Before the Court is defendants' motion to transfer this action, pursuant to *28 U.S.C. § 1404(a)*, to the Western District of New York.

### A. The Parties

Plaintiff is a New Jersey corporation that consists of president/director/sole shareholder Steven Campanella and vice-president Donna Campanella, Steven Campanella's wife. Declaration of Steve Campanella PP1-2. Plaintiff's only place of business is at Steven Campanella's home in Middletown, New Jersey. *Id.* P2.

Defendant Mattel, Inc. ("Mattel") is a Delaware corporation with its principal place of business in El Segunda, California. [*2] Affidavit of Jeffrey Miller ("Miller Aff.") P7. Defendant Fisher-Price, Inc. ("Fisher-Price"), a wholly-owned subsidiary of Mattel, is a Delaware corporation with its principal place of business in East Aurora, New York. *Id.* PP5-6.

### B. The Suit and the Instant Motion

John Campanella, the brother of Steven Campanella, is the inventor of an "Interactive Children's Game" that has been designated U.S. Patent No. 5,829,985. Declaration of John Campanella PP2-3. John Campanella assigned this patent to plaintiff. *Id.* P2. Plaintiff alleges that, through the product development firm PDQ Product Development LLC ("PDQ"), plaintiff obtained non-disclosure agreements from, and presented drawings and a prototype of a toy based on the patent to, several toy companies, including defendants. Complaint ("Cplt.") PP8-12. According to plaintiff, defendants have manufactured and sold a product, the Magna Doodle Doodle Talker ("the Talker"), that infringes plaintiff's patent. *Id.* P19. Such infringement, plaintiff contends, violates the non-disclosure agreement and constitutes unfair competition. *Id.* PP25, 33.

Arguing that all decisions concerning the marketing, design, product development, [*3] and consumer

ANDREW DWYER

relations relative to the Talker were made and continue to be made in East Aurora, New York, that all relevant documents are maintained at Fisher-Price headquarters in East Aurora, New York, and that all employees involved with marketing, design, product development, and consumer relations regarding the Talker are located in East Aurora, New York, defendants have moved to transfer venue to the Western District of New York, in which district East Aurora is located. Defendants' Memorandum of Law at 2-3; *see* Miller Aff. PP9-14; Affidavit of Vladimir Buzga PP9-13. Mattel consents to venue in the Western District of New York. Defendants' Reply Memorandum of Law at 5 n.1.

Plaintiff contends that, because it does not generate any significant income, a change of venue to the Western District of New York would make continuance of this litigation financially impossible. Plaintiff's Memorandum of Law ("Pl. Mem.") at 3. Indeed, plaintiff claims to have selected the Southern District of New York as the least expensive, most easily accessible court for plaintiff and plaintiff's potential witnesses. *Id.* at 2. These witnesses include representatives and employees of PDQ, the [*4] offices of which are in New Jersey and in New York City, and a former employee of PDQ who resides in New Jersey. *Id.* at 3-4.

Plaintiff also argues that all documents related to the patent are located at plaintiff's place of business in New Jersey or at the office of plaintiff's attorney in New York City. *Id.* at 5. In addition, based on three listings for job openings in New York City that were posted on Fisher-Price's website, plaintiff contends that the Talker must have been designed, at least in part, in the Southern District of New York. Plaintiff's Supplemental Memorandum of Law at 2-4. Finally, plaintiff contends that even if defendants had designed, developed and marketed the Talker in East Aurora, New York, the non-disclosure agreement was signed and the breach of contract occurred in the Southern District of New York. Pl. Mem. at 8-9.

## II. VENUE

HN1[↑] "Venue refers to locality; it concerns the forum where a lawsuit may be brought and judicial authority exercised." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc., 869 F. Supp. 152, 154 (S.D.N.Y. 1994)* (citing 15 Wright, Miller & Cooper, *Federal Practice & Procedure:* Jurisdiction 2d § 3801). [*5] Unlike subject matter jurisdiction, venue is a "personal privilege[]" that a party may waive. *Leroy v. Great W. United Corp., 443*

*U.S. 173, 180, 61 L. Ed. 2d 464, 99 S. Ct. 2710 (1979)*; *see RC Entertainment, Inc. v. Rodriguez, 1999 U.S. Dist. LEXIS 15256, No. 98 Civ. 8585 (BSJ), 1999 WL 777903 at *2 (S.D.N.Y. Sept. 29, 1999)*. In addition, a court may transfer a case from one district court to another, even if venue in the original location is proper: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *28 U.S.C. § 1404(a)*. On a motion to transfer venue, a court must decide whether the action could have been brought in the transferee forum, and whether the convenience of the parties and the interests of justice warrant transfer. *See Millennium, L.P. v. Hyland Software, Inc., 2003 U.S. Dist. LEXIS 22239, No. 03 Civ. 3900 (DC), 2003 WL 22928644 at *2 (S.D.N.Y. Dec. 10, 2003); Savoy Owners Assocs., Inc. v. The Ins. Corp., 2003 U.S. Dist. LEXIS 3317, No. 02 Civ. 6145 (JFK), 2003 WL 941098 at *1 (S.D.N.Y. Mar. 6, 2003).*

HN2[↑] Courts weigh a number of factors in determining [*6] whether a transfer serves the convenience of the parties and the interests of justice. These factors include (1) the locus of operative facts, (2) the convenience of witnesses, (3) the convenience of parties, (4) the location of relevant documents and ease of access to sources of proof, (5) the availability of process to compel attendance of unwilling witnesses, (6) the relative means of the parties, (7) the transferee forum's familiarity with governing law, (8) the weight accorded plaintiff's choice of forum, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *See 800-Flowers, Inc. v. Intercont'l Florist, Inc., 860 F. Supp. 128, 133 (S.D.N.Y. 1994); see also Hyland, 2003 U.S. Dist. LEXIS 22239, 2003 WL 22928644 at *2, Savoy Owners, 2003 U.S. Dist. LEXIS 3317, 2003 WL 941098 at *1.* No single factor is determinative, and a court's discretion will not be overturned on appeal absent a clear showing of abuse. *Hyland, 2003 U.S. Dist. LEXIS 22239, 2003 WL 22928644 at *3* (citing, *inter alia, In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992)); see Bristol-Myers Squibb Co. v. Andrx Pharmaceuticals, LLC,2003 U.S. Dist. LEXIS 21967, No. 03 Civ. 2503 (SHS), 2003 WL 22888804 [*7] at *1 (S.D.N.Y. Dec. 5, 2003); Savoy Owners, 2003 U.S. Dist. LEXIS 3317, 2003 WL 941098 at *2.* The moving party bears the burden of making a "clear and convincing showing" that the balance of convenience tips in its favor. *Berman v. Informix Corp., 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998)* (citations omitted).

2004 U.S. Dist. LEXIS 15477, *7

## A. The Action Could Have Been Brought in the Western District of New York

*HN3*[⬆] Under *28 U.S.C. § 1400(b)*, which governs patent infringement cases, an infringement action "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." A corporation "reside[s] in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *28 U.S.C. § 1391(c); see VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1575 (Fed. Cir. 1990)* (holding that the definition of "reside" in *28 U.S.C. § 1391 (c)* applies in patent infringement cases); *Wechsler v. Macke Int'l Trade, Inc., 1999 U.S. Dist. LEXIS 19800, No. 99 Civ. 5725 (AGS), 1999 WL 1261251 [*8] at *3 (S.D.N.Y. Dec. 27, 1999)* (applying the *§ 1391(c)* definition of "resides" to *§ 1400(b)*).

*HN4*[⬆] Where state law claims, such as breach of contract and unfair competition, arise from the same nucleus of operative fact as a federal claim, the doctrine of "pendent venue" comes into play. *See Hsin Ten Enter. USA v. Clark Enters., 138 F. Supp. 2d 449, 462 (S.D.N.Y. 2000)*. Under this doctrine, a federal court may hear a claim related to a properly venued federal claim even if the related claim would not otherwise fulfill venue requirements. *Id.*

Because Fisher-Price has its principal place of business in East Aurora, New York, it is subject to personal jurisdiction there and can be said to reside in the Western District of New York. Whether venue is proper as to Mattel is an issue this Court need not decide, as Mattel has consented to venue in the Western District of New York. Therefore, venue on the patent claim is proper in the Western District of New York.

Plaintiff specifically brought its state law claims of breach of contract and unfair competition before this court because those claims were "raised with the substantial and related claim under the Patent Laws." [*9] " Cplt. P23, 31. Accordingly, these claims arise out of defendants' alleged infringement of plaintiff's patent. Because venue is proper on the patent claim in the Western District of New York, the exercise of venue over the state law claims in the Western District of New York is also appropriate.

## B. Transfer Is Warranted

### 1. Locus of operative facts

*HN5*[⬆] Of the nine factors listed above, the locus of operative facts carries significant weight. *Hyland, 2003 U.S. Dist. LEXIS 22239, 2003 WL 22928644 at *5* ("primary factor"); *Lighting World, Inc. v. Birchwood Lighting, Inc., 2001 U.S. Dist. LEXIS 16981, No. 01 Civ. 4751 (BSJ), 2001 WL 1242277 at *3 (S.D.N.Y. Oct. 16, 2001)* ("most important" because it 'informs the court's analysis of several other factors"). In patent infringement cases, the locus of operative facts is where the design, development, and production of an allegedly infringing product took place. *Hyland, 2003 U.S. Dist. LEXIS 22239, 2003 WL 22928644 at *5; Wechsler, 1999 U.S. Dist. LEXIS 19800, 1999 WL 1261251 at *4*. For a breach of contract claim, the place of negotiation, execution, performance, and breach of the alleged contract are considered. *PI, Inc. v. Quality Prods., Inc., 907 F. Supp. 752, 757-58 (S.D.N.Y. 1995).* [*10] Finally, the locus of operative facts for an unfair competition claim "is in the initial forum if the acts of infringement, dilution, or unfair competition occur in that forum," but this factor only "weakly favors" retaining a case when no other important events occurred in the forum. *Nabisco, Inc. v. Brach's Confections, Inc., 2000 U.S. Dist. LEXIS 16168, No. 00 Civ. 5875 (AGS), 2000 WL 1677935 at *3 (S.D.N.Y. Nov. 8, 2000)*.

In this case, the Western District of New York is the locus of operative facts because the Talker was allegedly designed, developed, and marketed at the Fisher-Price headquarters in East Aurora, because any breach of the alleged contract would have occurred in East Aurora, and because, considering the foregoing, the sale of the Talker in the Southern District of New York is only a weak link between this forum and the unfair competition claim. For all three of plaintiff's claims this factor strongly favors transfer.

### 2. Convenience of witnesses

*HN6*[⬆] "A party seeking to rely on the convenience of the witnesses factor must identify the material witnesses and supply a general description of what their testimony will cover." *Mattel, Inc. v. Procount Business Servs., 2004 U.S. Dist. LEXIS 3895, No. 03 Civ. 7234 (RWS), 2004 WL 502190 [*11] at *4 (S.D.N.Y. Mar. 10, 2004)* (citing *Wechsler, 1999 U.S. Dist. LEXIS 19800, 1999 WL 1261251 at *6*). The significance of each witness's testimony is more important than the number of witnesses in each district. *Hyland, 2003 U.S. Dist. LEXIS 2239, 2003 WL 22928644 at *3*. Greater weight is given to the convenience of a non-party witness than

Case 1:18-cv-01456-AT-SDA    Document 10    Filed 04/09/18    Page 32 of 57

Page 7 of 8
2004 U.S. Dist. LEXIS 15477, *11

a party witness, and little weight is given to the convenience of witnesses outside both the transferor and transferee districts. _Royal Ins. Co. v. Tower Records, Inc., 2002 U.S. Dist. LEXIS 20109, No. 02 Civ. 2612 (PKL), 2002 WL 31385815 at *5 (S.D.N.Y. Oct. 22, 2002)_ (citing _Wechsler, 1999 U.S. Dist. LEXIS 19800, 1999 WL 1261251 at *6_).

Neither party has provided a list of specific witnesses. Defendants have indicated that all their witnesses are Fisher-Price employees, who are thus party witnesses and who reside and/or work in East Aurora. Plaintiff's witnesses include non-party witnesses John Campanella and current and former PDQ employees, and party witness Steven Campanella. It is unclear where the current PDQ employees reside and at which PDQ office they work. The former PDQ employee and John and Steven Campanella all reside in New Jersey. Given this mixture of party and non-party witnesses [*12] both within and without the contested districts, this factor does not favor either party.

3. Convenience of the parties

_HN7_[⬆] To the extent that a transfer causes a mere shift of inconvenience from one party to the other, this factor is neutral. _See Millennium, L.P. v. Dakota Imaging, Inc., 2003 U.S. Dist. LEXIS 22373, No. 03 Civ. 1838 (RWS), 2003 WL 22940488 at *7 (S.D.N.Y. Dec. 15, 2003)_. Both parties here claim that the other party's favored forum will cause some degree of inconvenience. This factor does not weigh in favor of either party.

4. Location of relevant documents and ease of access to sources of proof

_HN8_[⬆] "Modern photocopying technology deprives this issue of legal and practical significance." _Savoy Owners, 2003 U.S. Dist. LEXIS 3317, 2003 WL 941098 at *3_. However, the location of relevant documents is often the locus of operative facts. _See Dakota, 2003 U.S. Dist. LEXIS 22373, 2003 WL 22940488 at *7_. This is especially true in patent cases, where the bulk of evidence usually comes from the alleged infringer. _Hyland, 2003 U.S. Dist. LEXIS 22239, 2003 WL 22928644 at *4_. Convenience to counsel, and consequently the location of relevant documents at counsel's office, is not considered. _Bionx Implants, Inc. v. Biomet, Inc., 1999 U.S. Dist. LEXIS 8031, No. 99 Civ. 740 (WHP), 1999 WL 342306 [*13] at *4 (S.D.N.Y. May 27, 1999)._

In one view, this factor comes out neutral because neither party would be significantly inconvenienced, in this age of fax machines and Federal Express, to transport its documents to either forum. Alternatively, this factor favors defendants because all documents regarding the alleged infringement are in the Western District of New York and only some of plaintiff's documents are in the Southern District of New York, at the office of plaintiff's counsel.

5. Availability of process to compel attendance of unwilling witnesses

_HN9_[⬆] The existence of non-party witnesses who can be compelled to appear at trial in one district but not in the other is an important consideration. _See Berman, 30 F. Supp. 2d at 658_. Plaintiff wishes to call non-party witnesses who reside in New Jersey and who could be compelled to appear in this district but not in the Western District of New York. Defendant's witnesses, on the other hand, are employees of defendant who can be compelled to testify in this district. However, plaintiff has not shown that any of its non-party witnesses would refuse to appear in the Western District of New York. Even if the witnesses were [*14] to refuse, their testimony could be offered through depositions. This factor therefore only slightly favors plaintiff.

6. Relative means of the parties

_HN10_[⬆] A "disparity of means" between the parties, when it exists, is a consideration in determining venue. _Hyland, 2003 U.S. Dist. LEXIS 22239, 2003 WL 22928644 at *6_. However, courts place less weight on this factor when both parties are corporations. _Royal Ins., 22002 U.S. Dist. LEXIS 20109, 2002 WL 31385815 at *7; About.com, Inc. v. Aptimus, Inc., 2001 U.S. Dist. LEXIS 6102, No. 01 Civ. 2106 (AGS), 2001 WL 503251 at *3 (S.D.N.Y. May 11, 2001)_. Furthermore, even when significant disparity of means does exist, courts exercise considerable discretionary power over the location of depositions and other matters that impact the financial burden a party must bear. _Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 550 (S.D.N.Y. 1989)_; see _Fed. Deposit Ins. Co. v. La Antillana, S.A., 1990 U.S. Dist. LEXIS 13246, No. 88 Civ. 2670 (JFK), 1990 WL 155727 at *2 (S.D.N.Y. Oct. 5, 1990)_. For example, the general presumptions that a plaintiff is usually deposed in the district where plaintiff initiated the action, and that a defendant is usually deposed in defendant's district of [*15] residence may be overcome by affidavits demonstrating in detail that the exigencies of a particular case warrant a departure from the general presumptions. _See_ 2 Michael C. Silberberg, _Civil Practice in the Southern District of New York § 17.11-_

17.12 (2d ed. 2003) (citing cases).

Plaintiff, a corporation, represents itself as having limited financial means and as being unable to pursue this action should transfer to the Western District of New York be granted. Defendants, on the other hand, are large multi-national corporations. Should plaintiff find it difficult to go forward with the litigation in the Western District of New York because of the expense of litigating there, plaintiff may seek relief from the transferee court by, for example, submitting a request to hold depositions at the office of plaintiff's attorney.

7. Transferee forum's familiarity with governing law

_HN11_[⚓] "Patent law is federal law and 'any district court may handle a patent case with equal skill.'" _Bristol-Myers, 2003 U.S. Dist. LEXIS 21967, 2003 WL 22888804 at *4_ (quoting _Bionx, 1999 U.S. Dist. LEXIS 8031, 1999 WL 342306 at *5_). This factor is neutral.

8. Weight accorded plaintiff's choice of forum

_HN12_[⚓] "Unless the balance is [*16] strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." _Bristol-Myers, 2003 U.S. Dsit. LEXIS 21967, 2003 WL 22888804 at *4_ (citations omitted). However, that choice's importance is diminished when the Southern District of New York "has only a tenuous connection to the operative facts of the litigation." _2003 U.S. Dist. LEXIS 21967, [WL] at *5_; see _Hyland, 2003 U.S. Dist. LEXIS 22239, 2003 WL 22928644 at *6_; _Lighting World, 2001 U.S. Dist. LEXIS 16981, 2001 WL 1242277 at *4_; _Berman, 30 F. Supp. 2d at 659_.

As established above, the locus of operative facts in this case is the Western District of New York, and the connection between the Southern District of New York and this case is tenuous at best. Plaintiff's choice of forum, therefore, is not entitled to great weight.

9. Trial efficiency and the interests of justice

Docket conditions are not a particularly relevant consideration, and, in any event, neither party has alleged that either court would be burdened by this litigation. While the Southern District of New York has little connection with this action, the connection between this case and the Western District of New York is strong. Trial efficiency and the interests of justice [*17] therefore weigh in favor of transfer.

## IV. Conclusion

For the reasons set forth above, defendants' motion to transfer venue is granted. The Clerk of the Court is directed to transfer this case to the Western District of New York.

**SO ORDERED.**

**Dated: New York, New York**

**August 6, 2004**

**JOHN F. KEENAN**

**United States District Judge**

_End of Document_

Cited
As of: March 9, 2018 8:36 PM Z

# CARTA CARTONI CELLULOSA, S.P.A. v. M.V. COSTA ATLANTICA

United States District Court for the Southern District of New York

March 14, 1986

No. 84 Civ 8673 (JFK)

## Reporter
1986 U.S. Dist. LEXIS 28168 *

CARTA CARTONI CELLULOSA, S.P.A., Plaintiff, vs. M.V. COSTA ATLANTICA, her engines, boilers, etc., in rem, Costa Armatori, S.P.A., Costa Line Cargo Services, Inc., Christian Haaland & Kommandittselskapet, A/S Gassfart, In personam, Defendants.

## Core Terms

witnesses, convenience, inconvenience, factors, parties, motion to transfer

## Case Summary

### Procedural Posture
In plaintiff shipper's action to recover damages to certain cargo, which was sustained during shipment, against defendants, the carrier, its general agent, its port agent and others, the carrier and general agent moved under *28 U.S.C.S. § 1404(a)* to transfer the action to a Louisiana district court on grounds of convenience for the parties and the witnesses, and in the interests of justice.

### Overview

The shipper, an Italian corporation, sought to recover damages from defendants for the losses sustained to its goods during shipment by the carrier. The shipper was entitled to file suit in the court under *28 U.S.C.S. § 1391(c)* because the general agent's principal office was located there. The transaction in question was not arranged or executed in New York, but in other locations and by other parties, including the carrier's port agent, which was located in New Orleans, La. The court granted the motion for transfer under *28 U.S.C.S. § 1404(a)*. The carrier and general agent met the burden of proof to support the transfer of the shipper's action against defendants as they established that a transfer would serve the convenience of the parties and the

witnesses, and that transfer was proper in the interests of justice. Determination of the motion was within the discretionary powers of the court. The shipper had not brought suit in its home forum, witnesses such as the port agent were located in Louisiana, and the transaction in question had no connection with New York. The balance of factors required the court to grant the motion for transfer.

### Outcome
The court granted the motion to transfer the shipper's action against defendants for damages to cargo to a United States district court in Louisiana.

## LexisNexis® Headnotes

Civil Procedure > ... > Venue > Federal Venue Transfers > Convenience Transfers

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

Civil Procedure > Preliminary Considerations > Venue > Forum Non Conveniens

### *HN1*[⤓] **Federal Venue Transfers, Convenience Transfers**

Although the United States Court of Appeals for the Second Circuit has enunciated the principle that the burden is on the defendant, when it is the moving party, to establish that there should be a change of forum, transfer decisions are committed to the "sound discretion" of the trial court. The trial court's discretionary power in ruling on motions to transfer is very broad. The United States Supreme Court interprets *28 U.S.C.S. § 1404(a)* in light of the differences between it and the common law doctrine of forum non

ANDREW DWYER

conveniens and believes that Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intends to permit courts to transfer upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.

Admiralty & Maritime Law > ... > Business & Corporate Compliance > Admiralty & Maritime > Vessel Licensing & Registration

Governments > State & Territorial Governments > Licenses

Torts > Business Torts > General Overview

Civil Procedure > Preliminary Considerations > Venue > Multiparty Litigation

*HN2*[⤓]  **Regulations & Statutes, Licensing & Registration**

Under *28 U.S.C.S. § 1391(c)*, an action to recover damages to a shipment via sea vessel can be brought in any judicial district in which the corporation being sued is incorporated or licensed to do business or is doing business.

Civil Procedure > ... > Venue > Federal Venue Transfers > Convenience Transfers

Evidence > Burdens of Proof > General Overview

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

*HN3*[⤓]  **Federal Venue Transfers, Convenience Transfers**

The critical inquiry on a motion to transfer is whether a trial court should exercise the discretion granted to it by *28 U.S.C.S. § 1404(a)*. The trial court may consider a wide range of factors in deciding whether the movant has met the difficult task of proving a need for change of forum. The initial consideration is the convenience of the parties. Although the forum in which the plaintiff brings the suit is usually afforded significant weight, that is not necessarily determinative. Although the plaintiff's choice of forum is entitled to substantial weight, the weight may

be diminished where suit is brought outside the plaintiff's home forum. Other factors are given equal consideration especially when the plaintiff brings suit outside his own forum. The weight to be given to the plaintiff's choice of forum is further reduced in the absence of any contact by the forum state with the transaction underlying the cause of action. Where the operative facts underlying the alleged cause of action have no material connection whatsoever with the forum, the plaintiff's choice of forum is a less weighty consideration. The plaintiff's forum selection is only one factor, which is not necessarily controlling in considering a motion to transfer.

**Counsel:** [*1] Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York, New York, of counsel: Keith B. Dalen, Esq., for plaintiff.

Michael D. Martocci, New York, New York, of counsel: Howard W. Burns, Jr., Esq., for defendants.

**Opinion by:** KEENAN

# Opinion

KEENAN, U.S.D.J.

FACTS

Defendants, Costa Armatori, S.P.A. and Costa Line Cargo Services, Inc., move this Court for an order transferring this action to the United States District Court for the Southern District of Louisiana, New Orleans Division, pursuant to *28 U.S.C. § 1404(a)*.

This action was brought by plaintiff, Carta Cartoni Cellulosa, S.P.A. ("Carta Cartoni") against defendants Costa Armatori, S.P.A. ("Costa") and Costa Line Cargo Services, Inc. ("CLCS") to recover for damage to a shipment of kraft liner shipped from New Orleans, Louisiana, to Leghorn, Italy, aboard the vessel Costa Atlantica.

Plaintiff is an Italian Corporation with an office and place of business located in Altopasacio (Lucca) Italy. Defendant Costa is an Italian steamship corporation with its principal place of business in Genoa, Italy. CLCS is Costa's general agent in the United States. CLCS is a New York Corporation with an office in Manhattan. CLCS' involvement [*2] in the present action is limited to the appearance of its name on the

1986 U.S. Dist. LEXIS 28168, *2

standard form Costa Line bills of lading "As Agent for the Master." CLCS acts as an agent for a disclosed principal, Costa. However in this instance, CLCS did not execute the Costa Line bill of lading. Rather, the bill of lading was executed in Toronto, Canada by "Conship Canada Corp. - As Agents For" CLCS. In New Orleans, Strachan Shipping Company acts as Costa's port agent. Strachan is authorized to accept service of process on behalf of Costa in New Orleans for purposes of suit. Finally, Costa has conducted business in New Orleans with respect to plaintiff's claim.

Defendants' move for a transfer of venue to the Southern District of Louisiana. Defendants argue that such a move would serve the convenience of the parties, and witnesses, and be in the interest of justice, as required under 28 U.S.C. § 1404(a). Plaintiff opposes such a transfer, on the grounds that a change of venue would merely shift the inconvenience from defendant to plaintiff, and that transfer, therefore, is not warranted. *Essex Crane Rental Corp.* v. *Vic Kirsch Construction Company, 486 F. Supp. 529, 536 (S.D.N.Y. 1980)*.

HN1[⬆] Although the [*3] Second Circuit has enunciated the principle that "the burden is on the defendant, when it is the moving party, to establish that there should be a change of forum," *Factors Etc., Inc.* v. *Pro Arts Inc., 579 F.2d 215 (2d Cir. 1978)*, transfer decisions are committed to the "sound discretion" of the Court. *Leif Hoegh & Co.* v. *Alpha Motor Ways, Inc., 534 F. Supp. 624, 626 (S.D.N.Y. 1982)*. Additionally, the United States Supreme Court has suggested that the Court's discretionary power in ruling on motions to transfer is very broad. The Court has interpreted § 1404(a) in light of the differences between it and the common law doctrine of forum non conveniens:

> "[w]e believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to transfer upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader."

*Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955)*; *Piper Aircraft Co.* v. *Reyno, 454 U.S. 235, 253 (1981)*. This Court [*4] finds that Costa has met the burden of proving that the factors weigh in its favor on the motion to transfer the action to the Southern District of Louisiana. Accordingly, defendants' motion for transfer is granted.

HN2[⬆] Under 28 U.S.C. § 1391(c), this action can be brought in any judicial district in which the corporation being sued is incorporated or licensed to do business or is doing business. This action was properly brought in New York where CLCS, agent of Costa, is incorporated and doing business. The action might also have been brought in Louisiana where defendant, Costa, is "doing business" so as to have a "residence" in the Southern District of Louisiana.

HN3[⬆] The critical inquiry on this motion to transfer is whether the Court should exercise the discretion granted to it by § 1404(a) of Title 28. The Court may consider a wide range of factors in deciding whether the movant has met the difficult task of proving a need for change of forum. Judge Weinfeld of this Court enumerated a list of considerations toward this end, in *Schneider v. Sears, 265 F. Supp. 257, 261-67 (S.D.N.Y. 1967)*, which has been followed throughout this Circuit.

The initial consideration is the convenience [*5] of the parties. Although the forum in which the plaintiff brings the suit is usually afforded significant weight, that is not necessarily determinative. The Court in *Pesin v. Goldman Sachs & Co., 397 F. Supp. 392 (S.D.N.Y. 1975)* stated, "[a]lthough plaintiff's choice of forum is entitled to substantial weight, the weight may be diminished where, as here, suit is brought outside plaintiff's home forum." See *Y Design, Ltd.* v. *Regensteiner Pub. Enterprises, 428 F. Supp. 1067 (S.D.N.Y. 1977)* ("other factors are now given equal consideration especially when plaintiff brings suit outside his own forum"). The weight to be given to plaintiff's choice of forum is further reduced in "the absence of any contact by the forum state with the transaction underlying the cause of action." *Foster v. Litton Industries, 431 F. Supp. 86 (S.D.N.Y. 1977)*. See also, *Helfant v. Louisiana, 82 F.R.D. 53 (E.D.N.Y. 1979)* ("Since the operative facts underlying the alleged cause of action have no material connection whatsoever with this forum, plaintiff's choice of forum is a less weighty consideration"); *Kaiser Aetna v. Mtn. States, 402 F. Supp. 1312, 1316 (S.D. Ohio [*6] W.D. 1975)* ("Plaintiff's forum selection is only one factor which is not necessarily controlling in considering a motion to transfer."). In the present case, the plaintiff has brought suit in New York, which is not its home forum. The cause of action, furthermore, does not have any material connection with this forum. Therefore, little weight need be given to plaintiff's selection of the Southern District of New York as its forum.

Costa Cartoni's principal place of business is in Italy.

ANDREW DWYER

Clearly, litigation which is brought in either New York or Louisiana will present some inconvenience to the plaintiff and, thus, there is little to indicate that the New York forum is more convenient than the Louisiana forum. The same might be said of the Italian defendant, Costa, which will be inconvenienced by having to locate proof, depose witnesses and seek indemnity and contribution from third parties if the action is maintained in New York or New Orleans. However, Costa maintains a local port agent in New Orleans, who is familiar with the practices and procedures of the port, and who has knowledge of the facts involved in this action. Maintaining the action in New York would thus require Costa [*7] to bear the expense of transportation and housing for the port agent, as well as for other witnesses such as the stevedores, surveyors, and the parties themselves. Plaintiff contends that defendants have failed to specify which witnesses will be inconvenienced by litigation in a New York forum. The Court feels that sufficient information has been provided by defendants.

Since the potential witnesses are located in New Orleans, and no connection can be made between the cause of action and the New York forum, transfer to the Louisiana forum is appropriate. See *Schertenleib v. Traum, 589 F.2d 1156 (2d Cir. 1978)* ("[i]f litigation is in a clearly inconvenient forum, why should defendant and the court be burdened with it continuing there?").

The second consideration, the convenience of the witnesses, also points to transfer. Witnesses are located in New Orleans; none of the witnesses are located in New York. Requiring these witnesses to appear to testify in New York, when an alternative and more convenient forum is available in Louisiana, would impose undue burdens on them. Transfer of the case to a Louisiana forum would alleviate the inconvenience to these witnesses.

The interest [*8] of justice dictates that the motion for transfer of venue should be granted at this time. Defendant has shown that a transfer will be more convenient to the parties and the witnesses. Transfer in this case does more than shift the burden of inconvenience and expense to the plaintiff. On the record here, the balance of factors requires this Court to exercise its discretion in favor of defendants' motion to transfer. The motion is granted.

*SO ORDERED.*

**End of Document**

ANDREW DWYER

No *Shepard's* Signal™
As of: March 9, 2018 8:38 PM Z

# UNITED STATES FIRE INS. CO. v. M/V "TFL JEFFERSON"

### United States District Court for the Southern District of New York

#### June 18, 1985

#### No. 85 Civ. 1600 (JFK)

**Reporter**
1985 U.S. Dist. LEXIS 18813 *

UNITED STATES FIRE INSURANCE CO., Plaintiff, -against- M/V "*TFL JEFFERSON*" her engines, boilers, etc., -and- KAM CONTAINER LINE (U.S.A.) INC., and TRANS FREIGHT LINES, INC., Defendants

## Core Terms

witnesses, shipment, Cosmetics, defendants', shipped, convenience of the parties, trip, convenience of witnesses, interest of justice, compulsory process, proposed witness, doing business, subpoena power, no contact, inconvenience, convenient, transferee, packaging, subpoena, Freight, creams, cargo

## Case Summary

### Procedural Posture

Defendant carriers filed a motion under *28 U.S.C.S. § 1404(a)* for an order transferring plaintiff insurer's admiralty action from a federal court in New York to one in California. The insurer, asserting a right of subrogation, sought a recovery for damages to a shipment of cosmetics allegedly contaminated with an overpowering smell of garlic.

### Overview

The insurer was based in New York and licensed to do business in California, and the carriers were New Jersey corporations doing business in California. All of the witnesses that the carriers planned to depose or call were in California, but those to be called by the insurer were primarily in Europe. The court found that the carriers met their burden to show that the proposed transferee district was more convenient and that a trial in that forum better served the interests of justice. Neither of the two forums was terribly inconvenient for any party, many witnesses were located in California, and it was a needless inconvenience to require the carriers' witnesses to travel to New York. The court concluded that the domestic locus of the suit was in

California, that the insurer's residence was New York's only contact with the action, and that the European witnesses were no more inconvenienced by a trip to California than a journey to New York.

### Outcome

The court granted the carriers' motion to transfer the suit.

## LexisNexis® Headnotes

Civil Procedure > ... > Venue > Federal Venue Transfers > Convenience Transfers

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

Civil Procedure > Preliminary Considerations > Venue > Forum Non Conveniens

*HN1*[⤓] **Federal Venue Transfers, Convenience Transfers**

A court's discretion to transfer a case under *28 U.S.C.S. § 1404(a)* is broader than under the doctrine of forum non conveniens.

Civil Procedure > ... > Venue > Federal Venue Transfers > Convenience Transfers

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

Civil Procedure > Preliminary Considerations > Venue > Forum Non Conveniens

*HN2*[⤓] **Federal Venue Transfers, Convenience**

## Transfers

The criteria applicable to a transfer under *28 U.S.C.S. § 1404(a)* are substantially those developed under the older doctrine of forum non conveniens. Those include: (1) the convenience of the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.

Civil Procedure > ... > Venue > Federal Venue Transfers > Convenience Transfers

Evidence > Burdens of Proof > General Overview

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

*HN3*[↧] **Federal Venue Transfers, Convenience Transfers**

The burden is on the defendant under *28 U.S.C.S. § 1404(a)* to make a showing that the proposed transferee district is a more convenient one and that a trial in the transferee district would better serve the interests of justice.

**Opinion by:** [*1] KEENAN

# Opinion

*OPINION and ORDER*

KEENAN, JOHN F., United States District Judge:

This is an admiralty action. Plaintiff, claiming a right of subrogation, seeks to recover for damage to a shipment of shaving and cosmetic creams shipped from Los Angeles to Rotterdam for carriage to Italy. According to plaintiff, the creams were contaminated with an overpowering smell of garlic when they arrived in Italy, thus devaluing the shipment. Defendants move this Court for an order, pursuant to *28 U.S.C. § 1404(a)*,

tranferring this action to the United States District Court for the Central District of California. For the reasons stated below, defendants' motion is granted.

*DISCUSSION*

*HN1*[↑] The Court's discretion to transfer a case under § 1404(a) is broader than under the doctrine of forum non conveniens. *Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955)*. *HN2*[↑] The criteria applicable under the statute, however, are substantially those developed under the older doctrine. These include (1) the convenience of the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the [*2] cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer. *Schneider v. Sears, 265 F. Supp. 257, 263 (S.D.N.Y. 1967)* (Weinfeld, J.). *HN3*[↑] The burden is on the defendant to make a showing that the proposed transferee district is a more convenient one, and that a trial in the transferee district would better serve the interests of justice. *Id.*; accord *Factors, Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978)*, cert. denied, 440 U.S. 908 (1979); *Dow Jones & Co. v. Board of Trade, 539 F. Supp. 190, 192 (S.D.N.Y. 1982)*. In this case, defendants have met their burden.

*1. Convenience of Parties*

Plaintiff is a new York-based stock insurance company licensed to do business, among other places, in California. Defendant KAM Container Line (U.S.A.) Inc. ("KAM") is a new Jersey corporation with its principal place" of business in Los Angeles, California. Defendant Trans Freight [*3] Lines, Inc. is also a New Jersey corporation that does business in Los Angeles. The relative convenience of the parties does not mandate transfer, though it does indicate that either district would not be terribly inconvenient for any of the parties.

*2. Convenience of Witness and Availability of Compulsory Process*

Defendants state that they plan to depose or call as witnesses the following persons: (i) the traffic manager of the shipper of the shipment in dispute, Jafra Cosmetics, located in West Lake Village, California; (ii)

ANDREW DWYER

the freight forwarder, Terra Marine Shipping Company, located in Los Angeles; (iii) the forwarding agent for some of the other cargo shipped with the cosmetics, McCormic & Company, located in Los Angeles; (iv) the booking clerk for the shipment, Schick International, located in California; (v) the receiving clerk for the firm that oversaw the packaging and shipment of the cosmetics, Southern Pacific Railroad, who is located in Los Angeles; and (vi) any other individuals with personal knowledge of the packing, packaging and shipping of the disputed shipment, all apparently located in and around Los Angeles. To prove the condition of the cargo, plaintiff **[*4]** plans to call as its principal witnesses: (i) an employee of AFIA Worldwide Insurance, who is located in Milan, Italy; (ii) an employee of Jafra Cosmetics, S.p.A., who is located in Varase, Italy; and (iii) an employee of KAM, who is located in Rotterdam.

Every one of the above-mentioned witnesses is beyond the subpoena power of this Court. Were this trial held in the United States District Court for the Central district of California, all defendants' proposed witnesses would be subject to the district court's compulsory process. With respect to plaintiff's proposed European witnesses, they are not subject to a subpoena issued by this Court or the Central District of California.

To have defendants' witnesses venture to new York would also entail needless inconvenience. Although the trip by plaintiff's witnesses to Los Angeles would be longer and more costly than their trip to New York, it is difficult to justify retaining this action in New York -- when New York has no contacts whatever with the claim and Los Angeles has many contacts -- simply to save plaintiff's witnesses a little money and some time.

## CONCLUSION

The domestic locus of this action is Los Angeles, California, **[*5]** the site o the United States District Court for the Central District of California. New York has no contacts whatever with this case, other than plaintiff's residence. The majority of proposed witnesses are located in or near Los Angeles, convenient to and within the subpoena range of the Central District of California. The few potential witnesses not in the Los Angeles area are located in Europe, outside the subpoena power of any United States District Court and, once aboard an aircraft, no significantly more inconvenienced by a trip to Los Angeles than by a journey to New York.

Accordingly, defendants' motion to transfer this action to

the United States District Court for the Central District of California is granted.

SO ORDERED.

---

End of Document

ANDREW DWYER

**1** Cited
As of: March 9, 2018 8:32 PM Z

## *Ratner v. Martel Elecs. Corp.*

United States District Court for the Eastern District of New York

September 30, 2008, Decided; September 30, 2008, Filed

07-CV-4742 (JS)(ARL)

Reporter
2008 U.S. Dist. LEXIS 124174 *; 2008 WL 9398951

CARL RATNER, Plaintiff, -against- MARTEL ELECTRONICS CORPORATION, MURCH ASSOCIATES INC., MURCH MANUFACTURING INC., CHARLES MURCH, and J.M. TEST SYSTEMS INC., Defendants.

## Core Terms

witnesses, infringing, parties, personal jurisdiction, operative facts, Manufacturing, pumps, motion to dismiss, district court, convenience, patent, locus, internal quotation marks, documents, factors, resides, weighs, patent infringement, motion to transfer, choice of forum, lack of personal jurisdiction, third-party, handle

**Counsel:** [*1] Cary Ratner, Plaintiff, Pro se, East Hills, NY.

For Defendants: Richard Alan Klass, Esq., Brooklyn, NY.

**Judges:** Joanna Seybert, U.S.D.J.

**Opinion by:** Joanna Seybert

## Opinion

### MEMORANDUM AND ORDER

SEYBERT, District Judge:

Pro se Plaintiff Carl Ratner ("Plaintiff") commenced this action on November 13, 2007 against Defendants Martel Electronics Corporation ("Martel"), Murch Associates, Inc. ("Murch Associates"), Murch Manufacturing, Inc. ("Murch Manufacturing"), Charles Murch ("Murch" and, together with Murch Associates and Murch Manufacturing, the "Murch Defendants"), and J.M. Test Systems, Inc. ("JMTS") (collectively, the "Defendants") asserting a patent infringement claim.

Presently pending are (1) Martel's motion to transfer venue to the United States District Court for the District of New Hampshire, (2) the Murch Defendants' motion to dismiss pursuant to *Rules 12(b)(2)* and *12(b)(6) of the Federal Rules of Civil Procedures*, and (3) JMTS' motion to dismiss pursuant to *Rule 12(b)(2)*. For the reasons discussed herein, Defendants' motions are GRANTED.

### BACKGROUND

Plaintiff resides in Nassau County, New York, within the Eastern District of New York. (Compl. ¶ 1.) Martel is a New Hampshire corporation with its principal place [*2] of business in Londonderry, New Hampshire, within the District of New Hampshire. (Id. ¶ 2.) Murch Associates was a design company based in New Hampshire, until all of its assets were sold to Martel in June 2007. (Murch Decl. ¶ 2.) Murch was an employee of Murch Associates, although he never had any ownership interest in, nor was he ever an officer of, Murch Associates. (Id. ¶ 13.) It appears that Murch Associates is no longer an operating company. (Id. ¶ 3.) Upon the sale of Murch Associates' assets to Martel, Murch formed Murch Manufacturing, which is also a New Hampshire corporation with its principal place of business in Londonderry, New Hampshire. (Id. ¶¶ 5-6.) Murch, who resides in Londonderry, New Hampshire, is the President of Murch Manufacturing. (Id. ¶¶ 1, 7.) JMTS is a Louisiana corporation with locations in Louisiana and Texas. (Compl. ¶ 6; Morrison Decl. ¶ 1.) JMTS distributes products for Martel. (Morrison Decl. ¶ 1.)

On October 22, 2007, Plaintiff was issued U.S. Patent No. D554152 ("152 patent"), entitled "The Ornamental Design for an Ergonomic Pressure Calibration Pump." (Compl. ¶ 11.) Plaintiff alleges that two of Martel's pressure calibration pumps infringe on the [*3] '152 patent. (Id. ¶¶ 12, 16.) It appears that Plaintiff's allegations of infringement center around the pumps' handles, which Plaintiff contends infringe on his

ANDREW DWYER

ergonomic design. (Id. ¶ 16.)

## DISCUSSION

### I. Legal Standards

#### A. Rule 12(b)(2)

"On a _Rule 12(b)(2)_ motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." _Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996)_. "Unlike a motion to dismiss pursuant to _Rule 12(b)(6)_, deciding a _Rule 12(b)(2)_ motion necessarily requires resolution of factual matters outside the pleadings." _ADP Investor Commun. Servs. v. In House Atty. Servs., 390 F. Supp. 2d 212, 217 (E.D.N.Y. 2005)_. Where, as here, a defendant's 12(b)(2) motion is "made before any discovery, [a plaintiff] need only allege facts constituting a prima facie showing of personal jurisdiction." _PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997); see also Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)_. In opposing a _Rule 12(b)(2)_ motion prior to discovery, "[w]here a court [has chosen] not to conduct a full-blown evidentiary hearing on the [*4] motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." _Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005)_ (internal quotations marks and citations omitted) (alteration in original). Furthermore, "[w]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." _Wickers Sportswear, Inc. v. Gentry Mills, Inc., 411 F. Supp. 2d 202, 205-206 (E.D.N.Y. 2006)_ (quoting _Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001))_.

"In deciding a question of personal jurisdiction, district courts must conduct a two-part analysis, looking first to the state's long-arm statute and then analyzing whether jurisdiction comports with federal due process." _Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L._, 264 F.3d 32, 37 (2d Cir. 2001). The two part analysis is sequential; if the district court finds no basis for long arm jurisdiction, it need not engage in a federal due process analysis. _Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997)_.

#### B. 28 U.S.C. § 1404(a)

In **[*5]** a motion to transfer pursuant to _28 U.S.C. §_ 1404(a), the movant bears the burden of establishing, by clear and convincing evidence, that a transfer is appropriate, and that the motion should be granted. _Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 327 (E.D.N.Y. 2006)_. Further, the movant must support its motion with a detailed factual affidavit. See id. Lastly, deference must be given to the plaintiff's choice of forum and "transfer should be ordered only if the balance of conveniences weighs strongly in favor of the change of forum." _Kroll v. Lieberman, 244 F. Supp. 2d 100, 102-03 (E.D.N.Y. 2003)_.

### II. Personal Jurisdiction

Both the Murch Defendants and JMTS move to dismiss based on lack of personal jurisdiction. A defendant may be subject to either general or specific jurisdiction in New York. General jurisdiction exists if the defendant's contacts with New York State are so substantial that personal jurisdiction exists in New York over any dispute. See _Nautilus Ins. Co. v. Adventure Outdoors, Inc._, No. 06-CV-3350, 247 F.R.D. 356, 2007 U.S. Dist. LEXIS 94478, at *6-7 (E.D.N.Y. Dec. 27, 2007) ("For general jurisdiction, i.e., exercise of jurisdiction over any dispute involving the **[*6]** party, plaintiff's cause of action need not arise out of defendant's contacts with the forum state -- rather, the defendant's contacts with the state must be substantial."). Here, general jurisdiction does not exist over the Murch Defendants or JMTS. Murch Associates and Murch Manufacturing are New Hampshire corporations with their principal offices in New Hampshire, they transact business solely in the state of New Hampshire, and do not conduct business or have licenses to conduct business in the state of New York. (Murch Decl. ¶¶ 6, 8-9.) Additionally, Murch is a New Hampshire resident. (Id. ¶ 7.) JMTS is a Louisiana corporation with businesses located only in Louisiana and Texas. (Morrison Decl. ¶ 1.) Furthermore, JMTS is licensed to do business in Louisiana but not in New York, and does not conduct any business in New York. (Id. ¶ 2.) As a result, neither the Murch Defendants nor JMTS have substantial contacts with New York state sufficient to establish general jurisdiction over them.

New York may still have personal jurisdiction over the Murch Defendants and JMTS if their interaction with this state satisfies one of the specific jurisdiction tests outlined in New York's long-arm **[*7]** statute. The statute creates personal jurisdiction over a non-domiciliary that either: (1) transacts business within the state or contracts to supply goods or services in the state, (2) commits a tortious act, other than defamation, within the state, (3) commits a tortious act outside the

ANDREW DWYER

state causing injury to a person or property within the state, if the defendant (i) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;" and lastly (4) owns, uses, or possesses real property in New York. See *N.Y. C.P.L.R. § 302(a)*.

As noted, Plaintiff bears the burden of establishing personal jurisdiction over the Murch Defendants and JMTS. Plaintiff has not responded to the motions to dismiss for lack of personal jurisdiction, and has not alleged any facts indicating that New York State has personal jurisdiction over the Murch Defendants or JMTS. The Complaint alleges, very generally and conclusory, that Defendants [*8] have infringed on Plaintiff's patent "during the course of [their] business in [the] State of New York," that they have "a major outlet for their infringing products in the State of New York," and "Defendants infringing activities in the United States and this District include development, manufacture, use, sales and offering for sale, pressure calibration pumps having handles using the Plaintiff's ergonomic design." (Compl. ¶¶ 9-10, 16.) The Murch Defendants have submitted a Declaration, under penalty of perjury, stating that none of the Murch Defendants have designed, manufactured, sold, offered for sale, or had any business dealings regarding the handle that is the subject of this action. (Murch Decl. ¶¶ 4-5.) Additionally, neither Murch Associates nor Murch Manufacturing transacts business in New York, contracts to send goods or services in New York, or advertises in New York. (Id. ¶¶ 8, 11-12.) Furthermore, they do not have offices or employees in New York, and do not rent, lease, or own real property within the state of New York. (Id. ¶¶ 9-10.) Similarly, JMTS's president, Scott Morrison, submitted a declaration stating that JMTS has never sold or distributed the calibration [*9] pressure pumps at issue in this action. (Morrison Decl. ¶ 3.) JMTS is not licensed to do business in New York, has never had any offices, employees, or distributors in the state of New York, and does not direct any advertising to New York. (Id. ¶¶ 4, 6.) Furthermore, JMTS does not own, rent, or lease any property within the state of New York. (Id. ¶ 5.) Clearly, neither the Murch Defendants nor JMTS are subject to New York's long-arm jurisdiction.

Based on the record, Plaintiff has failed to meet his burden of establishing that personal jurisdiction exists over the Murch Defendants or JMTS. Accordingly, the Court DISMISSES Plaintiff's claims against the Murch Defendants and JMTS. Because the Court dismisses Plaintiff's claims against the Murch Defendants for lack of personal jurisdiction, it declines to address Murch Defendants' *Rule 12(b)(6)* motion to dismiss.

III. Motion To Transfer Venue

Martel moves to transfer this case to the District of New Hampshire pursuant to *28 U.S.C. § 1404(a)*. *Section 1404(a)* states that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might [*10] have been brought." See *28 U.S.C. § 1404(a)*. The goal of *Section 1404(a)* "is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)* (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960)) (internal quotation marks omitted).

To grant a transfer pursuant to *28 U.S.C. § 1404(a)*, the Court engages in a two-pronged inquiry. See *Frasca v. Yaw, 787 F. Supp. 327, 330 (E.D.N.Y. 1992)*. First, whether the action sought to be transferred is one that "might have been brought" in the district court in which the movant seeks to have the case litigated. *Frasca, 787 F. Supp. at 330*; *Kroll, 244 F. Supp. 2d at 102*. "If the proposed venue is proper, the court then considers whether the transfer will serve the convenience of witnesses and parties and is in the interests of justice." *Kroll, 244 F. Supp. 2d at 102*. The parties do not dispute that this action could have been brought in the District of New Hampshire. See *28 U.S.C. § 1400(b)* (providing that "any civil action for patent infringement [*11] may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business"). Accordingly, the Court focuses on the second prong of the inquiry.

When analyzing the second prong, the Court looks to several factors, including the (1) convenience of the parties; (2) convenience of witnesses; (3) relative means of the parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) trial efficiency and how

best to serve the interests of justice, based on an assessment of the totality of material circumstances. See Neil Bros., 425 F. Supp. 2d at 327-28; see also Lighting World, Inc. v. Birchwood Lighting, Inc., No. 01-CV-4751, 2001 U.S. Dist. LEXIS 16981, at *10 (S.D.N.Y. Oct. 16, 2001). None of these factors are singularly dispositive; rather, the Court weighs all the factors in making its determination. Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000); [*12] see also Frasca, 787 F. Supp. at 330. Moreover, the Court has broad discretion in determining whether transfer is warranted. See Neil Bros., 425 F. Supp. 2d at 328; Lighting World, 2001 U.S. Dist. LEXIS 16981, at *10. As discussed below, the Court finds that the factors weigh in favor of granting the transfer.

A. Convenience Of Witnesses And Ability To Compel Attendance

"The location of relevant witnesses and other evidence is a major factor to be considered in a transfer action." Frasca, 787 F. Supp. at 331. In fact, the convenience of the party and non-party witnesses is "the single-most important factor in the analysis of whether a transfer should be granted." Id. "Because of the importance of this factor, the party seeking transfer 'must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.'" Neil Bros., 425 F. Supp. 2d at 329 (quoting Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001)). Further, the Court should not "merely tally" the number of witnesses, but rather must "qualitatively evaluate the materiality of the testimony that the witnesses may provide." Neil Bros., 425 F. Supp. 2d at 329 [*13] (internal quotation marks omitted). "In the context of a patent infringement suit, a court should give particular consideration to individuals who can testify about the technology of the allegedly infringing inventions." Int'l Sec. Exch., LLC v. Chi. Bd. Options Exch., Inc., No. 06-CV-13445, 2007 U.S. Dist. LEXIS 38427, at *8 (S.D.N.Y. May 24, 2007).

Martel specifically identified four potential witnesses and generally references other potential witnesses. Of the witnesses specifically identified, three, Messrs. Tom Fatur and Mark Desmarais and Ms. Carol Greenwood, are employed by Martel, and work and reside in New Hampshire. (Fatur Decl. ¶ 13; Desmarais Decl. ¶ 7; Greenwood Decl. ¶ 3.) Mr. Desmarais is expected to testify regarding the design and development by Martel of the allegedly infringing pumps, as well as the functionality of the pump handle and pressure pump head described in the '152 patent. (Desmarais Decl. ¶ 6;

Fatur Decl. ¶ 15.) The fourth witness, Ms. Maggie Weeks, is a third-party also located in New Hampshire. (Fatur Decl. ¶ 14.) Ms. Weeks is expected to testify as to Martel's use of designs that pre-date the '152 patent. (Id.) The other potential witnesses, who are [*14] not referred to by name, are also employees of Martel who, presumably, are located in New Hampshire. (Id. ¶ 15.) Although Plaintiff states in his opposition to the motion that his witnesses are located in New York State, he fails to identify any witnesses. (Pl.'s Opp. 1.)

The location of the witnesses is "generally relevant only with respect to third-party witnesses, since employees of the parties will . . . be available in any venue by virtue of the employment relationship." Merkur v. Wyndham Int'l, Inc., No. 00-CV-5843, 2001 U.S. Dist. LEXIS 4642, 2001 WL 477268, at *4 (E.D.N.Y. Mar. 30, 2001) (quoting Praxair, Inc. v. Morrison Knudsen Corp., No. 00-CV-0892E, 2001 U.S. Dist. LEXIS 1130, at *13 (W.D.N.Y. Feb. 6, 2001) (internal quotation marks omitted)). Therefore, the number of potential employee witnesses is of much less significance than the third-party witness who is located in New Hampshire.

Additionally, with respect to third-party witnesses, "[a]vailability of compulsory process is an important consideration in transfer motions." Int'l Sec. Exch., 2007 U.S. Dist. LEXIS 38427, at *11. Although Martel does not indicate that Ms. Weeks would refuse to appear in New York, Martel correctly notes that she is not [*15] subject to New York's subpoena power. See Fed. R. Civ. P. 45(b)(2) (providing that district court can enforce a trial subpoena served on a witness within the judicial district of the court, or within 100 miles of the court).

Based on the location of the only third-party witness identified, and the location of Mr. Desmarais, who is expected to testify regarding the design, development, and functionality of the pump, this factor weighs in favor of transfer.

B. Convenience And Relative Means Of The Parties

In addition, the parties' residences are to be considered in a motion to transfer. Plaintiff is a resident of Nassau County, New York. Martel is a New Hampshire corporation with its principal place of business in Londonderry, New Hampshire. With respect to the parties, therefore, a transfer from the Eastern District of New York to the District of New Hampshire would simply shift the inconvenience from Defendant to Plaintiff. See Merkur, 2001 U.S. Dist. LEXIS 4642, 2001 WL 477268, at *4 ("A transfer should not merely shift the burden of

inconvenience from one party to the other."). Accordingly, this factor does not weigh in favor of transfer.

Furthermore, where an economic disparity between the parties exists, the [*16] Court may also consider the relative means of the parties in determining whether to transfer. See 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 135 (S.D.N.Y. 1994). However, "a party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." Neil Bros., 425 F. Supp. 2d at 331 (internal quotation marks omitted).

Although the Court does note that Plaintiff is an individual, proceeding pro se, and Martel is a corporation, Plaintiff offered no documentation showing that litigating this action in the District of New Hampshire would impose an undue hardship upon him. See Neil Bros., 425 F. Supp. 2d at 331 (finding the weight of this factor significantly weakened when plaintiff failed to offer documentation). Accordingly, the Court will treat this factor as neutral.

C. Locus Of Operative Facts And Relative Ease Of Access To Sources Of Proof

Equally important in a patent infringement case, however, is the locus of operative facts. See Lighting World, 2001 U.S. Dist. LEXIS 16981, at *11 ("Perhaps the most important of the above factors is the identification of [*17] the locus of operative facts"); see also i Create Int'l, Inc. v. Mattel, Inc., 03-CV-3993, 2004 U.S. Dist. LEXIS 15477, at *9 (S.D.N.Y. Aug. 6, 2004) ("the locus of operate facts carries significant weight"). "In patent infringement cases, the locus of operative facts is where the design, development, and production of an allegedly infringing product took place. I Create Int'l, 2004 U.S. Dist. LEXIS 15477, at *9. Here, the District of New Hampshire is the locus of the operative facts because the alleged infringing product was designed, developed, and produced by Martel in New Hampshire. (Fatur Decl. ¶¶ 3, 5; Desmarais Decl. ¶ 2.) Plaintiff's contention that his documents and records are located in New York is irrelevant; it is the location of the development and production of the allegedly infringing product, as well as the documents related to such product, that is relevant to this factor. See Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 374 (S.D.N.Y. 2006) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the

defendant's documents are kept weighs in favor of transfer to that [*18] location.") (internal quotation marks and citations omitted). Accordingly, this important factor strongly favors Martel.

D. Weight Accorded Plaintiff's Choice Of Forum

A plaintiff's choice of forum is typically entitled to "great weight." Frasca, 787 F. Supp. at 332. Indeed, Plaintiff's choice of forum "should not be disturbed unless the balance of the factors tips heavily in favor of a transfer." Merkur, 2001 U.S. Dist. LEXIS 4642, 2001 WL 477268, at *3 (quoting S-Fer Int'l, Inc. v. Paladion Partners, Ltd., 906 F. Supp. 211, 213 (S.D.N.Y. 1995)). The strength of this factor is substantially diminished, however, "where the operative facts have no connection to the chosen district" or the forum state is not the plaintiff's home district. Colida v. Panasonic Corp. of N. Am., No. 05-CV-5791, 2005 U.S. Dist. LEXIS 27785, at *6 (S.D.N.Y. Nov. 10, 2005); see also Neil Bros., 425 F. Supp. 2d at 333; Merkur, 2001 U.S. Dist. LEXIS 4642, 2001 WL 477268, at *3. Although Plaintiff chose this forum and resides in this District, as previously determined, the operative facts occurred in New Hampshire. Accordingly, Plaintiff's choice of forum does not weigh against transfer in this case.

E. Governing Law

With respect to the governing law, "because patent law [*19] is federal and any district court may handle a patent case with equal skill," this factor is considered neutral. Lighting World, 2001 U.S. Dist. LEXIS 16981, at *13 n.8 (internal quotation marks and citation omitted); i Create Int'l, 2004 U.S. Dist. LEXIS 15477, at *15.

F. Trial Efficiency And Interests of Justice

This factor favors Martel. "Transfer of an action facilitates discovery when: (I) the action is in the early stages of litigation; and (ii) the transferee district is the place where the operative events occurred and where many witnesses and documents are located." 2001 U.S. Dist. LEXIS 4642, [WL] at *14 (internal quotation marks and citation omitted). Accordingly, "[t]ransfer of this action to [District of New Hampshire] would facilitate discovery, thereby promoting efficiency." 2001 U.S. Dist. LEXIS 4642, [WL] at *13-14. Additionally, because New Hampshire is the locus of operative facts, New York's interest in this action is substantially less. See 2001 U.S. Dist. LEXIS 4642, [WL] at *14. Docket congestion is not a particularly relevant factor in this case.

Having carefully considered all the factors, the Court GRANTS Martel's motion to transfer this action to the

2008 U.S. Dist. LEXIS 124174, *19

District of New Hampshire.

CONCLUSION

For the foregoing reasons, Martel's motion to transfer is [*20] GRANTED, and the Murch Defendants' and JMTS' motions to dismiss based on lack of personal jurisdiction are GRANTED.

The Clerk of the Court is directed to (1) TERMINATE Murch Associates, Inc., Murch Manufacturing, Inc., Charles Murch, and J.M. Test Systems, Inc., as parties to this action, and (2) transfer this case to the United States District Court for the District of New Hampshire.

SO ORDERED.

/s/ JOANNA SEYBERT

Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York

September 30, 2008

End of Document

ANDREW DWYER


Positive
As of: March 9, 2018 8:27 PM Z

## *Larew v. Larew*

United States District Court for the Southern District of New York

January 10, 2012, Decided; January 10, 2012, Filed

11 Civ. 5771 (BSJ) (GWG)

**Reporter**
2012 U.S. Dist. LEXIS 2891 *; 2012 WL 87616

REBECCA LAREW, Plaintiff, -v.- ANDREW LAREW et al., Defendants.

## Core Terms

witnesses, operative facts, venue, factors, parties, reside, allegations, Associates, weighs, locus, convenience of the parties, internal quotation marks, district court, citations, Courts, motion to transfer, choice of forum, documents, non-party, convenience, principal place of business, convenience of witnesses, interest of justice, taking place, inconvenience, transactions, transferred, divorce, papers

**Counsel:** [*1] For Rebecca Larew, Plaintiff: Richard N. Freeth, LEAD ATTORNEY, Freeth & Clay, LLP, New York, NY; Damian Adrien Laugher, Winget, Spadafora & Schwartzberg, LLP, New York, NY.

For Andrew Larew, Tony Fiorito, John Funiciello, Christine Wojcik, Alan Doyle, John Shannon, 224 Harrison Associates, LLC, Armory Associates, LLC, 65-35 Queens Associates, LLC, 1401 Erie Boulevard East, LLC, Vinegar Hill, LLC, Soundview Real Estate Partners, Larew, Doyle & Associates, LLC, Defendants: Mitchell J. Katz, LEAD ATTORNEY, Menter, Rudin & Trivelpiece, Syracuse, NY; George Foulke du Pont, Paul D. Sarkozi, Tannenbaum Helpern Syracuse & Hirschtritt LLP, New York, NY.

For Charles Sangster, Brittonfield Associates, LLC, Defendants: Paul D. Sarkozi, LEAD ATTORNEY, Tannenbaum Helpern Syracuse & Hirschtritt LLP, New York, NY; Ashley Duvall Hayes, Hancock & Estabrook, LLP, Syracuse, NY.

For Paula Deckman, Defendant: Gail L. Ritzert, Havkins Rosenfeld Ritzert & Varriale, LLP, New York, NY.

For Central New York Associates, LLC, Atrium Associates, LLC, 460 North Franklin Street Associates, LLC, Defendants: Mitchell J. Katz, LEAD ATTORNEY, Menter, Rudin & Trivelpiece, Syracuse, NY; Paul D.

Sarkozi, LEAD ATTORNEY, Tannenbaum [*2] Helpern Syracuse & Hirschtritt LLP, New York, NY.

For 460 North Franklyn Street Associates, LLC, Defendant: George Foulke du Pont, Paul D. Sarkozi, Tannenbaum Helpern Syracuse & Hirschtritt LLP, New York, NY.

**Judges:** GABRIEL W. GORENSTEIN, United States Magistrate Judge.

**Opinion by:** GABRIEL W. GORENSTEIN

## Opinion

### OPINION AND ORDER

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Rebecca Larew ("Rebecca") has brought suit against her former husband Andrew Larew ("Andrew"); Tony Fiorito; John Funiciello; Christine Wojcik; Alan Doyle; Charles Sangster; John Shannon; Paula Deckman; Central New York Associates, LLC ("CNY"); Atrium Associates, LLC ("Atrium"); 224 Harrison Associates, LLC ("Harrison"); Armory Associates, LLC ("Armory"); 65-35 Queens Associates, LLC ("Queens"); 460 North Franklin Street Associates, LLC ("Franklin"); 1401 Erie Boulevard East, LLC ("Erie"); Vinegar Hill, LLC ("Vinegar Hill"); Brittonfield Associates, LLC ("Brittonfield"); Soundview Real Estate Partners ("Soundview"); and Larew, Doyle & Associates, LLC ("LDA") (collectively, "the defendants") pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), *18 U.S.C. § 1961 et seq.*, and state law. The defendants have [*3] filed a motion pursuant to *28 U.S.C. § 1404(a)* seeking to transfer the case to the United States District Court for the Northern District of New York. For the following reasons, defendants'

2012 U.S. Dist. LEXIS 2891, *3

motion is granted.

## I. BACKGROUND

### A. Procedural History

This action started when plaintiff filed a complaint in the Supreme Court of the State of New York, County of New York. See Summons and Complaint, filed July 18, 2011 (annexed as Ex. A to Notice of Removal, filed Aug. 18, 2011 (Docket # 1) ("Notice of Removal")) ("Compl."). The defendants removed the case to United States District Court for the Southern District of New York (the "Southern District"). See Notice of Removal. Shortly thereafter, the defendants filed the instant motion seeking a transfer of the action to the United States District Court for the Northern District of New York (the "Northern District").[1]

### B. Facts Relevant to Venue

#### 1. Allegations in the Complaint

The complaint alleges that defendants have acted as a criminal organization to deprive Rebecca of money which was awarded to her in her divorce action against Andrew in Connecticut state court. See Compl. ¶¶ 3, 5, 41. Specifically, Rebecca argues that Andrew and his co-defendants conspired to hide his assets, thereby lowering the amount he would have to pay under the court-ordered support agreement in their [*5] divorce proceeding. See id. ¶¶ 1, 3, 4, 42, 48, 55. The complaint asserts the following claims: (1) RICO; (2) fraud; (3) conversion; (4) violation of the New York State Debtor and Creditor Law; and (5) "prima facie tort — economic injury." See Compl. ¶¶ 86-118.

---

[1] See Notice of Motion to Change Venue to the District Court for the Northern District of New York, filed Sept. 8, 2011 (Docket # 23); Memorandum of Law in Support of Defendants' Motion to Change Venue to the District Court for the Northern District of New York, filed Sept. 8, 2011 ("Def. Mem. of Law"); Affidavit of Anthony [*4] F. Fiorito, filed Sept. 8, 2011 (Docket # 25) ("Fiorito Aff."). Plaintiff submitted papers in opposition, see Affidavit of Rebecca Larew, filed Nov. 1, 2011 (Docket # 49) ("Rebecca Aff."); Declaration of Richard Freeth in Support of Plaintiff's Opposition to the Motion for Change of Venue, filed Nov. 1, 2011 (Docket # 50) ("Freeth Decl."); Opposition to Motion to Change Venue to the District Court for the Northern District of New York, filed Nov. 1, 2011 (Docket # 51) ("Opp. Mem."), and defendants submitted reply papers, see Reply Memorandum of Law in Further Support of Defendants' Motion to Transfer Venue, filed Nov. 14, 2011 (Docket # 59) ("Reply"); Affidavit of Andrew Larew, filed Nov. 14, 2011 (Docket # 60) ("Andrew Aff.").

### 2. The Parties

Rebecca is a resident of Southport, Connecticut. Id. ¶ 7. At the time of the filing of her opposition papers on this motion, Rebecca's sole income was a $5,500 monthly support payment, which was scheduled to end on October 20, 2011. Rebecca Aff. ¶ 3. While Rebecca states that she is a "divorced stay-at-home mother," id., Andrew was awarded "sole legal and physical custody" of their children on July 1, 2011, Andrew Aff. ¶¶ 4, 5.

Andrew is a "real estate developer with interests throughout New York State." Compl. ¶ 8. He is currently married to defendant Wojcik. Id. ¶ 11. Andrew and Wojcik currently reside in New York, New York, id. ¶¶ 8, 11, in the Southern District, although they did not live there during the time period of most of the events in the complaint, see Andrew Aff. ¶ 7. Defendants Fiorito and Funiciello are friends and business associates of Andrew's. Compl. ¶¶ 9, 10. Funiciello resides in Baldwinsville, [*6] New York, id. ¶ 10, which is located in the Northern District. Fiorito resides in Liverpool, New York, Fiorito Aff. ¶ 3, which is also located in the Northern District. Defendant Doyle is a friend and business associate of Andrew's. Compl. ¶ 12. His business address is in Providence, Rhode Island, id., though he has a business based in New York County in the Southern District, see Freeth Decl. ¶ 4. Defendant Sangster is a business partner of Andrew's. Compl. ¶ 13. He resides in Manlius, New York, id., which is in the Northern District. Defendant Shannon is an accountant for Andrew. Id. ¶ 14. His last known business address was in Oneida, New York, id., which is also in the Northern District. Defendant Deckman is another accountant for Andrew. Id. ¶ 15. Her principal place of business is in Syracuse, New York, id., which is also in the Northern District.

Defendants CNY, Atrium, Harrison, Armory, Queens, Franklin, Erie, Vinegar Hill, and Brittonfield are New York limited liability companies. Id. ¶¶ 16-24. Their principal places of business are in Syracuse, New York, id., in the Northern District. Defendant Soundview is a Delaware limited liability company. Id. ¶ 25. Its principal place [*7] of business is in Stamford, Connecticut. Id. Defendant LDA is a New York limited liability company. Id. ¶ 26. Its principal place of business is in New York, New York, id., which is in the Southern District.

Defendants Atrium, Harrison, Armory, Vinegar Hill, Franklin, Erie, and Queens are single purpose entities each of which "owns a single project." Fiorito Aff. ¶ 13. They keep their books and records, including financial

Case 1:18-cv-01456-AT-SDA   Document 10   Filed 04/09/18   Page 49 of 57

Page 3 of 7
2012 U.S. Dist. LEXIS 2891, *7

information and official corporate records, in Syracuse, New York, Fiorito Aff. ¶ 6, which is in the Northern District. They are managed by a management company, Partnership Properties, which also has its principal office in Syracuse, New York, and keeps its books and records there. Id. ¶¶ 7-10. Defendant Vinegar Hill owns property in Oswego, New York, id. ¶ 13(d), which is located in the Northern District. Defendant Brittonfield owns property in Dewitt, New York, id. ¶ 69, which is also located in the Northern District. Defendants Atrium, Harrison, Armory, Franklin, and Erie each own property in Syracuse, New York, Fiorito Aff. ¶¶ 13(a)-(c), (e), (f), in the Northern District. Queens owns a building in Queens, New York, id. ¶ 13(g), which is located in the Eastern [*8] District of New York. Defendant LDA owns property in Killington, Vermont. Compl. ¶ 70.

## II. DISCUSSION

### A. Law Governing Motions to Transfer to Another Judicial District

Absent the consent of all parties, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Thus, the decision whether to transfer a case from one judicial district to another absent unanimous consent requires a two-part inquiry. First, the court must determine whether the case sought to be transferred could have been brought in the proposed transferee court. Second, the court must decide whether transfer is warranted for the convenience of parties and witnesses and is in the interest of justice. See, e.g., Whitehaus Collection v. Barclay Prods., Ltd., 2011 U.S. Dist. LEXIS 97554, 2011 WL 4036097, at *1 (S.D.N.Y. Aug. 29, 2011); Matta v. Roswell Park Cancer Inst. Corp., 2011 U.S. Dist. LEXIS 81006, 2011 WL 3104889, at *3 (S.D.N.Y. July 26, 2011). [*9] Here, it is undisputed that this action could have been brought in the Northern District. Therefore, only the second part of the inquiry is at issue.

The Second Circuit has held that "courts should give deference to a plaintiff's choice of forum." Iragorri v. United Techs. Corp., 274 F.3d 65, 70 (2d Cir. 2001). Nonetheless, "if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Id. at 71 (citations omitted). Whether transfer should occur is "determined upon notions of convenience and fairness on a case-by-case basis." In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir.

1992) (citing Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)); accord Orb Factory, Ltd. v. Design Sci. Toys, Ltd., 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998). The moving party must make a "clear and convincing" showing that the balance of convenience favors transfer. N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 114 (2d Cir. 2010). The Second Circuit has noted that among the factors to be considered in determining whether to grant a motion to transfer venue are the following:

> (1) the plaintiff's [*10] choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

Id. at 112 (citations omitted). Courts have also considered "(8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice." Fellus v. Sterne, Agee & Leach, Inc., 783 F. Supp. 2d 612, 618 (S.D.N.Y. 2011); accord AIG Fin. Prods. Corp. v. Pub. Util. Dist. No. 1, 675 F. Supp. 2d 354, 368 (S.D.N.Y. 2009).

"There is no rigid formula for balancing these factors and no single one of them is determinative. Instead, weighing the balance is essentially an equitable task left to the Court's discretion." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (citations and internal quotation marks omitted). While the list of factors is not exhaustive, see Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001), no party has suggested that any other factor should be considered.

### B. Application [*11] of the Section 1404(a) Factors

#### 1. Convenience of the Parties and Non-Party Witnesses

"The convenience of parties and witnesses is considered the essential criteri[on] under the venue statute." In re Nematron Corp. Secs. Litig., 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998) (quoting Cento Grp., S.p.A. v. OroAmerica, Inc., 822 F. Supp. 1058, 1060 (S.D.N.Y. 1993)) (bracketing added and internal quotation marks omitted); accord AGCS Marine Ins. Co. v. Associated Gas & Oil Co., 775 F. Supp. 2d 640, 647 (S.D.N.Y. 2011); Seltzer v. Omni Hotels, 2010 U.S. Dist. LEXIS 103495, 2010 WL 3910597, at *2 (S.D.N.Y. Sept. 30, 2010); Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 988 (E.D.N.Y. 1991). We first address the

convenience of the parties and then the convenience of non-party witnesses.

a. Convenience of Parties

The convenience of the parties weighs heavily in favor of transfer in this case. Of the twenty parties to this case, only three, Andrew, Wojcik, and LDA, are currently located in the Southern District. Compl. ¶¶ 8, 11, 26. Notably, all three have joined in the motion to transfer venue to the Northern District. See Def. Mem. of Law at 3, 7. Three parties, Rebecca, Doyle, and Soundview are located in neither the Northern [*12] District nor the Southern District. See Compl. ¶¶ 7, 12, 25. Both Doyle and Soundview join in the motion for a change of venue. Def. Mem. of Law at 7. The remaining fourteen parties are all located in the Northern District. Compl. ¶¶ 9, 10, 13-24.

In other words, of the twenty parties in this case, only Rebecca seeks to have it remain in the Southern District. Rebecca argues the transfer is inappropriate because it would merely "shift inconvenience" from one party to another. Opp. Mem. at 4. However, Rebecca is not located in the Southern District, and therefore the inconvenience to her of moving from the Southern District to the Northern District is given less weight. See, e.g., Deshoulieres, S.A. v. Cuthbertson Imports, Inc., 2006 U.S. Dist. LEXIS 72023, 2006 WL 2849818, at *3 (S.D.N.Y. Oct. 3, 2006) (unimportant to foreign plaintiff if it litigates in New York or Connecticut as both are equally inconvenient); Dr. Boy, GmbH v. Nationwide Ins., 1996 U.S. Dist. LEXIS 8873, 1996 WL 350699, at *2 (S.D.N.Y. June 25, 1996) (inconvenience of a foreign corporation with no presence in New York "is 'at best a neutral factor.'") (quoting Matra et Manurhin v. Int'l Armament Co., 628 F. Supp. 1532, 1535 (S.D.N.Y. 1986)); GE Capital Franchise Fin. Corp. v. Cosentino, 2009 U.S. Dist. LEXIS 53891, 2009 WL 1812821, at *4 (W.D.N.Y. June 25, 2009) [*13] (transfer would not shift inconvenience because plaintiff would have to travel to either venue). The Court recognizes that Rebecca lives closer to the courthouses in the Southern District than to the courthouses in the Northern District. Nonetheless, because the vast majority of the parties are located in the Northern District, and no party residing outside the Northern District objects to the transfer, this factor strongly favors transfer.

b. Convenience of Witnesses

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." Herbert Ltd. P'ship v. Elec. Arts Inc.,

325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004); accord AGCS Marine Ins. Co., 775 F. Supp. 2d 640, 2011 WL 1325996, at *5; Seltzer, 775 F. Supp. 2d 640, 2010 WL 3910597, at *2; Clay Paky, S.p.A. v. Vari-Lite, Inc., 2000 U.S. Dist. LEXIS 9802, 2000 WL 977709, at *7 (S.D.N.Y. July 14, 2000). "In evaluating this factor, the court should 'look beyond the quantity of witnesses and assess the quality of the testimony to be offered.'" DealTime.com, Ltd. v. McNulty, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000) (quoting Am. Alliance Ins. Co. v. Sunbeam Corp., 1999 U.S. Dist. LEXIS 713, 1999 WL 38183, at *6 (S.D.N.Y. Jan. 28, 1999)); accord Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co., 2009 U.S. Dist. LEXIS 13369, 2009 WL 412126, at *15 (E.D.N.Y. Feb. 17, 2009) [*14] (citations omitted). Accordingly, the movant "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978), cert. denied, 440 U.S. 908, 99 S. Ct. 1215, 59 L. Ed. 2d 455 (1979); accord LeCroy Corp. v. Hallberg, 2010 U.S. Dist. LEXIS 107842, 2010 WL 3958761, at *6 (S.D.N.Y. Oct. 4, 2010). This may be satisfied by "a very general indication of [the witnesses'] role in the transaction and thus, by implication, of their testimony," although it is preferable for the moving party to submit "a more elaborate statement of probable testimony." Arrow Elecs. Inc. v. Ducommun Inc., 724 F. Supp. 264, 267 n.1 (S.D.N.Y. 1989); see generally Fellner v. Cameron, 2010 U.S. Dist. LEXIS 16208, 2010 WL 681287, at *3 (W.D.N.Y. Feb. 24, 2010) ("[A] party will not be held to the requirement of stating with precision each witness and document.") (citations and internal quotation marks omitted). Still, "a specific showing is required only when the movant seeks a transfer solely [*15] 'on account of the convenience of witnesses.' . . . [If the movant] seeks a transfer 'on account of' several factors, his failure to specify key witnesses and their testimony is not fatal." Connors v. Lexington Ins. Co., 666 F. Supp. 434, 455 (E.D.N.Y. 1987) (emphasis in original) (quoting Factors Etc., Inc., 579 F.2d at 218); accord Beckerman v. Heiman, 2006 U.S. Dist. LEXIS 39685, 2006 WL 1663034, at *5 (S.D.N.Y. June 16, 2006).

Here, defendants identify defendant Fiorito and defendant Shannon as potential witnesses, both of whom reside in the Northern District. See Def. Mem. of Law at 6-7. Defendants' papers state that Fiorito is the "managing member" of Atrium, Harrison, Armory, Vinegar Hill, Franklin, Erie and Queens, while Shannon is the accountant of the same entities. See id. Defendants also mention non-parties James Funiciello

2012 U.S. Dist. LEXIS 2891, *15

Sr. and Kristen Exner as potential witnesses. See Def. Mem. of Law at 7; Fiorito Aff. ¶ 12. Funiciello Sr. and Exner assist in "collecting the rents, paying the bills and preparing records and reports for [Atrium, Harrison, Armory, Vinegar Hill, Franklin, Erie and Queens.]" Fiorito Aff. ¶ 12. They both live in the Northern District. Id.

Rebecca has not identified any non-party witness [*16] who reside in the Southern District. She identifies as "key witnesses" all of the defendants living outside the Northern District — that is, Andrew, Wojcik, Doyle, Soundview, and LDA. See Opp. Mem. at 5-6; Freeth Decl. ¶¶ 2-6. But she fails to provide any specifics on these witnesses' roles in the transactions, or their general testimony. More importantly, all of them consent to the transfer of venue to the Northern District. See Def. Mem. of Law at 3, 7. Thus, the convenience of the witnesses identified by Rebecca should not play a part in the analysis.

Accordingly, this factor too weighs heavily in favor of transfer. See Herbert Ltd. P'ship, 325 F. Supp. 2d at 286, 292 (ordering transfer to district where majority of party and non-party witnesses reside).

2. Location of Documents and Ease of Access to Sources of Proof

"In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly. Furthermore, the location of documents is entitled to little weight unless [the movant] makes a detailed showing of the burden it would incur absent transfer." Seltzer, 2010 U.S. Dist. LEXIS 103495, 2010 WL 3910597, at *4 (citations and internal quotation marks omitted); [*17] accord K.M. v. Maclaren USA, Inc., 2011 U.S. Dist. LEXIS 53377, 2011 WL 1900137, at *3 (S.D.N.Y. Apr. 7, 2011). Here, neither party has indicated that transmitting documents or other physical evidence would be particularly burdensome. Moreover, inasmuch as the operative facts alleged in the complaint occurred in the Northern District, it is likely that the sources of proof are located within that district. Accordingly, this factor weighs in favor of transfer. See Seltzer, 2010 U.S. Dist. LEXIS 103495, 2010 WL 3910597, at *4.

3. Location of the Operative Facts

The location of a case's operative facts has been considered by some courts as a "primary factor in determining a § 1404(a) motion to transfer." Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co., 245 F.

Supp. 2d 523, 525-26 (S.D.N.Y. 2003) (internal quotation marks omitted); accord Seltzer, 2010 U.S. Dist. LEXIS 103495, 2010 WL 3910597, at *4. Rebecca asserts that "the principal acts alleged in the action occurred in [the Southern District]." Opp. Mem. at 4. However, it is unclear which of the operative facts Rebecca believes occurred in the Southern District and the complaint itself provides few indications of such facts. The defendants contend that the subject matter of the dispute took place in Onondaga County, [*18] see Def. Mem. of Law at 3, which is located in the Northern District.

The complaint alleges a conspiracy among the defendants to deprive Rebecca of money that was otherwise owed to her. See Compl. ¶¶ 27-85. In conspiracy cases, courts may look to where the transactions at issue occurred in determining the locus of operative facts. See S.E.C. v. Lybrand, 2000 U.S. Dist. LEXIS 9388, 2000 WL 913894, at *6 (S.D.N.Y. July 6, 2000) (New York was locus of operative facts because "transactions that constituted the core of the fraudulent scheme under the SEC's theory of liability were undertaken by [defendant] in New York."); cf. United States v. Nature's Farm Prods., Inc., 2004 U.S. Dist. LEXIS 8485, 2004 WL 1077968, at *5 (S.D.N.Y. May 13, 2004) (New York was not locus of operative facts because core transactions took place in California and only two alleged actions took place in New York). Here, there are no allegations as to where the transactions actually took place. Of the nineteen defendants, only three, Andrew, Wojcik, and LDA, have ever been located in the Southern District, see Compl. ¶¶ 8, 11, 26, and Andrew and Wojcik did not live there until July 2009, Andrew Aff. ¶ 7, long after most of the events alleged in the complaint. The other [*19] defendants are all located in the Northern District or the Districts of Rhode Island, Delaware, or Connecticut. See Compl. ¶¶ 9-10, 12-25.

The allegations in the complaint center around Andrew hiding assets and interests by presenting false documents to the Connecticut court handling his divorce in order to lower the amount he had to pay his ex-wife. See Compl. ¶¶ 1-3. "When examining claims for misrepresentation on a motion to transfer venue, 'misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received.'" Branthover v. Goldenson, 2011 U.S. Dist. LEXIS 142724, 2011 WL 6179552, at *3 (S.D.N.Y. Dec. 12, 2011) (quoting In re Nematron Corp. Secs. Litig., 30 F. Supp. 2d at 404). Here the misrepresentations occurred in two locales: (1) the

District of Connecticut, when Andrew allegedly presented false testimony and evidence during the Connecticut divorce proceedings, see Compl. ¶¶ 35, 36, 55; and (2) the Northern District, where tax filings and other financial documents were created allegedly to minimize Andrew's assets and income, see id. ¶¶ 68, 84, 85; Fiorito Aff. ¶¶ 7-9, 11, 12.

Courts have also interpreted the locus of operative facts as [*20] "the place where events and actors material to proving liability are located." _Amardeep Garments Indus. Pvt. Ltd. v. Cathay Bank, 2011 U.S. Dist. LEXIS 40170, 2011 WL 1226255, at *3 (S.D.N.Y. Mar. 23, 2011)_. Rebecca argues in her motion papers that Andrew is "the locus of this fraud." _See_ Opp. Mem. at 3. But Andrew did not live in the Southern District until July 2009. Andrew Aff. ¶ 7. Virtually all of the allegations of the complaint concern events that took place prior to that date. _See generally_ Compl. ¶¶ 27-74. Moreover, in her complaint Rebecca alleges that CNY "is pivotal to the scheme as it is [] the central business entity through which [Andrew] perpetrated, and continues to perpetrate, the fraudulent scheme." _Id._ ¶ 46. Yet CNY is alleged to have its principal place of business in the Northern District. _Id._ ¶ 16. All of the other defendants, with the exception of LDA and Wojcik, _id._ ¶¶ 11, 26, are similarly located outside of the Southern District, with the vast majority located in the Northern District, _see id._ ¶¶ 9, 10, 12-25.

Finally, the allegations of the complaint suggest that any misrepresentations were made in either the Northern District, _see id._ ¶¶ 68, 84, 85; Fiorito Aff. ¶¶ 7-9, 11, 12, or Connecticut, [*21] Compl. ¶¶ 35, 36, 55. The complaint alleges no operative facts that occurred within the Southern District. Therefore, this factor weighs strongly in favor of transfer. _See Ill. Union Ins. Co. v. NRG Energy, Inc., 2010 U.S. Dist. LEXIS 130677, 2010 WL 5187749, at *2-3 (S.D.N.Y. Dec. 6, 2010)_ (granting motion to transfer where no operative facts in complaint occurred in forum district); _Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 405 (S.D.N.Y. 2005)_ (transferring case to Pennsylvania even where "it is unclear whether Pennsylvania is the locus of operative facts [because] it is clear that New York is not" and holding that "[w]here there is no material connection between the district and the operative facts, . . . the interests of justice require the transfer of [the] action") (citation and internal quotation marks omitted).

4. Availability of Process to Compel Unwilling Witnesses

Here, neither party has presented evidence that any non-party witnesses would not be subject to process in the Northern District. Therefore, there is no reason to believe that one court is better situated than the other to compel the testimony of unwilling witnesses.

5. Relative Means of the Parties

"Where disparity [*22] exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." _Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998)_; _accord Zinky Elecs. LLC v. Victoria Amplifier Co., 2009 U.S. Dist. LEXIS 61664, 2009 WL 2151178, at *7-8 (D. Conn. June 24, 2009)_. However, this factor will be accorded "little or no significance" absent a showing of disparity of means between plaintiffs and defendants. _Hernandez, 761 F. Supp. at 989_; _accord Emblaze Ltd. v. Apple, Inc., 2011 U.S. Dist. LEXIS 21082, 2011 WL 724275, at *4 (S.D.N.Y. Feb. 24, 2011)_. While Rebecca contends that the Court should take this factor into account, _see_ Opp. Mem. at 6; Rebecca Aff. ¶¶ 3, 4, she has failed to provide the Court with any details of her financial status. Rebecca does contend that she will have to retain new counsel if the matter is transferred. _See_ Opp. Mem. at 6. But it is more than likely that an attorney located in the Northern District would charge lower rates than an attorney in the Southern District. _See generally Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 185-86 (2d Cir. 2008)_ (taking as established that attorneys in the Southern District [*23] charge "higher rates than those prevailing in the Northern District of New York"). In any event, there is no indication that current counsel would be unable to appear pro hac vice in the Northern District or that Rebecca would be unable to pay the incremental costs associated with a transfer, such as traveling expenses for her attorney.

6. Forum's Familiarity with the Governing Law

Both the transferor and the transferee courts are located within New York and thus are familiar with New York law. Accordingly, this factor does not weigh in either party's favor.

7. Plaintiff's Choice of Forum

District courts deciding transfer motions have noted that "[a] plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant. Where the factors are equally balanced, the plaintiff is entitled to its choice." _Berman, 30 F. Supp. 2d at 659_ (citations omitted); _accord In re Warrick, 70 F.3d 736, 740-41 (2d Cir. 1995)_ ("[Plaintiff's] choice of venue

[is] entitled to substantial consideration.") (citation and internal quotation marks omitted); _WorldCare Ltd. v. World Ins. Co., 767 F. Supp. 2d 341, 363 (D. Conn. 2011)_. [*24] However, "plaintiffs' choice of forum is accorded less weight where the plaintiffs' chosen forum is neither their home nor the place where the operative facts of the action occurred." _Dwyer v. Gen. Motors Corp., 853 F. Supp. 690, 694 (S.D.N.Y.1994)_; accord _Emp'rs Ins. of Wausau v. News Corp., 2008 U.S. Dist. LEXIS 76570, 2008 WL 4443899, at *3 (S.D.N.Y. Sept. 29, 2008)_ ("[W]here the plaintiff has chosen a forum that is neither the district of its residence, nor the locus of the operative facts in the case, this choice is given considerably less weight."); _Kwik Goal, Ltd. v. Youth Sports Publ'g Inc., 2006 U.S. Dist. LEXIS 34460, 2006 WL 1517598, at *2 (S.D.N.Y. May. 31, 2006)_ (Plaintiff's choice of forum was entitled to "less deference" where the forum was not plaintiff's "home state" and "the case lack[ed] material or significant contacts with the forum state" because "no one involved in th[e] litigation [was] located in the SDNY" and the sales in the district "were minimal."); _ZPC 2000, Inc. v. SCA Grp., Inc._, 86 F. Supp. 2d 274, 280 (S.D.N.Y. 2000) ("[W]hen a plaintiff brings a suit . . . in a forum that has no material connection with the action, this factor should be given little weight.") (internal quotation marks and citations omitted) [*25] (alteration in original).

In the instant case, plaintiff does not reside in the Southern District. Nor, as previously discussed, did the operative facts occur in the Southern District. Accordingly, plaintiff's choice of forum is accorded little weight.

8. Trial Efficiency and Interest of Justice

Defendants argue that the case is "likely to proceed to trial more rapidly in the [Northern District] than in this Court." Def. Mem. of Law at 8. In support of this argument, the defendants present statistics showing that the median time to trial in the Northern District is 25.8 months as opposed to 30.9 months in this Court. Id. at 8-9 (citing Admin. Office of the U.S. Courts, Fed. Judicial Caseload Statistics: March 31, 2010, Table C-5 (2010)). Rebecca does not dispute this assertion. Accordingly, this factor weighs in favor of transfer.

C. Result of Balancing of the Factors

A balancing of the factors easily leads to the conclusion that this case should be transferred to the Northern District. With respect to the most important factors, it would be more convenient to the parties and nonparty witnesses for this case to be litigated in the Northern

District rather than the Southern District. Furthermore, [*26] the locus of operative facts is in the Northern District. None of the remaining factors weighs strongly in favor of plaintiff and most either weigh in favor of the defendants or are neutral. Therefore, defendants have shown by clear and convincing evidence that the balance of conveniences favors transferring this case to the Northern District.

III. CONCLUSION

For the reasons stated above, the defendants have made a meritorious motion to transfer. The Court will delay issuing an order to transfer until after January 25, 2012, to allow plaintiff to move for a stay in the event she seeks review of this Opinion and Order pursuant to _Federal Rule of Civil Procedure 72(a)_. In the absence of an order granting such a stay, however, the Court will direct the Clerk, by separate order, to effectuate the transfer on or after January 25, 2012.

Dated: January 10, 2012

New York, New York

/s/ Gabriel W. Gorenstein

GABRIEL W. GORENSTEIN

United States Magistrate Judge

ANDREW DWYER

 Positive
As of: March 9, 2018 8:37 PM Z

## *Raines v. Switch Mfg. Corp.*

United States District Court for the Southern District of New York

July 23, 1996, Decided ; July 24, 1996, FILED

96 Civ. 2361 (JFK)

**Reporter**
1996 U.S. Dist. LEXIS 10367 *; 1996 WL 413720

MARK A. RAINES, GREGORY A. DEENEY and PRESTON BINDING CO., Plaintiffs, -against- SWITCH MANUFACTURING CORP., Defendant.

**Disposition: [*1]** Defendant's motion for transferring this action granted.

## Core Terms

patent, witnesses, infringement, parties, Manufacturing, inconvenience, documents, Factors, binding

## Case Summary

### Procedural Posture

Plaintiffs, snowboard binding patent inventors and a patent purchaser, filed a patent infringement action against defendant, a binding manufacturer. The manufacturer filed a motion for an order transferring the action pursuant to *28 U.S.C.S. § 1404(a)* to district of the manufacturer's principal place of business.

### Overview

The inventors were Oregon residents, and the purchaser was a corporation with its principal place of business in Washington. The manufacturer was a corporation with its principal place of business in California. Plaintiffs filed their patent infringement action in New York, and the manufacturer filed a motion under *§ 1404(a)* to transfer venue to California. The court granted the manufacturer's motion. The court held that transfer was favorable under *§ 1404(a)*. Plaintiffs alleged creation of the binding and their efforts to patent the creation, as well as the manufacturer's alleged infringement all occurred in the western United States. Also, plaintiffs did not reside in or do substantial business in New York. Additionally, the relevant documentary evidence was not claimed to be located in New York. Further, the majority of witnesses either resided in the western United States or were required to

travel from locations other than New York. Thus, retaining the action in New York would both unduly burden the manufacturer and needlessly complicate the litigation process, which outweighed whatever minimal inconvenience accrued to plaintiffs from a transfer.

### Outcome

The court granted the manufacturer's motion to transfer the action.

## LexisNexis® Headnotes

Civil Procedure > ... > Venue > Federal Venue Transfers > Convenience Transfers

Copyright Law > ... > Civil Infringement Actions > Jurisdiction > General Overview

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

*HN1*[ ] **Federal Venue Transfers, Convenience Transfers**

A defendant may move to transfer a civil action for the convenience of the parties and witnesses and in the interest of justice to any other district or division where it might initially have been brought. *28 U.S.C.S. § 1404(a)*.

Civil Procedure > ... > Venue > Federal Venue Transfers > Convenience Transfers

Civil Procedure > Preliminary Considerations > Venue > General Overview

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

*HN2*[⬇] **Federal Venue Transfers, Convenience Transfers**

A determination on a motion to transfer venue under *28 U.S.C.S. § 1404(a)* lies in the court's sound discretion.

Civil Procedure > ... > Venue > Motions to Transfer > Choice of Forum

Civil Procedure > Preliminary Considerations > Venue > General Overview

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

*HN3*[⬇] **Motions to Transfer, Choice of Forum**

A party moving for a transfer of venue has the burden of establishing the propriety of the transfer by a clear and convincing showing. The court considers as relevant factors (1) where the operative events occurred; (2) the location of relevant witnesses and documents; (3) any inconvenience to the parties; (4) Plaintiff's choice of forum and (5) the docket conditions of the transferor and transferee districts. The convenience of the party and non-party witnesses is particularly important.

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

*HN4*[⬇] **Venue, Federal Venue Transfers**

Deference should be given to a plaintiff's choice of forum, but this deference fades if the balance of factors weighs strongly in favor of the defendant.

Civil Procedure > ... > Venue > Federal Venue Transfers > General Overview

*HN5*[⬇] **Venue, Federal Venue Transfers**

A subsequently filed action should not control the court's selection of a proper forum on a motion to transfer.

**Counsel:** APPEARANCES:

For Plaintiffs: ROGERS & WELLS, New York, New York, John E. Daniel, Robert D. Schaffer.

For Defendant Switch Manufacturing: LUCAS & JUST, New York, New York, David L. Just, Donald C. Lucas.

**Judges:** JOHN F. KEENAN, UNITED STATES DISTRICT JUDGE

**Opinion by:** JOHN F. KEENAN

# Opinion

*OPINION and ORDER*

**JOHN F. KEENAN, United States District Judge:**

Defendant moves the Court for an order transferring this action pursuant to *28 U.S.C. § 1404(a)* to United States District Court for the Northern District of California. The Court grants Defendant's motion.

*Background*

This is an action for patent infringement. Plaintiffs Mark A. Raines ("Raines") and Gregory A. Deeney ("Deeney") are Oregon residents. Plaintiffs Raines and Deeney are allegedly co-inventors and co-owners of a patent for a certain type of snowboard binding. *See* United States Patent No. 4,973,073 ("the patent") (issued Nov. 27, 1990). Plaintiff Preston Binding Company ("Preston") is a Washington corporation with its principal place of business in Preston, Washington. Preston is a wholly-owned subsidiary of Ride, Inc. ("Ride"), a [*2] Washington corporation with its principal place of business also in Preston, Washington. Plaintiff Preston claims a present material interest in the patent, having allegedly entered into an agreement with Plaintiffs Raines and Deeney to own the patent "in the near future." *See* Compl. P 9.

Defendant Switch Manufacturing Corp. ("Switch") is a California corporation with its principal place of business in San Francisco, California. Defendant Switch develops, designs, manufactures and sells boot and binding systems for snowboards. The Complaint alleges that Defendant Switch is willfully and intentionally infringing Plaintiffs' patent by selling certain snowboard

ANDREW DWYER

1996 U.S. Dist. LEXIS 10367, *2

binding systems, both within this district and elsewhere, without Plaintiffs' authorization. See Compl. PP 12, 13.

Defendant Switch moves for transfer, admitting that venue is proper in this district under 28 U.S.C. § 1391(c) and 1400(b), but arguing that transfer is warranted under 28 U.S.C. § 1404(a). See Def.'s Mem. at 3-4. Plaintiffs oppose the motion. See Pls.' Mem. at 1-4.

## Discussion

HN1[↑] A defendant may move to transfer a civil action for the convenience of the parties and witnesses and in the [*3] interest of justice to any other district or division where it might initially have been brought. See 28 U.S.C. § 1404(a). The Court may consider Defendant's motion because this action could have been brought initially in the Northern District of California. See 28 U.S.C. § 1400(b). HN2[↑] A determination on the motion lies in the Court's sound discretion. See Factors, Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978), cert. denied, 440 U.S. 908, 59 L. Ed. 2d 455, 99 S. Ct. 1215 (1979); Seagoing Uniform Corp. v. Texaco, Inc., 705 F. Supp. 918, 936 (S.D.N.Y. 1989). HN3[↑] Defendant Switch has the burden of establishing the propriety of the transfer by a clear and convincing showing. See Factors, 579 F.2d at 218; Kanbar v. U.S. Healthcare, Inc., 715 F. Supp. 602, 604 (S.D.N.Y. 1989). The Court considers as relevant factors (1) where the operative events occurred; (2) the location of relevant witnesses and documents; (3) any inconvenience to the parties; (4) Plaintiff's choice of forum and (5) the docket conditions of the transferor and transferee districts. See Kanbar, 715 F. Supp. at 605; Chocoladefabriken Lindt & Sprungli Aktiengesellschaft v. Rykoff-Sexton, [*4] Inc., 1992 U.S. Dist. LEXIS 8713, 24 U.S.P.Q.2D (BNA) 1236, 1238 (S.D.N.Y. 1992). The convenience of the party and non-party witnesses is particularly important. See Nieves v. American Airlines, 700 F. Supp. 769, 772 (S.D.N.Y. 1988).

## 1. Operative events

Defendant argues that the operative events which give rise to this action--Plaintiffs' alleged creation of the binding, their efforts to patent that creation, and Defendant's allegedly infringing manufacturing activities--all occurred in the western United States. See Def.'s Mem. at 1-2. Defendant argues that no operative events occurred in this district, insofar as no infringing activity attributable to Switch occurred in New York. See Def.'s

Mem. at 10-11. Defendant acknowledges that "infringement occurs whenever someone 'makes, uses, sells or offers for sale' a patented device without the consent of the patent owner" and also acknowledges that a small percentage of Switch products are sold in this district. See Reply Mem. at 2-3, 8 (quoting 35 U.S.C. § 271(a)). Defendant alleges, however, that the Switch products sold in this district are sold by an independent distributor, and therefore argues that those [*5] sales are not attributable to Switch as acts of infringement within this district. See Reply Mem. at 8. For their part, Plaintiffs do not identify any operative events that occurred in this district. See Pls.' Mem. at 4-13.

Defendant Switch also alludes to a defect in personal jurisdiction within this district. See Def.'s Mem. at 5. Defendant cites Art Leather Manufacturing Co., Inc., v. Albumx Corp. for the proposition that a small number of sales through a distributor is "too remote to be the cause of the injury within the state of New York." Art Leather Manufacturing Co., Inc., v. Albumx Corp., 888 F. Supp. 565, 567-68 (S.D.N.Y.), dismissed by, 67 F.3d 319 (2d Cir. 1995); see also Airola v. King, 505 F. Supp. 30, 31 (D.C. Ariz. 1980) (allowing transfer on due process grounds despite marginal infringement within the transferor district). Leaving aside the issue of personal jurisdiction, which is not before the Court on this motion, Art Leather Manufacturing supports a finding that the action against Switch has no material connection to this district. Accordingly, the deference usually given to a plaintiff's choice of forum is significantly reduced. [*6] See Chocoladefabriken Lindt, 24 U.S.P.Q.2D (BNA) at 1238.

## 2. Location of documents, location of witnesses, and inconvenience of the parties

Defendant argues that the location of relevant documents, the location of the witnesses, and the inconveniences faced by the parties all favor a transfer. The Court agrees.

Plaintiffs do not claim to reside or to do substantial business in this district. See Pls.' Mem. at 4-7. The Court therefore finds no substantial inconvenience to the Plaintiffs resulting from a transfer. See Def.'s Reply Mem. at 4 (arguing that the individual plaintiffs have such strong contacts with the western United States that they would not be inconvenienced by a transfer).

Plaintiffs do not claim that the relevant documentary evidence--Plaintiffs' or Defendant's evidence--is located

in this district. *See* Pls.' Mem. at 7. Plaintiffs argue that the location of documentary evidence is not material since Defendant Switch's documents "are, without doubt, limited in number" and easily transported. *Id.* Even assuming Defendant's documents are easily transported, however, this ease of transport weighs no more heavily in favor of this district than **[*7]** the proposed transferee district.

The Court finds that the location of the probable witnesses favors transfer. The Court accepts Defendant's argument that the individual plaintiffs, their patent attorney, most of Plaintiff Preston's officers and employees, and all of Defendant Switch's officers and employees are located in the western United States. *See* Def.'s Reply Mem. at 6-8. Although Plaintiffs argue that their probable witnesses favor an east coast venue and will be inconvenienced by a transfer, Plaintiffs do not identify a single witness within this district, and actually identify only three probable witnesses: two from Toronto, Canada and one from Boston, Massachusetts. Although Plaintiffs do state a general intention to call expert and third-party witnesses from the Washington, D.C. area, the northeast United States, and possibly Europe, *see* Pls.' Mem. at 2, 5-7, Defendant persuasively responds that such expert witnesses fully expect to travel and may be found "throughout the United States," including the San Francisco area. Def.'s Reply Mem. at 5.

A final issue relative to the convenience to the parties is consideration of the parties' relative financial means. **[*8]** *See* Dwyer v. General Motors Corp., 853 F. Supp. 690, 694 (S.D.N.Y. 1994); Lorenz Aff. Ex. 1 (showing Ride, Inc.'s sales figures). The Court finds that retaining the action in this district would both unduly burden Defendant and needlessly complicate the litigation process. These concerns outweigh whatever minimal inconvenience accruing to Plaintiffs from a transfer, especially where Plaintiffs and this action have no substantial contacts with this district. *See Max Planck Gesellschaft v. General Electric Co.*, 858 F. Supp. 380, 382 (S.D.N.Y. 1992); Dwyer, 853 F. Supp. at 694; *Chocoladefabriken Lindt*, 24 U.S.P.Q.2D (BNA) at 1238.

**3. Plaintiff's choice of forum and respective docket conditions**

Plaintiffs correctly argue that *HN4*[⬆] deference should be given to their choice of forum. *See* Pls.' Mem. at 8 (citing Schieffelin & Co. v. Jack Co. of Boca, Inc., 725 F. Supp. 1314, 1321-22 (S.D.N.Y. 1989) (Keenan, J.)). But as Plaintiffs themselves acknowledge, this deference

fades if, as here, "the balance of factors weighs strongly in favor of the defendant." *See* Pls.' Mem. at 8.

Finally, the Court notes that the Southern District of New York is one of the busiest **[*9]** in the nation. The interests of judicial economy demand that parties may bring suit here only by showing a substantial connection between the cause of action and this district. *See* Kanbar, 715 F. Supp. at 605. As noted above, Plaintiffs have failed to show such a connection.

**4. Consolidation**

Plaintiffs argue that the Court should not consider Defendant's desire to consolidate this action with Defendant's subsequently filed action against Plaintiffs in the Northern District of California. *See* Pls.' Mem. at 1-4. The Court agrees that *HN5*[⬆] a subsequently filed action "should not control the court's selection of a proper forum" on a motion to transfer. *See* Pls.' Mem. at 14 n.12 (citing Intercontinental Monetary Corp. v. Performance Guarantees, Inc., 705 F. Supp. 144, 151-52 (S.D.N.Y. 1989). The Court therefore does not consider consolidation as a factor.

*Conclusion*

For the foregoing reasons, the Court is satisfied that Defendant has met its burden and established the propriety of a transfer. *See* Factors, 579 F.2d at 218; Kanbar, 715 F. Supp. at 604. The Court grants Defendant's motion and hereby directs the Clerk of the Court to transfer this **[*10]** action pursuant to 28 U.S.C. § 1404(a) to United States District Court for the Northern District of California and thereafter to close this case and to remove it from the Court's active calendar.

**SO ORDERED.**

Dated: New York, New York

July 23, 1996

JOHN F. KEENAN

UNITED STATES DISTRICT JUDGE

End of Document

ANDREW DWYER