UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALAN A. TARZY,

                        Plaintiff,

    -against-

ANDREW DWYER, DWYER & BARRETT, L.L.C.,
formerly known as THE DWYER LAW FIRM,
L.L.C.,

                        Defendants.
-------------------------------------------------------------------X

Civ Action No.
18 cv 1456 (JFK)(SDA)

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION WHICH SEEKS:(a) TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404(a); and (b) FOR PARTIAL DISMISSAL OF THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

**KAYSER & REDFERN, LLP**
**515 Madison Avenue, 31ˢᵗ Floor**
**New York, New York 10022**

# TABLE OF CONTENTS

Page

Table of Authorities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

**PRELIMINARY STATEMENT**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

**PROCEDURAL BACKGROUND**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

**STATEMENT OF FACTS**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

**POINT I**
**THE DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN UNDER
28 U.S.C. §1404(a) THAT VENUE SHOULD BE CHANGED TO THE
NEW JERSEY DISTRICT COURT**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

**POINT II**
**LEGAL STANDARD ON MOTION TO DISMISS PURSUANT TO FED. R.
CIV. P. RULES 12(b)(6)**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

**POINT III**
**PLAINTIFF HAS STATED VALID BREACH OF CONTRACT CAUSES
OF ACTION AND THE EVIDENCE SUPPORTS COMPLIANCE WITH
NY RULES OF PROFESSIONAL CONDUCT (NY RPC) 1.5(g) AND
THE CORRESPONDING RULE IN NEW JERSEY UNDER NJ RPC 1.5(e)
AND PLAINTIFF HAS ALSO STATED ACTIONS FOR PROMISSORY
ESTOPPEL AND FOR FRAUD UPON WHICH RELIEF CAN GRANTED**  . . . . . .   14

**A. Plaintiff's Breach of Contract Claims**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

**B. Plaintiff's Claim for Promissory Estoppel**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

**C. Breach of the Implied in Fact Contract**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

**CONCLUSION**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

## TABLE OF AUTHORITIES

Page

800-Flowers, Inc. v. Intercontinental Florist, Inc.
  860 F.Supp. 128 at 133 (S.D.N.Y. 1994) .................................   8

Aarons v. Worldtel Servs.
  1996 U.S. Dist. LEXIS 4959, 95 Civ. 8415 (AGS)
  1996 WL 185714 at 4 (S.D.N.Y. 1996) .................................   9

Ballow Brasted O'Brien & Rusin P.C. v. Logan
  435 F.3d 235 (2nd Cir. 2006) .........................................   17,18

Benjamin v. Koeppel
  85 N.Y.2d 549, 556 (1995) ...........................................   17,18

Bolt Elec. v. City of New York
  53 F.3d 465, 469 (2nd Cir. 1995) .....................................   13

Clarendon Nat'l Ins. Co. v. Pascual
  2000 U.S. Dist. LEXIS 2881, 2000 WL 270862 at 4 ......................   9

Coker v. Bank of Am.
  984 F.Supp. 757, 764 (S.D.N.Y. 1997) .................................   9,11

Computer Operations, Inc. v. Digital Equipment Corp.
  387 F.Supp.8,11 (E.D.N.Y. 1975) .....................................   9

Conley v. Gibson
  355 U.S. 41, 45-46 (1957) ...........................................   13

Cooper v. Parsky
  140 F.3d 433, 440 (2nd Cir. 1998) ....................................   13

Everest Capital, Ltd. v. Everest Funds Mgmt, L.L.C.
  178 F.Supp.2d 459 at 465 (S.D.N.Y. 2002) ............................   8,12

Flaherty v. Coughlin
  713 F.2d 10, 13 (2nd Cir. 1983) ......................................   13

Ford v. Albany Med. Ctr.
  283 A.D.2d 843, 724 N.Y.S.2d 795 (3rd Dept. 2001) ...................   17

ii

Friedl v. City of New York
    210 F.3d 79, 85-86 (2nd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Gaiter v. City of Buffalo Bd. of Educ.
    142 A.D.3d 1349, 38 N.Y.S.3d 306 (4th Dept. 2016) . . . . . . . . . . . . . . . . . . . . . . . 16

Goldberger, Selisohn & Shinrod, P.A. v. Baumgarten
    378 N.J. Super 244, 875 A.2d 958
    (N.J. Sup. Ct. App. Div 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Goldman v. McMahan, Brafman, Morgan & Co.
    1987 U.S. Dist. LEXIS 5356 (S.D.N.Y. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Howard v. Four Seasons Hotels
    1997 U.S. Dist. LEXIS 2598, 96 Civ. 4587 (LAP) . . . . . . . . . . . . . . . . . . . . . . . . . 7,9

In re Nematron Corp. Secs. Litig.
    30 F. Supp.2d 397, 404 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Jackson v. Onondaga County
    549 F. Supp.2d 204, 211, 15-16 (N.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 13

Koppel v. 4987 Corp.
    167 F.3d 125, 133 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Larew v. Larew
    2012 U.S. Dist. LEXIS 2891 at 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Marin v. Constitution Realty, LLC
    28 N.Y.3d 666 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Martin v. Campanaro
    156 F.2d 127 (2nd Cir. 1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Monahan v. Lewis
    51 A.D.3d 1308, 858 N.Y.S.2d 812, 814 (3rd Dept. 2008) . . . . . . . . . . . . . . . . . . 20

Panama Processes, S.A. v. Cities Service Co.
    650 F.2d 408, 414 (2nd Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Samuel v. Druckman & Sinel, LLP
    12 N.Y.3d 205, 210 (2009)
    rearg denied 12 N.Y.3d 899 (2009) .................................. 16,17,18

Schnabel v. Ramsey Quantitative Sys.
    322 F.Supp.2d 505 at 516 (S.D.N.Y. 2004) ............................ 9,12

Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis,
Brittingham, Gladd, & Carwile, P.C.
    596 F.3d 84 (2nd Cir. 2010) ........................................... 17,18

Walker v. Sheldon
    10 N.Y.2d 401 (1961) ................................................ 19

Witt by Witt v. Cohen
    192 A.D.2d 528, 529,
    596 N.Y.S.2d 117 (2nd Dept. 1993) ................................... 17

Wolfe & Yukelson, PLLC v. Davis, Saperstein & Salomon, P.C.
    153 A.D.3d 585, 61 N.Y.S.3d 548 (2nd Dept. 2017) ..................... 16-17

Woolley v. Stewart
    222 N.Y. 347, 350-351 (1918) ........................................ 19


**Statutes**
28 U.S.C. §1404(a) ...................................................... 1,7

Fed. R. Civ. P. 8(a)(2) .................................................... 13

Fed. R. Civ. P.12(b)(6) .................................................... 1,13

Fed. R. Civ. P. 15(a)(B) ................................................... 7

New Jersey Court Rule, R 1:39-6 ........................................... 6

NJ RPC 1.5(e) ............................................................ 6,14

NY RPC 1.5(g) ............................................................ 6,14,16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

ALAN A. TARZY, ESQ.

                                        Civ Action No.
                                        18 cv 1456 (JFK)(SDA)

                   Plaintiff,

        -against-

ANDREW DWYER, DWYER & BARRETT, L.L.C.,
formerly known as THE DWYER LAW FIRM,
L.L.C.,

                 Defendants.

-----------------------------------------------------------------------X

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION WHICH SEEKS: (a) TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. §1404(a); and (b) FOR PARTIAL
DISMISSAL OF THE COMPLAINT PURSUANT TO FED. R.
CIV. P. 12(B)(6)**

## PRELIMINARY STATEMENT

Plaintiff, ALAN A. TARZY (hereinafter referred to as "Plaintiff") respectfully submits this brief in opposition to the motion of Defendants, ANDREW DWYER and DWYER & BARRETT, LLC formerly known as THE DWYER LAW FIRM, LLC's (hereinafter collectively referred to as "Defendants") to transfer venue to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §1404(a); and for partial dismissal of the Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P.12(b)(6).

## PROCEDURAL BACKGROUND

The Plaintiff filed his original action in New York Supreme Court on February 14, 2018. Following service on the Defendants on February 16, 2018, the Defendants removed this action to this Court on February 17, 2018, Declaration of defendant ANDREW DWYER (hereinafter referred to as "Dwyer") dated March 9, 2018, (hereinafter referred to as "Dwyer decl.") ¶60. The Court has scheduled a conference for May 1, 2018, at 11:00 A.M.

## STATEMENT OF FACTS

The Plaintiff is an attorney admitted to practice before the State and Federal Courts of the State of New York and is good standing. Declaration of Alan A. Tarzy dated March 23, 2018, ¶6 (hereinafter "Plaintiff decl.") Dwyer is an attorney licensed to practice law in both New York and New Jersey and he proffers his extensive knowledge of the local rules in both jurisdictions as it relates to agreements between counsel for the division of legal fees, Dwyer decl. ¶¶30-33.

The Plaintiff lives in New York and maintains an office in New York located at 360 Lexington Avenue, New York, NY 10017, Plaintiff decl. ¶6. The Plaintiff maintains a general civil practice and engages in both contentious and non-contentious matters. In early 2013, Plaintiff was consulted by a friend and former client ███████ (hereinafter referred to as "Client") about a potential case involving wrongful termination of employment, discrimination in the workplace, and specifically, religious discrimination. On February 1, 2013, the Plaintiff met with the Client in his office to discuss the circumstances surrounding the Client's termination. Plaintiff decl. ¶6. The Plaintiff, who is not an employment law specialist, recognized that his friend had suffered statutorily prohibited discrimination and abuse in the workplace because of his orthodox views as a Sephardic Jew. The Plaintiff and Client thereafter had numerous calls to discuss the merits of the Client's

2

severance package and potential discrimination claims including the economic loss from his termination from employment. Plaintiff decl ¶¶6-7. At the February 1, 2013, meeting, the Client retained the Plaintiff pursuant to written Retainer Agreement which provided for a standard one-third contingency fee agreement. Dwyer decl. Exhibit A. Thereafter, and in contemplation of filing suit, the Plaintiff began discussions with the Client's former employer concerning his termination from employment, severance arrangements and the underlying bias and discrimination suffered by the Client. Plaintiff decl. ¶¶8-9. The discussions with the Client's former employer took place between February and May but were ultimately unsuccessful. Plaintiff decl. ¶9.

In early June 2013, after at least seven to ten separate telephone discussions between the Client and the Plaintiff, the Plaintiff recommended that they locate an experienced employment discrimination lawyer to assist in prosecuting the case. During those discussions, the Plaintiff and Client discussed the impact of bringing in outside counsel as it related to the fee arrangement between them. Plaintiff decl. ¶14. The Plaintiff reassured the Client that fees payable by the Client would be on the one-third contingency basis and that the attorneys would work out an agreement to divide the contingent fees between them. The Client consented to retaining outside counsel, Plaintiff decl. ¶14, and agreed that the Plaintiff and outside counsel would be jointly representing Client. At that time, no specific written fee splitting agreement was entered into with the Client, and the fee splitting percentages were not known because the discussions with Dwyer had not taken place. The Plaintiff sought referrals for an employment discrimination lawyer and Dwyer was recommended to the Plaintiff. Plaintiff decl. ¶11.

On June 4, 2013, Plaintiff called Dwyer from his New York office seeking to determine Dwyer's interest in assisting in the representation of the Client and arrangements were made to meet in the Plaintiff's New York office on June 13, 2013, with the Client. Following the

3

June 13, 2013, meeting, the Plaintiff and Dwyer had a further discussion on June 18, 2013, about how they would divide the legal fees. Plaintiff decl.¶13. Dwyer suggested the fees be divided on the basis of a 50/50 division. Plaintiff in turn suggested a division based on a 60/40 division in favor of Dwyer, because Defendants would be doing the majority of the work. Plaintiff decl. ¶13, Dwyer decl. ¶27. The Plaintiff and Dwyer agreed that based on working together that they "would split the fees", Dwyer Dec. ¶27. Dwyer acknowledges that the fee arrangement was premised on Dwyer doing the majority of the work and Plaintiff actively participating. Dwyer decl. ¶27. Dwyer follows the June 18, 2013, telephone conversation with an e-mail dated June 19, 2013, setting forth the agreement to divide fees on a 60/40 basis. Dwyer decl. Exhibit G, Plaintiff decl. ¶15. Dwyer also requested that if the fee division was not in accord with the parties' agreement to contact him immediately. As the e-mail set forth the parties' agreement, the Plaintiff did not communicate further with Dwyer about the fee agreement.

Notwithstanding his elevated knowledge of all things ethical as it relates to fee splitting agreements, Dwyer, who has been retained by the Client by that point, Dwyer decl. ¶33, does not indicate in the e-mail whether he had the consent of the Client to send the fee splitting proposal, but presumably he was acting with his Client's authority in sending the e-mail. The June 19, 2013, e-mail attached a draft complaint, so that the complaint could be filed in advance of a shareholders' meeting of the putative defendant in the Client's action scheduled for June 25, 2013[1]. The June 19, 2013, e-mail provided as follows:

---

[1] Although referred to in paragraph 33 of the Dwyer decl., the Defendants' retainer agreement with the Client is not annexed to Defendant's declaration but must have been dated between the June 13th meeting in New York with the Client and Plaintiff and the June 19, 2013, e-mail to Plaintiff. The Plaintiff was not made a party to the agreement and the Defendant did not even advise the Plaintiff that Defendant had entered into a separate retainer with the Client. Accordingly before the filing date the Client had signed two separate retainer agreements acknowledging the joint representation.

4

"Also, following up on our phone discussion from
Tuesday [June 18, 2013] it is my understanding that
you and [client] entered into a standard contingency
agreement.  You and I have agreed to split any fees
from that agreement on a percentage basis, with me
getting 60% and you getting 40%. If my under-
standing is not correct, please let me know ASAP".
Dwyer decl. Exhibit G.

Even though Dwyer acknowledged the parties' agreement, neither party took any

further steps to further memorialize the attorneys' fee-sharing agreement with a document evidencing

the Client's consent. Dwyer's e-mail goes on to say "Obviously, on any communications I have with

[client], I will copy you" and finally, "Thanks! I'm looking forward to working on this case with you,

and I appreciate your decision to involve me in the case."

After reviewing and giving the go ahead to the Complaint to be filed in New Jersey,

Plaintiff decl. ¶15, the litigation got underway with neither party having obtained the Client's

signature at the time the fee splitting agreement was agreed to.

The Complaint and other documents thereafter filed with the court listed both Plaintiff

and Defendants as attorneys for the Client and the litigation progressed through pre-trial discovery.

The Plaintiff was in constant communication with the Client and received copies of documents to

review and e-mails from Dwyer and Defendants' counsel in the underlying action as the case

progressed, being constantly updated with developments in the case. Plaintiff decl. ¶¶18,19,20.

Plaintiff was otherwise engaged with the conduct of the litigation as set forth in the

Plaintiff's Declaration that included deposition preparation with the Client, meeting with the client

to discuss settlement, reviewing documents and litigation strategy so that Plaintiff could help the

Client navigate through the litigation, process, settlement discussions, reviewing Appellate brief

appeals, and generally helping the Client to understand the process. Plaintiff decl. ¶¶18,19,20. At no

5

time before the Client's case was settled did Defendants express to Plaintiff that the fee-splitting agreement would not be honored or, that local court rules or rules of professional conduct relating to fee sharing agreements prohibited the Defendant from making payment to Plaintiff.

Ultimately, when a settlement was reached in the underlying matter in or about December 2016, and Plaintiff inquired as to the payment of his share of the legal fees, Dwyer claimed he had no knowledge of an agreement. Plaintiff decl. ¶15. Plaintiff subsequently reminded Defendants of their obligations as reflected in the June 19, 2013, e-mail. Thereafter when pressed, Dwyer explained to Plaintiff at the time that he had not raised any issues barring payment to Plaintiff because he thought the case would resolve itself for a considerably smaller amount, but given the excellent result he had achieved, he was not prepared to honor his agreement to share fees 60/40 categorizing the fee issue at that time as a referral fee. Plaintiff decl. ¶¶11,15. Dwyer went on to advise Plaintiff that under New Jersey Rules, Court Rule R 1:39-6, referral fees were prohibited unless the New Jersey lawyer agreeing to pay a referral fee was a certified trial lawyer in Jew Jersey. Plaintiff decl. ¶ 15.

The Plaintiff and Dwyer engaged in further discussions during which Dwyer changed his analysis from New Jersey Court Rule, R 1:39-6, relating to referral fees between counsel to claims under NJ RPC 1-5(e) which as set forth under Point III is almost identical to NY RPC 1.5(g) and provides that in order to have an enforceable fee splitting and joint representation agreement, a client must consent in writing to the proposed fee-sharing agreement between counsel.

The parties disagree on a fundamental fact, whether there was in fact a writing that satisfied both NJ RPC 1.5(e) and NY RPC 1.5(g), but the confidential Settlement Agreement itself

would satisfy the regulatory requirement. Plaintiff decl.¶4.[2] The Client's execution of the Confidential Settlement Agreement evidences a ratification of the fee-sharing agreement. Courts in New York have refused to permit a litigant to use rules of professional conduct as a shield to avoid the consequences of a contract that an attorney voluntarily agreed to and will benefit from at the expense of the other party. The Plaintiff intends to serve an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(B) to amend the Complaint to withdraw causes of action numbered Third, Sixth, Eighth and Tenth and to amend the contract claim to plead ratification and/or written consent to the fee sharing agreement by the Client and to expand the fraud and deceit based claims against Defendants.

For the reasons set forth herein, Defendants' motion to change venue should be denied and the Defendants' motion to dismiss the First, Second, Fourth, Fifth, Seventh and Eighth causes of action should be denied in each and every respect.

## POINT I

### THE DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN UNDER 28 U.S.C. §1404(a) THAT VENUE SHOULD BE CHANGED TO THE NEW JERSEY DISTRICT COURT

Under 28 U.S.C. §1404(a) the "court may transfer an action only if 1) the plaintiff could have brought the case initially in the proposed transferee forum; and 2) the transfer would promote the convenience of parties and witnesses and would be in the interests of justice". Coker v. Bank of Am., 984 F.Supp. 757, 764 (S.D.N.Y. 1997) quoting Howard v. Four Seasons Hotels, 1997 U.S. Dist. LEXIS 2598, 96 Civ. 4587 (LAP). Based on Defendants residence, place of work

---

[2]  The Confidential Settlement Agreement allocates legal fees on a 60/40 basis. What is most significant is that the Client was well aware of the intended fee split and ratified the agreement by signing the Settlement Agreement.

and state of incorporation of the corporate Defendant, Plaintiff does not dispute that the first prong

of the venue analysis is satisfied.  For the second prong of the test, Defendants "must satisfy the

'heavy burden' of demonstrating that a weighing of the appropriate factors dictates that the case be

transferred". Coker v. Bank of Am., supra at 764.

      The Plaintiff's choice of forum is entitled to "substantial consideration", Panama

Processes, S.A. v. Cities Service Co., 650 F.2d 408, 414 (2nd Cir. 1981) and the moving party must

help guide the discretion of the court by analyzing the following factors:

> "(1) the place where the operative facts occurred; (2) the convenience
> of the parties; (3) the convenience of the witnesses; (4) the relative
> ease of access of proof; (5) the availability of process to compel the
> attendance of unwilling witnesses; (6) the plaintiff's choice of forum;
> (7) the forum's familiarity with the governing law; and (8) trial
> efficiency and the interests of justice." Coker v. Bank of Am., supra
> at 764.

      A ninth factor, which is less significant, is "the relative means of the parties", Everest

Capital, Ltd. v. Everest Funds Mgmt, L.L.C., 178 F.Supp.2d 459 at 465 (S.D.N.Y. 2002) see also

800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F.Supp. 128 at 133 (S.D.N.Y. 1994).

      The first factor, the place where the operative facts took place, is both New York and

New Jersey.  The Client signed a retainer agreement in New York with a New York resident

Plaintiff, who is licensed to practice law in New York.  The Plaintiff first initiated a call from New

York to Dwyer to attend a meeting in New York.  The Plaintiff and Dwyer met in New York with

the Client and agreed to their joint representation of the Client in New York. Dwyer memorialized

the fee split agreement by sending an e-mail to Plaintiff that was received in New York.  The

negotiations and discussions thereafter between Plaintiff and Defendant as to their New York

contract took place in both New York and New Jersey and although the Client's case was litigated

exclusively in New Jersey, the only aspect of the underlying case that is pertinent to the fee dispute

8

is the division of legal fees themselves, the total amount of which are not in dispute. Insofar as it is

argued by Defendants that misrepresentations and omissions are deemed to occur in the district

where they were transmitted or withheld and not where they are received, citing Larew v. Larew,

2012 U.S. Dist. LEXIS 2891 at 19 (quoting In re Nematron Corp. Secs. Litig., 30 F. Supp.2d 397,

404 (S.D.N.Y. 1998) the misrepresentations and omissions related to the New York contract itself.

When the operative facts take place in both jurisdictions, where the operative facts occur, do not

favor either party. See Aarons v. Worldtel Servs., 1996 U.S. Dist. LEXIS 4959, 95 Civ. 8415

(AGS), 1996 WL 185714 at 4 (S.D.N.Y. 1996).

The second factor relating to convenience of the parties, is neutral because it merely

shifts the burden of inconvenience from the Defendants to the Plaintiff, Schnabel v. Ramsey

Quantitative Sys., 322 F.Supp.2d 505 at 516 (S.D.N.Y. 2004) citing Clarendon Nat'l Ins. Co. v.

Pascual, 2000 U.S. Dist. LEXIS 2881, 2000 WL 270862 at 4.

The third factor relating to the convenience of witnesses does not favor transfer. As

Defendants acknowledge, the only non-party witness is the Client and he now resides in the Eastern

District of New York. The convenience of the parties and non-party witnesses is one of the most

important factors in determining whether to transfer venue. Coker v. Bank of Am., supra, at 765

citing Howard v. Four Seasons Hotel, supra, at 2. According to Defendants, the key witnesses are

Dwyer, his partner and paralegal, who are parties and under Dwyer's direct control and the non-party

client who resides in the Eastern District of New York. This factor, like the convenience to parties,

is neutral, and is slightly in favor in this district based on the non-party witness' residence.

> §1404(a), it was designed . . .where a defendant's essential witnesses
> were not under its control and were located in the proposed transferee
> district and a plaintiff could not make the same claim as to its
> witnesses in the transferor district. Computer Operations, Inc. v.
> Digital Equipment Corp., 387 F.Supp.8,11 (E.D.N.Y. 1975).

9

The fourth factor relating to ease of access of proof is also neutral. The physical evidence to establish the underlying New York contract claim is Dwyer's e-mail dated June 19, 2013, confirming the oral agreement reached by telephone on June 18, 2013, to split fees 60/40 and the Confidential Settlement Agreement executed by the Client establishing the Client's awareness and consent to the fee split. To the extent paragraph (d) of the Confidential Settlement Agreement reflects a dispute as to the forty (40%) percent payable to Plaintiff under the fee split arrangement, it is Defendants and not the Client who disputes the fee split.

With respect to the Plaintiff's fraud and equitable claims, the physical evidence at this point without discovery appears rather limited, and focuses on the representations contained in e-mails between the parties and the work undertaken by the Plaintiff. The evidence would include the direct testimony of Plaintiff and Client, both located in New York and primarily e-mails between Dwyer and Plaintiff received in New York. The documents include the Plaintiff's retainer agreement with the Client, Dwyer decl. Exhibit A, Dwyer's June 19th e-mail. Dwyer decl. Exhibit G and e-mails supporting Plaintiff's participation in reviewing documentation and being kept in the loop as proceedings in the underlying case progressed. Plaintiff decl. ¶17,18,19 and 20. Another document that may be significant to these issues is the contingency retainer agreement entered into between Dwyer and the Client referred to in paragraph 33 of Dwyer's Declaration. The vast bulk of the Defendants 38 feet of stacked files would not be necessary to examine as part of the discovery in this action, the Defendants having conceded that the majority of the work was to be done by Defendants, the real question is whether Plaintiff participated in the case and/or refused to participate and that evidence would be established by the testimony of the parties and the Client.

The fifth factor, the availability of process to compel attendance of unwilling witnesses is, as Defendants' acknowledge, of no significance.

The sixth factor, Plaintiff's choice of forum, is an important factor and weighs heavily in favor of New York given Plaintiff's statutory choice of forum. "A court must give significant consideration to a plaintiff's choice of venue, not disturbing it unless other factors weigh strongly in favor of transfer". Coker v. Bank of Am., supra at 766. Plaintiff is a New York resident and attorney. The agreement to split fees was between two New York attorneys, one of whom was also admitted in New Jersey and practices in New York, and was made in New York based on a underlying retainer agreement that was entered into in New York. New York has just as much interest, if not more interest, in regulating the legal profession as it relates to agreements entered into between two New York attorneys, where an attorney is attempting to use a regulating conduct rule to avoid his contractual obligation to a colleague at the bar. As set forth under Point III below, although Dwyer is admitted in New York and is bound by the same New York Rules of Professional Conduct, he seeks to litigate the matter in New Jersey primarily because the New Jersey Rule of Professional Conduct would facilitate his scheme to cheat the Plaintiff out of his agreed upon share of the fees because New York law will not permit an attorney to rely on an ethical violation to avoid a contractual obligation to his benefit, New Jersey law is not so clear. Defendants' reliance on Golberger, Selisohn & Shinrod, P.A. v. Baumgarten, 378 N.J. Super 244, 875 A 2d 958 (N.J. Sup. Ct. App. Div 2005) is misplaced. In a written agreement between counsel to share fees, there was no evidence adduced that the client was advised of the fee split, or the client's consent to the participation of all the attorneys involved. In contrast, the allegations here, support the conclusion that both lawyers were working on the case, the client was aware of the fee sharing agreement and consented to it and the Settlement Agreement is a ratification of the actual division of fees. Accordingly, Plaintiff's choice of forum should prevail.

As to the seventh factor, the governing law, there remains an issue of whether New

11

York or New Jersey law should apply to this attorney fee sharing agreement. This court is able to apply New York's choice of law rules and the substantive law of either jurisdiction as it relates to contract and fraud claims and this factor does not dictate transfer. See Schnabel v. Ramsey, supra at 519 citing Clarandon Nat'l Ins. Co, v. Pascual, supra, at 5. At issue in this case is conduct of two New York lawyers and the authority in this forum that will not permit a New York attorney to avoid his contractual obligations when his adversary has failed to follow an ethical rule which he himself is bound and regulated by.

With respect to the eighth factor, trial efficiency and the interests of justice, those factors weigh in favor of New York. As it relates to efficiency, Dwyer Dec. ¶72 relies on the latest report of the Administrative Office of the U.S. Courts. However, Dwyer only highlights one statistic concerning the percentage of civil cases that are three years old for New York and New Jersey, being 19.1% and 4.1% respectively. However, a more significant statistic is the median time in months from filing to trial for the period ending December 31, 2017, for New York and New Jersey civil cases which is 29.4 months and 41.1 months respectively. In fact, in each of the years reported from 2012 to 2017 the median time in months from filing to trial is less in the Southern District than the New Jersey District.

As to the ninth factor where a disparity exists between the means of the parties the Court may consider the relative means of the parties in determining in which forum a case should proceed. Everest Capital, Ltd. v. Everest Funds Mgmt, L.L.C., supra at 467. Because the Plaintiff did not dispute his agreement with the Defendants and acquiesced in the Defendants receiving their 60% of the agreed upon fees as did the Client, the Defendants are better placed to litigate this case in the Southern District having received what they negotiated for and this factor weighs in favor of Plaintiff.

12

Plaintiff respectfully submits that based on the above factors, the Defendants have failed to overcome their significant burden in establishing that convenience militates in favor of transferring this action to New Jersey.

## POINT II

### LEGAL STANDARD ON MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. RULES 12(b)(6)

Dismissal by failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) may be based on two grounds. (1) a challenge to the sufficiency of the pleading under Fed. Civ. R. P. 8(a)(2); or (2) a challenge to the legal cognizability to the claim. Jackson v. Onondaga County, 549 F. Supp.2d 204, 211, 15-16 (N.D.N.Y. 2008).

A complaint or cause of action should not be dismissed under Rule 12(b)(6) "...unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The court must accept as true the facts alleged in the Complaint. Goldman v. McMahan, Brafman, Morgan & Co., 1987 U.S. Dist. LEXIS 5356 (S.D.N.Y. 1987). The court must draw all reasonable inferences in favor of the Plaintiff, Bolt Elec. v. City of New York, 53 F.3d 465, 469 (2nd Cir. 1995) and to withstand a motion, the "claims must be supported by specific and detailed factual allegations..." Friedl v. City of New York, 210 F.3d 79, 85-86 (2nd Cir. 2000) quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2nd Cir. 1983). To survive a motion to dismiss, a plaintiff only has to allege sufficient facts, not prove those facts. Koppel v. 4987 Corp., 167 F.3d 125, 133 (2nd Cir. 1999). A court's role in ruling on a motion to dismiss is to evaluate the legal feasibility of the Complaint, not to weigh the evidence that may be offered to support it. Cooper v. Parsky, 140 F.3d 433, 440 (2nd Cir. 1998). Plaintiff, intends to file an Amended Complaint which eliminates the Third, Sixth, Eighth and Tenth Causes of action

13

and supplements the First Second, Fourth and Fifth Causes of Action including claims of express

and implied contract ratification.

## POINT III

**PLAINTIFF HAS STATED VALID BREACH OF CONTRACT CAUSES OF ACTION AND THE EVIDENCE SUPPORTS COMPLIANCE WITH NY RULES OF PROFESSIONAL CONDUCT (NY RPC) 1.5(g) AND THE CORRESPONDING RULE IN NEW JERSEY UNDER NJ RPC 1.5(e) AND PLAINTIFF HAS ALSO STATED ACTIONS FOR PROMISSORY ESTOPPEL AND FOR FRAUD UPON WHICH RELIEF CAN BE GRANTED**

### A. Plaintiff's Breach of Contract Claims:

NY Rules of Professional Conduct 1.5(g) provides:

A lawyer shall not divide a fee for legal services with another lawyer who is not associated in the same law firm unless: (1) the division is in proportion to the services performed by each lawyer or, by a writing given to the client, each lawyer assumes joint responsibility for the re-presentation; (2) the client agrees to employment of the other lawyer after a full disclosure that a division of fees will be made, including the share each lawyer will receive, and the client's agreement is confirmed in writing; and (3) the total fee is not excessive.

New Jersey RPC 1.5(e) provides:

Except as otherwise provided by the Court Rules, a division of fee between lawyers who are not in the same firm may be made only if: (1) the division is in proportion to the services performed by each lawyer, or, by written agreement with the client, each lawyer assumes joint responsibility for the representation; and (2) the client is notified of the fee division; and (3) the client consents to the participation of all the lawyers involved; and (4) the total fee is reasonable.

Defendants have not asserted that the total fee is not reasonable or that it is excessive,

so Points 3 and 4 under either rule would not appear to be an issue. As it relates to Point 1, both

lawyers had the Client sign retainer agreements so there is evidence of joint responsibility for the

14

representation. Dwyer decl. ¶33, Exhibits A, B & G and the pleadings themselves support the conclusion of joint representation of the Client on their face, Plaintiff decl. ¶17 Exhibit D.

As to Points 2 and 3 of the respective local rules, the complaint sets forth that Plaintiff discussed the joint representation and fee splitting with the Client before the anticipated meeting with Dwyer, Complaint ¶¶9,10. Plaintiff decl.¶12 and the Client agreed to the joint representation. The exact amount of the fee split was not discussed with the client by the Plaintiff. However, as set forth in the Complaint ¶16, the total legal fees were divided into two amounts based on a 60/40 split, with 60% of the legal fees being described in paragraph 1(c) of the Confidential Settlement Agreement and 40% of the legal fees being described in paragraph 1(d) of the Confidential Settlement Agreement, Plaintiff decl. ¶4. The Client subsequently executed the Settlement Agreement evidencing that he was ratifying either expressly or by implication the fee splitting percentages, specifically paragraphs 1(c) and 1(d) of the Settlement Agreement. Plaintiff decl. ¶4.

In reluctantly accepting for the purposes of a 12[b](6) motion what Dwyer disingenuously asserts at page 13 of Defendants' brief as "we have to live with Plaintiff's false allegations on the motion", he must nevertheless accept the undisputed contents of his e-mail dated June 19, 2013, acknowledging the 60/40 division that he agreed to while he was purportedly retained by the Client and acting as agent for his principal. Accordingly, Dwyer was representing that he had apparent and ostensible authority, if not express, authority and consent to enter into the fee splitting agreement on behalf of the Client.

Accordingly, Defendants' reliance on Goldberger, Seligsohn & Shinrod, P.A. v. Baumgarten, 378 N.J. Super 244 (App. Div. 2005) is misplaced. The evidence of two retainer agreements executed by the Client in favor of each attorney, Dwyer decl ¶33, Exhibit A, is probative of the joint representation as discussed, the copying of e-mails to both Client and counsel, Plaintiff

15

decl. ¶¶18-20, the request to review the Complaint; Plaintiff decl. ¶17, Exhibit E. In addition the names of Plaintiff and Defendant were on the pleadings as attorneys for the Client; and having executed retainer agreements both counsel agreed to a fee splitting arrangement with the Client's tacit acceptance which is subsequently ratified by the Settlement Agreement, Plaintiff decl. ¶4.

If the Client did not consent to the division of fees, presumably he would not have signed the Confidential Settlement Agreement in which the division of fees was made express. In addition, the Plaintiff's time working with the Client; Plaintiff decl. ¶¶6-15,18-20, and reviewing documents for the Client evidences Plaintiff's joint representation and participation in the representation of the Client.

As set forth above, Plaintiff submits that the documentary evidence satisfies the requirements of NY RPC 1.5(g) and that the client ratified the fee sharing agreement before the case was formally settled. In Defendants attempt to dismiss those causes of action based on contract, the Defendants ignore a body of case law in New York that have rejected attempts by an attorney, who is also bound by the same Rules of Professional Conduct to, ". . . be heard to argue that the fee-sharing agreement and the obligations thereunder must be voided on ethical grounds, when Grossman's principal freely agreed to be bound by and received the benefit of the same agreement, particularly where, as here, there is no indication that the client was in any way deceived or misled" Gaiter v. City of Buffalo Bd. of Educ., 142 A.D.3d 1349, 38 N.Y.S.3d 306 (4th Dept. 2016) citing Samuel v. Druckman & Sinel, LLP, 12 N.Y.3d 205, 210 (2009) rearg denied 12 N.Y.3d 899 (2009). See also Benjamin v. Koeppel, 85 N.Y.2d 549, 556 (1995).

In fee sharing agreements between attorneys, "the courts will not inquire into the precise worth of the services performed by the parties as long as each party actually contributed to the legal work and there is no claim that either refused to contribute more substantially" Wolfe &

16

Yukelson, PLLC v. Davis, Saperstein & Salomon, P.C., 153 A.D.3d 585, 61 N.Y.S.3d 548 (2nd Dept.

2017) at 587 citing Benjamin v. Koeppel, supra. Further, such an agreement is enforceable as long

as the attorney who seeks his or her share of the fee "has contributed some work, labor or services

toward the earning of the fee", Wolfe & Yukelson, PLLC v. Davis, Saperstein & Salomon, P.C.,

supra, at p. 588 citing Witt by Witt v. Cohen, 192 A.D.2d 528, 529, 596 N.Y.S.2d 117 (2nd Dept.

1993). The work undertaken by the Plaintiff as part of the joint representation is set forth in his

declaration and at no time did he refuse to do any work at the request of the Plaintiff. Plaintiff decl.

¶¶19,20. In Marin v. Constitution Realty, LLC, 28 N.Y.3d 666 (2017) the court held in finding fee

sharing agreements enforceable between attorneys notwithstanding a failure to comply with a local

ethical rule that:

> Menke's attempt to use the ethical rule as a sword to render
> unenforceable, as between the two attorneys, the agreements with
> Manheimer's retention, while a serious ethical violation, does not
> allow her to avoid otherwise enforceable contracts under the
> circumstances of this case. Id 672 citing Samuel v. Druckman &
> Sinel, LLP, supra, and Benjamin v. Koeppel, supra.

See also Ballow Brasted O'Brien & Rusin P.C. v. Logan, 435 F.3d 235 (2nd Cir. 2006)

wherein the Second Circuit found a fee sharing agreement that violated former rule DR 2-107 was

nevertheless enforceable under New York law finding the attorney "actually contributed to the legal

work" and nothing in the record suggests that the attorney "refused to contribute more substantially".

Id. p.243. In Ballow the Court distinguished Ford v. Albany Med. Ctr., 283 A.D.2d 843, 724

N.Y.S.2d 795 (3rd Dept. 2001) where the Court refused to enforce a fee agreement based on the

principles set forth in Benjamin v. Koeppel supra. In Wagner & Wagner, LLP v. Atkinson, Haskins,

Nellis, Brittingham, Gladd, & Carwile, P.C., 596 F.3d 84 (2nd Cir. 2010), the Second Circuit affirmed

the District Court's finding that the fee agreement violated former New York Code of Professional

17

Responsibility DR 2-107 recodified as N.Y. Code Professional Responsibility Dr 1-5(g)(h) and distinguished Ballow Brasted O'Brien & Rusin P.C. v. Logan; Samuel v. Druckman & Sinel, LLP and Benjamin v. Koeppel, supra, on the basis that the infant compromise cases involve different interests and different obligations of the reviewing courts unlike those cases where there were attempts "...to use public policy as a sword for personal gain rather than a shield for public good" Benjamin v. Koeppel, supra, at p. 831, in Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd, & Carwile, P.C., supra, the guiding policy was the protection of the public interest. Id p. 91.

In this case, the Client was not impacted by any ethical violation and the evidence is probative that the client ratified all aspects of the fee sharing rules by executing the Settlement Agreement with knowledge of the fee division and acknowledgment of the joint representation. Dwyer does not assert that the Client is unhappy or did not consent to the fee sharing agreement, only that Plaintiff did not plead the Client's consent. In fact, the moving papers do not suggest that the Client was unaware of the joint representation or fee splitting but only that the Complaint fails to allege written consent to the fee split which is implied if not express in the Settlement Agreement. For the aforesaid reasons the Plaintiff's contract based cause of action states causes of action upon which relief may be granted.

**B. Plaintiff's Claim for Promissory Estoppel.**

The Plaintiff's cause of action for promissory estoppel sets forth a cause of action that is distinguishable from the fee-sharing agreement and Dwyer's tortious conduct is extrinsic to the fee-sharing agreement between Plaintiff and Defendants. Notwithstanding the enforceability of the fee-sharing agreement under New York law, Dwyer has gone a step further and invoked public policy and ethical considerations in attempting to avoid his enforceable contractual obligation and

this is primarily the type of conduct that falls into the conduct described in Woolley v. Stewart, 222

N.Y. 347, 350-351 (1918).

> A party to the [oral] agreement [within the statute] may legally and
> rightfully refuse to recognize or perform it. The breach of a void
> agreement is not a fraud or a wrong in law. He may, however,
> withdraw himself from the policy and defense of the statute, or waive
> its protection, by inducing permitting without remonstrance another
> party to the agreement to do acts, pursuant to and in reliance upon the
> agreement, to such an extent and so substantial in quality as to
> irremediably alter his situation and make the interposition of the
> statute against performance a fraud. In such a case a court of equity
> acts upon the principle that not to give effect to those acts would be
> to allow the party permitting them to use the statute as an instrument
> defending deception and injustice. (Emphasis added.)

The Plaintiff and Defendant are both attorneys admitted to the New York bar and

bound by the same ethical rules. When one attorney attempts to undermine the public policy in New

York for regulating attorneys by using a violation of a rule as a sword, it supports the imposition of

exemplary or punitive damages in addition to the loss of the bargained for agreement. Punitive

damages are warranted to defer such future conduct where a party is morally culpable and the fraud

and deceit is against the public. See generally Walker v. Sheldon, 10 N.Y.2d 401 (1961). The local

rules were implemented to protect the public in dealing with attorneys with respect to fee

arrangements and to regulate conduct of attorneys acting between themselves, and Dwyer has

attempted to misuse the rules to his economic advantage or to the detriment of the Plaintiff and the

public, who have a vested interest in the regulation of fee-sharing agreements. In the case at bar,

there is no allegation that the Client was not aware of the joint representation, fee-sharing agreement

and was otherwise completely satisfied with the joint representation of the parties.

## C. Breach of the Implied in Fact Contract.

The basis of the claim for breach of the implied in fact contract is that the Settlement

19

Agreement entered into by the Client evidences the Client's ratification of the agreement for joint representation, and division of fees based on the 60/40 division. The parties actions, after the initial oral agreement with respect to fee sharing which include the legal services proffered by the Plaintiff and accepted by the Client and the Client's subsequent execution of the Settlement Agreement consenting to the fee division, which was on the same terms as the oral agreement, subsequently memorialized by Dwyer's written acknowledgment. See generally Martin v. Campanaro, 156 F.2d 127 (2nd Cir. 1946). The question of an implied in fact contract is generally a question of fact as it involves an assessment of the parties conduct and the extent to which such conduct demonstrates a meeting of the minds. Monahan v. Lewis, 51 A.D.3d 1308, 858 N.Y.S.2d 812, 814 (3rd Dept. 2008).

## CONCLUSION

For the foregoing reasons, Defendants' motion to transfer venue should be denied in each and every respect and Defendants' motion to dismiss the Plaintiff's First, Second, Fourth Fifth and Eighth Causes of Action should be denied in each and every respect.

Dated: New York, New York
March 23, 2018

Yours, etc.,
KAYSER & REDFERN, LLP

By:

Declan P. Redfern (DR 9292)
**Attorneys for Plaintiff**
515 Madison Avenue, 31st Fl.
New York, NY 10022
Tel: 212-935-5057
Email: dredfern@515law.com

TO:   Andrew Dwyer (AD 7793)
      DWYER & BARRETT, L.L.C.
      **Attorneys for Defendants**
      17 Academy Street, Suite 1201
      Newark, NJ 07102
      Tel: 973-242-3636
      Email: andy@dwyerbarrett.com