**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------ X
ALAN A. TARZY, ESQ.,        :
                          :

              Plaintiff,  :

                          :

   -against-         :      No. 18 Civ. 1456 (JFK)

                          :      **OPINION & ORDER**

ANDREW DWYER, DWYER & BARRETT, :
L.L.C., formerly known as THE   :
DWYER LAW FIRM, L.L.C.,       :

                          :

              Defendants. :
------------------------------ X

APPEARANCES

FOR PLAINTIFF ALAN A. TARZY, ESQ.
    Declan P. Redfern
    KAYSER & REDFERN, L.L.P.

FOR DEFENDANT ANDREW DWYER
    Andrew W. Dwyer
    DWYER & BARRETT L.L.C.

FOR DEFENDANT DWYER & BARRETT, L.L.C.
    Andrew W. Dwyer
    DWYER & BARRETT L.L.C.

**JOHN F. KEENAN, United States District Judge:**

Before the court is a motion by Defendants Andrew Dwyer and Dwyer & Barrett, L.L.C., formerly known as the Dwyer Law Firm, L.L.C., to transfer venue pursuant to 28 U.S.C. § 1404(a) and for partial dismissal of the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, this Court denies Defendants' request to transfer venue, and denies in part and grants in part Defendants' partial motion to dismiss.

1

## BACKGROUND

### A. Factual Background

For the purposes of this motion, this Court assumes the facts alleged in the Amended Complaint to be true.

Plaintiff Alan A. Tarzy ("Tarzy") is a resident of and attorney licensed to practice law in New York. (Am. Compl. ¶ 1.) Defendant Andrew Dwyer ("Dwyer") is a member of Dwyer & Barrett L.L.C., formerly known as the Dwyer Law Firm, L.L.C., and an attorney licensed to practice law in New Jersey. (Id. ¶ 2.) Tarzy's law office is located in New York, New York, while Defendants' law office is located in Newark, New Jersey. (Id. ¶¶ 1-2.)  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

On or about February 1, 2013, a new client ("Client") consulted Tarzy in connection with claims for wrongful termination and employment discrimination. (Id. ¶ 9.)  Client and Tarzy subsequently entered into a retainer agreement pursuant to which Tarzy would be paid a contingency fee based on a percentage of any sums recovered through a lawsuit or settlement. (Id. ¶ 10.)

After Tarzy's retention, Tarzy and Client discussed Client's claims of workplace discrimination based on his Jewish heritage and assessed an appropriate level of severance. (Id. ¶ 11.)  Tarzy had multiple discussions between February and May

2013 with the General Counsel for Client's former employer but was unable to negotiate a satisfactory severance offer. (Id.) After failing to negotiate an adequate offer, Tarzy advised Client to bring claims against Client's former employer based on a "compelling cause of action for employment discrimination." (Id. ¶ 12.)  Tarzy and Client engaged in discussions regarding legal strategy, and Tarzy suggested retaining an attorney experienced in the area of employment law to act as lead counsel. (Id.)  Tarzy explained to Client that the contingency fee payable under the retainer agreement would not change because Tarzy would agree to divide fees with any attorney selected to act as lead counsel. (Id.)

On or about June 1, 2013, Tarzy contacted Dwyer to discuss representing Client in his employment discrimination case. (Id. ¶¶ 13-14.)  On June 13, 2013, Tarzy, Dwyer, and Client met at Tarzy's New York office, and Client consented "generally" to Dwyer acting as lead counsel and to the attorneys dividing fees. (Id. ¶¶ 14-15.)  After that meeting, Tarzy and Dwyer met and agreed to a sixty/forty division because Defendants "would be doing the majority of the work." (Id. ¶ 16.)  On June 19, 2013, following a telephone call with Tarzy, Dwyer confirmed by e-mail the parties' oral agreement. (Id. ¶ 17.)

Following the in-person meeting with Tarzy and Client on June 13, 2013, but before sending the June 19, 2013 email to

Tarzy, Dwyer arranged for the Client to sign a separate retainer agreement exclusively with Defendants. (Id. ¶ 19.) Tarzy was never sent a copy of the agreement. (Id.)

On July 5, 2013, Defendants filed the Client's complaint in the Superior Court of New Jersey, identifying the offices of both Tarzy and Defendants as "Attorneys for the Plaintiff." (Id. ¶¶ 20-21.) Although Dwyer led the litigation of Client's claims in New Jersey, Tarzy had consistent involvement with Client, reviewing all documents and briefs, preparing Client for deposition, and discussing litigation and settlement strategy with Client. (Id.)

In late 2016, when it appeared Client's action was close to settling, Tarzy contacted Dwyer about the division of fees. (Id. ¶ 23.) Dwyer responded with surprise and claimed a lack of recollection regarding an agreement. (Id.) After being reminded of his June 19, 2013 e-mail, Dwyer claimed that any purported agreement was unenforceable under various local court rules and rules of professional conduct relating to fee sharing agreements in New Jersey. (Id.)

In January 2017, Client and his former employer reached a settlement agreement. (Id. ¶ 24). Pursuant to the settlement agreement, sixty percent of the legal fees were payable to Defendants without restriction, and forty percent of the legal fees were paid into escrow with Defendants to cover Tarzy's

claims for legal fees. (Id. ¶ 25.)  In or about January or
February 2017, Defendants received the settlement proceeds on
behalf of Client and, after deducting disbursements and legal
fees, remitted the balance to Client. (Id. ¶ 26)  Dwyer, on
behalf of himself and as principal of the Dwyer Firm L.L.C.,
refused to remit Tarzy's forty percent share of the legal fees.
(Id. ¶¶ 26-27.)

### B. Procedural History

On February 14, 2018, Tarzy brought the instant action in
the Supreme Court of the State of New York, County of New York.
(Id. ¶ 7.)  On February 17, 2018, Defendants removed the action
to this Court pursuant to 28 U.S.C. § 1441 and § 1446. (Notice
of Removal (Feb. 14, 2018), ECF No. 1.)  Tarzy filed his amended
complaint on April 3, 2018, asserting seven causes of action
against Defendants: (1) breach of contract; (2) fraudulent
inducement; (3) promissory estoppel; (4) breach of implied-in-
fact contract; (5) unjust enrichment and quantum meruit; (6)
tortious interference of contract; and (7) constructive trust
and equitable tracing.

### DISCUSSION

### I.  Motion to Transfer Venue Under 28 U.S.C. § 1404(a)

### A. Legal Standard

A district court may transfer a civil action "to any other
district or division where it might have been brought" if doing

so is for "the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). The inquiry on a motion to transfer is two-fold. "First, the court must determine whether the action sought to be transferred is one that 'might have been brought' in the transferee court." Orb Factory, Ltd. v. Design Sci. Toys, Ltd., 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998). Second, a court must weigh several factors, including "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010) (quoting D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-107 (2d Cir. 2006)). Some courts also consider two additional factors: the comparative familiarity of each district with the governing law and trial efficiency. See Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc., 202 F. Supp. 3d 399, 405 (S.D.N.Y. 2016).

The burden of demonstrating that a transfer of venue is appropriate "lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum 'unless the defendants make a clear and

convincing showing that the balance of convenience favors defendants' choice.'" <u>Orb Factory, Ltd.</u>, 6 F. Supp. 2d at 208 (quoting <u>Hubbell Inc. v. Pass & Seymour, Inc.</u>, 993 F. Supp. 955, 962 (S.D.N.Y. 1995)); <u>see also</u> <u>N.Y. Marine</u>, 599 F.3d at 114. The moving party must support its transfer application "with an affidavit containing detailed factual statements relevant to the factors [to be considered by the court in its transfer decision], including the potential principal witnesses expected to be called and a general statement of the substance of their testimony." <u>Orb Factory, Ltd.</u>, 6 F. Supp. 2d at 208 (quoting <u>Hernandez v. Graebel Van Lines</u>, 761 F. Supp. 983, 987 (E.D.N.Y. 1991)); <u>see also</u> <u>Davidson v. Chung Shuk Lee</u>, No. 17 CV 9820 (VB), 2018 WL 6047830, at *3 (S.D.N.Y. Nov. 19, 2018).

### B. Defendants' Motion to Transfer Venue is Denied

Tarzy does not dispute that his claims could have been filed in the District of New Jersey -- the venue requested by Defendants. Nonetheless, after reviewing the nine factors, this Court concludes that a transfer would be inappropriate.

### 1. Convenience of Witnesses

"The convenience of witnesses is an important consideration, and has often been described as the single most important § 1404(a) factor." <u>Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.</u>, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013). In analyzing this factor, a court "does not

merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum." Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (quoting Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004)). Instead, "the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." Id. "The convenience of non-party witnesses generally carries more weight than the convenience of party witnesses." Herbert Ltd., 325 F. Supp. 2d at 286.

Defendants identify five witnesses who would likely testify at trial. Of those witnesses, three would be inconvenienced by the forum in this District because they reside in New Jersey. Those three are Dwyer himself, his law partner, and their paralegal. (Defs.' Mem. of Law in Supp. of Partial Mot. to Dismiss at 7-8 (April 9, 2018), ECF No. 9 [hereinafter "Mem."].) Tarzy counters that this factor weighs in favor of neither party because the witness whose testimony would possess the most material information, Tarzy and Dwyer's mutual client, resides in the Eastern District of New York and, therefore, is equally inconvenienced by both forums. (Pls.' Mem. of Law in Opp. to Defs.' Partial Mot. to Dismiss at 9 (April 10, 2018), ECF No. 15 [hereinafter "Opp."].)

This Court finds that this factor is neutral for the reasons articulated by Tarzy:  (1) Defendants' key witnesses in New Jersey are affiliated with Dwyer & Barrett and are, therefore, under Defendants' control and can be brought to testify in New York, and (2) Dwyer and Tarzy's mutual client, the main key witness in the case, is equally inconvenienced by both forums because he lives in neither New York or New Jersey. Computer Operations, Inc., v. Digital Equipment Corp., 387 F. Supp. 8, 11 (E.D.N.Y. 1975)("Section 1404(a) was designed primarily for those cases . . . where defendant's essential witnesses were not under its control and were located in the proposed transferee district and plaintiff could not make the same claim as to its witnesses in the transferor district . . . .").  Accordingly, this factor does not weigh significantly in favor of transfer.

## 2. Location of Relevant Evidence

Defendants argue that "the New Jersey litigation resulted in a massive case file that occupies multiple file cabinets." (Mem. at 9; Dwyer Decl. ¶¶ 12-14 (April 9, 2018), ECF No. 11.) They also argue that "[m]ost of the file is not in electronic format" and that "if the file were stacked end to end, it would be approximately 38 feet high." (Mem. at 9.)

Tarzy has persuasively argued that the physical evidence to establish his contract, fraud, and equitable claims would be

limited, consisting mostly of e-mails exchanged between the parties, the retainer agreements signed by the Client, Dwyer's June 19, 2013 email, any contingency agreement entered into between Dwyer and Client, and the settlement agreement signed by Client. (Opp. at 10.) He further argues that the extent of his participation in Client's employment discrimination suit would be established by the testimony of the parties and the Client, not by physical evidence, making most of Defendants' "38 feet high" stack of documents unnecessary to this action. (Id.)

Although this Court is convinced by Tarzy's arguments, this factor still weighs slightly in favor of Defendants. "[M]odern technologies such as photocopying and faxing permit any documents . . . to be transported to New York with presumably minimal difficulty, and Defendants have made no showing of any particular burden that transferring the documents would entail." Herbert Ltd., 325 F. Supp. 2d at 289. Common sense, however, "suggests that retaining this case in New York imposes some incrementally greater burden, however slight, on Defendants to copy or transport documents that . . . would not [be necessary] if the case proceeded in [New Jersey]." Id. This factor, therefore, weighs slightly in favor of transfer.

### 3. Convenience of the Parties

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff

would not be substantially inconvenienced by a transfer." Everlast World's Boxing Headquarters Corp, 928 F. Supp. 2d at 744 (quoting 15 Charles A. Wright, et al., Federal Practice and Procedure § 3849 (3d ed. 2007)). "[A] motion to transfer 'should not be granted if all transfer would accomplish is to shift the inconvenience from one party to the other.'" Id. (quoting Guardian Life Ins. Co. of Am. v. Hernandez, No. 11 CV 2114(SAS), 2011 WL 3678134, at *2 (S.D.N.Y. Aug. 22, 2011)).

Defendants are located in Newark, New Jersey. Tarzy is located in New York, New York. Tarzy argues that he selected this venue because this action "is clearly a New York contract dispute." (Tarzy Decl. ¶ 5.) Defendants contend that Tarzy has failed to demonstrate that litigating in New Jersey will inconvenience Tarzy in any way. (Mem. at 11.) Although this Court agrees with Defendants, this Court also notes that Defendants have failed to articulate how -- apart from their concerns relating to the location of evidence -- they would be inconvenienced by having to litigate in New York, Tarzy's choice of forum. This factor, therefore, is neutral.

### 4. Locus of Operative Facts

Many courts consider the locus of operative facts to be a "primary factor in determining a § 1404(a) motion." Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. St. Paul Fire & Marine Ins. Co., No. 12 CIV 1250 PKC RCE, 2012 WL 1829589, at *4 (S.D.N.Y.

May 11, 2012) (quoting Mitsui Marine & Fire Ins. Co. v. Nankai
Travel Int'l Co., 245 F. Supp. 2d 523, 525-36 (S.D.N.Y. 2003)).
Courts interpret the locus of operative facts as "the place
where events and actors material to proving liability are
located." Id. (quoting Amardeep Garments Indus., Pvt. Ltd. v.
Cathay Bank, No. 10 CV 2429 (BSJ), 2011 WL 1226255, at *3
(S.D.N.Y. Mar. 23, 2011)).  Transfers are generally favored when
a party has failed to show that "any of the operative facts
arose in the Southern District of New York." Royal & Sun All.
Ins., 202 F. Supp. 3d at 408 (quoting Everlast, 928 F. Supp. 2d
at 745).

Tarzy alleges a breach of contract claim, a fraud claim,
and several equitable claims. "[F]or a breach of contract
action, the court must consider (1) 'the location where the
contract was negotiated or executed,' (2) 'where the contract
was to be performed,' and (3) 'where the alleged breach
occurred.'" Royal & Sun All. Ins., 202 F. Supp. 3d at 408
(quoting Everlast, 928 F. Supp. 2d at 745).  For fraud claims,
the court must consider where the fraudulent statements or
omissions were made. Samson Lift Techs. v. Jerr-Dan Corp., No.
09 CIV. 2493RJH, 2009 WL 2432675, at *4 (S.D.N.Y. Aug. 7, 2009)
("The operative events relating to fraud and misrepresentation
are deemed [to] occur in the place where such statements are
made."); accord Purcell Graham, Inc. v. Nat'l Bank of Detroit,

No. 93 CV 8786 (MBM), 1994 WL 584550, at *4 (S.D.N.Y. Oct. 24, 1994) ("Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received.").

The purported contract at issue relates to the splitting of fees between Tarzy and Defendants. (Am. Compl. ¶¶ 16-18.)  It was allegedly negotiated in part in Tarzy's office in New York and through communications between Tarzy and Dwyer over phone and email. (Id.; Mem. at 6.)  The performance and breach of the contract -- i.e. the refusal to pay Tarzy pursuant to the alleged fee sharing agreement -- occurred in New Jersey. (Opp. at 8-9.)  Dwyer's statements confirming the fee sharing agreement were transmitted from New Jersey to Tarzy in New York. (Am. Compl. ¶¶ 42-44.)  Because the only event that occurred in New York was the initial meeting between Dwyer and Tarzy and all other relevant events occurred in New Jersey, the principal locus of operative facts is New Jersey.  This weighs slightly in favor of transfer.

### 5. Availability of Process to Compel Attendance of Unwilling Witnesses

Neither party argues that there are unwilling witnesses who will need to be compelled to testify.  This factor is, therefore, neutral.

### 6. Relative Means of the Parties

Plaintiff argues that because Defendants are set to receive at a minimum sixty percent of the contingency fee obtained from Client's employment discrimination case, they are in a better financial position than Plaintiff, and it is therefore less burdensome on them to litigate the dispute in New York than for Plaintiff to litigate in New Jersey. (Opp. at 12.)  The Court does not find this argument convincing and finds that both parties are in similar financial situations.  This factor is, therefore, also neutral.

### 7. Forum's Familiarity with Governing Law

"In federal court, familiarity with the governing law is generally given little weight when considering transfer of venue." Royal & Sun All. Ins., 202 F. Supp. 3d at 410.  This is because "federal courts commonly apply state substantive law, which may not be the law of the state in which the federal court sits." Kwik Goal, Ltd. v. Youth Sports Publ'g, Inc., No. 06 CV 395(HB), 2006 WL 1517598, at *4 (S.D.N.Y. May 31, 2006).

The parties dispute whether New York or New Jersey law would apply to Tarzy and Dwyer's fee sharing arrangement.  Even if New Jersey law governs, however, this Court is capable of applying New Jersey contract law. Royal & Sun All. Ins., 202 F. Supp. 3d at 410.  This Court is also capable of applying New Jersey law to Tarzy's fraud and equitable claims if New Jersey law is indeed the applicable law. See S-Fer Int'l, Inc. v.

14

Paladion Partners, Ltd., 906 F. Supp. 211, 215 (S.D.N.Y. 1995)
("[E]ven if California law governs this dispute, the legal
issues involve relatively unexceptional questions of contract
and fraud.")  Accordingly, this factor weighs only slightly in
favor of transfer. See Vassallo v. Niedermeyer, 495 F. Supp.
757, 760 (S.D.N.Y. 1980) ("The fact that the law of another
jurisdiction governs the outcome of the case is a factor
accorded little weight on a motion to transfer, however,
especially in an instance such as this where no complex
questions of foreign law are involved."); see also Woodlawn
Fulton Properties, LLC v. Great Lakes Reinsurance (UK) PLC, No.
13-CV-5324 JG, 2013 WL 6577146, at *5 (E.D.N.Y. Nov. 20, 2013)
(declining to grant a motion to transfer venue, even though any
decision by the court interpreting New Jersey state law "could
have a persuasive effect on numerous other state and federal
cases involving New Jersey Storm Sandy claims and the
interpretation of New Jersey insurance law.").

### 8. Trial Efficiency and Interests of Justice

Defendants argue that trial efficiency and the overall
interests of justice "strongly favor transfer" because "[a]t
bottom this fee dispute is about the regulation of fee sharing
between attorneys" and "[b]ecause the underlying lawsuit was at
all times in the New Jersey state court system, and the
attorneys were representing a client who was a New Jersey

resident, New Jersey has the interest in this case, not New York." (Mem. at 11.)  Defendants also cite the statistic that 19.1 percent of civil cases in New York are over three years old, while only 4.1 percent are in New Jersey. (Dwyer Decl. ¶ 72.)  Tarzy only disputes Defendants' argument that New York courts are slower than New Jersey courts, arguing that "a more significant statistic is the median time in months from filing to trial for the period ending December 31, 2017, for New York and New Jersey civil cases which is 29.4 months and 41.1 months respectively." (Opp. at 12.)

None of the statistics cited by Defendants regarding trial efficiency lean heavily in favor of New Jersey over New York. "Nor has either party identified unique issues . . . as to why an imbalance in the parties' financial or other means make a transfer (or the lack thereof) in the interests of justice." E. Mishan & Sons, INC., v. Smart and Easy Corp., No. 18 CIV. 3217 (PAE), 2018 WL 6528496, at *12 (S.D.N.Y. Dec. 12, 2018).  This Court thus concludes that this factor is neutral.

### 9. Plaintiff's Choice of Forum

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant." Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998); see also Gottdiener, 462 F.3d at 107 ("[Plaintiff] chose

New York as its forum, a decision that is given great weight."). A plaintiff's choice of forum, however, "is accorded less weight where the [plaintiff's] chosen forum is neither [his] home nor the place where the operative facts of the action occurred." Dwyer v. Gen. Motors Corp., 853 F. Supp. 690, 694 (S.D.N.Y. 1994).

Defendants argue that because New York has only a "tenuous" connection to this action, Tarzy's choice of forum should be given less weight. (Mem. at 10 (quoting I Create Int'l v. Mattel, Inc., 03 CV 3993 (JFK), 2004 U.S. Dist. LEXIS 14577, at *16 (Aug. 9, 2004).)  This Court disagrees.  First, Tarzy is a resident of New York and, therefore, his decision to file his complaint in his home state is accorded substantial weight. TouchTunes Music Corp. v. Rowe Int'l Corp., 676 F. Supp. 2d 169, 173 (S.D.N.Y. 2009) (holding that courts are "loath to disturb a plaintiff's choice of forum," in particular "where plaintiff's chosen forum is its principal place of business").  Second, the meeting where Tarzy and Dwyer purportedly agreed to split fees occurred in New York; therefore, some of the operative facts occurred in this state.  This factor, thus, weighs against transfer.

### C. Conclusion

Defendants have not sustained their burden in convincing this Court that a transfer is warranted in this action.  The

principal factors that weigh in favor of transfer -- the location of the evidence, the locus of operative facts, and this forum's familiarity with New Jersey law -- do so only slightly. This is not enough to overcome the considerable weight this Court is required to give to Plaintiff's choice of forum. See Gottdiener, 462 F.3d at 107. As a result, this Court denies Defendants' motion to transfer this case to the District of New Jersey. After all, Newark is not Los Angeles and the federal court there is closer to the federal court in Manhattan than the White Plains courthouse of the Southern District is.

## II.  Motion to Dismiss

Having declined to transfer this case to the District of New Jersey, this Court will now decide Defendants' motion to dismiss.

### A. 12(b)(6) Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Matson v. Bd. of Educ., 631 F.3d 57, 63 (2d Cir. 2011). In determining the adequacy of the complaint, the Court may consider any document attached to the complaint as an

18

exhibit or incorporated in the complaint by reference, as well as documents which are integral to the complaint. Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995). On a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw reasonable inferences in the plaintiff's favor. Tsirelman v. Daines, 794 F.3d 310, 313 (2d Cir. 2015).

### B. Discussion

#### 1. The Complaint Fails to Allege a Breach of Contract Claim

Tarzy's first cause of action is for breach of contract. (Am. Compl. ¶¶ 37-44.) Tarzy alleges that he and Defendants entered into a contract which provided that together they would jointly litigate Client's action "upon the Defendants' agreement to share [any] legal fees recovered . . . on the basis of a sixty (60%) percent to a forty (40%) percent split, with Defendants receiving a sixty (60%) interest," and that Defendants breached this agreement when they refused to pay Tarzy forty percent of the legal fees from the Client's settlement. (Id. ¶ 38.) Tarzy also alleges that, although Client's consent to the division of fees was not initially obtained in writing, the Client subsequently ratified the fee division arrangement between his attorneys when he signed the confidential settlement agreement in his underlying employment discrimination suit. (Id. ¶ 24.)

Defendants argue that (1) Tarzy's breach of contract claim is governed by New Jersey law, not New York law; (2) Tarzy has failed to state a claim for breach of contract because, pursuant to New Jersey Rule of Professional Conduct 1.5(e), attorneys are only allowed to divide fees in an arrangement not based on the proportion of services performed if the attorneys have obtained written agreement from the client, which Tarzy has not alleged he obtained; and (3) Client never ratified any fee sharing agreement between the attorneys because, by signing the settlement agreement in his employment discrimination case, Client was merely acknowledging the existence of a dispute between the attorneys, not ratifying any prior consent given to a specific fee sharing agreement. (Defs.' Reply Mem. of Law at 10 (April 9, 2018), ECF No. 12; see also Mem. at 13.)

### a. Choice of Law

To determine whether the Amended Complaint pleads an enforceable contract, this Court must first decide what law governs the breach of contract claim. "A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state." Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 433 (2d Cir. 2012). In New York, the first step in any choice of law analysis is "to determine whether an actual conflict exists between the laws of the jurisdictions involved." Id. In breach of contract cases, if a

conflict exists, New York law then "looks to the 'center of gravity' of a contract to determine choice of law." Id. (quoting Matter of Allstate Ins. Co. (Stolarz), 81 N.Y.2d 219, 226 (1993)).

There is a conflict of contract law in this action. Under New Jersey law, a failure to comply with an ethical rule "forecloses the ability of an attorney to recover against another attorney under a breach of contract theory" because the agreement is considered "contrary to law." Vinick v. Friedman, No. A-2590-09T3, 2011 WL 3176712, at *4 (N.J. Super. Ct. App. Div. July 28, 2011) (quoting Goldberger, Seligsohn & Shinrod, P.A. v. Baumgarten, 378 N.J. Super. 244, 252 (App. Div. 2005)); accord Weiner & Mazzei, P.C. v. Sattiraju Law Firm, PC, No. A-1079-14T3, 2016 WL 2993123, at *2 (N.J. Super. Ct. App. Div. May 25, 2016) ("A fee sharing agreement between attorneys that does not satisfy the requirements of R.P.C. 1.5(e) is not enforceable."). Under New York law, however, failure to adhere to an ethical rule does not foreclose a court from enforcing a fee-sharing agreement between attorneys. See Marin v. Constitution Realty, LLC, 28 N.Y.3d 666, 672 (2017). In other words, in New York, an attorney cannot "use the ethical rules as a sword to render unenforceable, as between . . . two attorneys, [an] agreement[]." Id. Thus, if New Jersey law applies, the alleged contract between Tarzy and Dwyer is invalid, but if New

York law applies, Tarzy may be able to recover under the contract.

Because there is a conflict of law, this Court must now determine the "center of gravity" of the contract. This Court "may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539 (2d Cir. 1997) (quoting Brink's Ltd. v. South African Airways, 93 F.3d 1022, 1030-31 (2d Cir. 1996)). This Court "may also consider public policy where the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests." Id. (quoting Brink's Ltd., 93 F.3d at 1031). "The traditional choice of law factors, the places of contracting and performance, are given the heaviest weight in this analysis." Brink's Ltd., 93 F.3d at 1031.

This Court concludes that New Jersey law applies to Tarzy's breach of contract claim, since (1) Tarzy and Dwyer contracted and negotiated the purported joint representation agreement in both New York and New Jersey, (2) their joint representation of the Client occurred predominately in New Jersey, and (3) the fees to be divided between them are located in New Jersey. (Am. Compl. ¶¶ 14-18, 22, 25, 26.) New Jersey, therefore, has "the

most significant interest in, or relationship to, the dispute."

<u>Lazard Freres & Co.</u>, 108 F.3d at 1539.

### b. Liability for Breach of Contract

As stated above, New Jersey law is clear that an attorney cannot enforce a fee sharing agreement where the attorney has failed to comply with the rules of professional conduct governing fee sharing agreements. <u>See</u> <u>Goldberger</u>, 378 N.J. Super. at 252 ("We agree . . . with the motion judge's conclusion that the alleged agreement did not conform to the requirements of R.P.C. 1.5(e) and therefore plaintiff was not entitled to relief on the breach of contract claim."). Tarzy concedes that the Client, in violation of both New York Rule of Professional Conduct 1.5(g) and New Jersey Rule of Professional Conduct 1.5(e), which prohibit the division of fees between attorneys without written consent from the client, never acknowledged his consent to Tarzy and Dwyer's alleged fee sharing agreement in writing prior to the commencement of the Client's employment discrimination case.[1] (Opp. at 5 ("Even

---

[1] New York Rule of Professional Conduct 1.5(g) provides that "a lawyer shall not divide a fee for legal services with another lawyer who is not associated in the same law firm" unless "the division is in proportion to the services performed by each lawyer or, <u>by a writing given to the client</u>, each lawyer assumes joint responsibility for the representation." N.Y. Rule of Prof'l Conduct r. 1.5(g) (emphasis added). New Jersey Rule of Professional Conduct 1.5(e) provides that lawyers who are not in the same firm may divide fees only if "the division is in proportion to the services performed by each lawyer, or, <u>by written agreement with the client</u>, each lawyer assumes joint responsibility for the representation." N.J. Rule of Prof'l Conduct r. 1.5(e) (emphasis added).

though Dwyer acknowledged the parties' agreement, neither party took any further steps to further memorialize the attorneys' fee-sharing agreement with a document evidencing the Client's consent.").)  Tarzy argues, however, without citing case law, that the fee sharing agreement is still enforceable because the Client ratified the attorneys' decision to divide fees when he signed the settlement agreement.

This Court holds that the Client's signing of the confidential settlement agreement, at the end of his case, does not bring the fee sharing agreement into compliance with either New York Rule of Professional Conduct 1.5(g) or New Jersey Rule of Professional Conduct 1.5(e).  This Court has found no case law that holds that a client can ratify a fee sharing agreement after a dispute has been litigated.  In fact, the ABA has authored a formal opinion interpreting ABA Model Rule of Professional Conduct 1.5 -- on which both rules are based -- which states that a client's consent to a fee sharing agreement must be obtained "either before or within a reasonable time after commencing the representation." ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 474 (2016), at 6.  Tarzy has failed to allege that either he or Dwyer obtained Client's written consent to the fee sharing arrangement before commencing with the Client's employment discrimination case.  Tarzy cannot cure that defect by arguing that the Client later ratified his

consent during the settlement of his employment discrimination case.

Accordingly, Tarzy's breach of contract claim must be dismissed because (1) New Jersey law is clear that a failure to comply with a rule of professional conduct can render a contract unenforceable, and (2) the Client's written signature, obtained at the end of litigation, is not enough to bring Tarzy and Dwyer's fee sharing agreement into compliance with either New York Rule of Professional Conduct 1.5(g) or New Jersey Rule of Professional Conduct 1.5(e).

## 2. The Complaint Fails to Allege a Claim of Fraudulent Inducement

Tarzy's second cause of action is for fraudulent inducement. He alleges that Dwyer agreed to the joint representation agreement while intending to later argue that the agreement was unenforceable based on New Jersey Rule of Professional Conduct 1.5(e), New York Rule of Professional Conduct 1.5(g), and New Jersey Court Rule 1:39-6. (Am. Compl. ¶¶ 30-34, 41-44.) Defendants move to dismiss Tarzy's fraudulent inducement claim, arguing that (1) it should be governed by New Jersey law, (2) Tarzy has failed to meet the heightened pleading requirement imposed by Federal Rule of Civil Procedure 9(b), and (3) Tarzy cannot convert a breach of contract claim into a claim for fraudulent inducement. (Mem. at 18-19; Defs.' Suppl. Resp. at 2 (May 8, 2018), ECF No. 21.)

### a. Choice of Law

In New Jersey, "[a] misrepresentation amounting to actual legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." Jewish Ctr. of Sussex Cty. v. Whale, 86 N.J. 619, 624 (1981); see also CDK Glob., LLC v. Tulley Auto. Grp., Inc., No. 15-3103 (KM) (JBC), 2016 WL 1718100, at *3 (D.N.J. Apr. 29, 2016).

In New York, to prove fraud, "a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank, 57 F.3d 146, 153 (2d Cir. 1995).

This Court concludes that there is no material difference between New Jersey and New York law governing fraud claims. As a result, this Court will apply the law of New York, the forum state, to Plaintiff's claims. See Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004) ("In the absence of substantive difference, however, a New York court will dispense with choice of law analysis; and if New York law

is among the relevant choices, New York courts are free to apply it.").

### b. Liability for Fraudulent Inducement

"It is black letter law in New York that a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract." Townsley v. Airxcel, Inc., No. 18-CV-1439 (KBF), 2018 WL 3946449, at *4 (S.D.N.Y. Aug. 15, 2018) (quoting EQT Infrastructure Ltd. v. Smith, 861 F. Supp. 2d 220, 233 (S.D.N.Y. 2012)). "[U]nder New York law, parallel fraud and contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 183 (2d Cir. 2007) (citing Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir.1996)). "New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement." Merrill Lynch & Co. Inc., 500 F.3d at 184.

Tarzy is not alleging that Dwyer has a separate legal duty to perform under the contract nor has he alleged that he is

seeking special damages that would be unrecoverable as contract damages. Instead, he is basing his fraudulent inducement claim on alleged misrepresentations made by Dwyer. Specifically, Tarzy alleges that (1) "Defendant falsely and knowingly misrepresented to the Plaintiff, that Defendant agreed to the joint representation of the Client, on the terms agreed at the parties' June 13, 2013, meeting as subsequently memorialized in the Defendant's June 19, 2013, e-mail" (Am. Compl. ¶ 42); (2) "Defendants' representation at the time was false when made because Defendants intended to rely on NJ RPC R 1.5(e) and NY RPC R 1.5(g) and/or New Jersey Rules, R 1:39-6 to avoid their contractual obligation" (Id.); and (3) "Defendants' misrepresentations were intended to deceive the Plaintiff and to induce the Plaintiff to act upon the misrepresentation to his detriment." (Id.)

These allegations fail to plead a claim for fraudulent inducement. In essence, Tarzy has alleged that Dwyer's misrepresentation was Dwyer's agreement to perform under a contract that Dwyer intended later to argue was invalid. This cannot sustain a claim of fraudulent inducement because the misrepresentation is "closely related to the subject matter of the contract and concern[s] representations of future intent, not a separate, present fact," and, therefore, can only sustain a possible breach of contract claim. MCI Worldcom Commc'ns, Inc.

v. N. Am. Commc'ns Control, Inc., No. 98 CIV 6818 LTS, 2003 WL 21279446, at *9 (S.D.N.Y. June 4, 2003); see also Grappo v. Alitalia Linee Aeree Italiane, S.p.A., 56 F.3d 427, 434 (2d Cir. 1995) ("A cause of action for fraud does not generally lie where the plaintiff alleges only that the defendant entered into a contract with no intention of performing."); Miller v. Holtzbrinck Publishers, LLC, No. 08 CIV 3508 (HB), 2009 WL 528620, at *4 (S.D.N.Y. Mar. 3, 2009), aff'd sub nom. Miller v. Holtzbrinck Publishers, L.L.C., 377 F. App'x 72 (2d Cir. 2010) ("It is well settled under New York law that 'a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations.'" (quoting Astroworks, Inc. v. Astroexhibit, Inc., 257 F. Supp. 2d 609, 616 (S.D.N.Y. 2003))).

Tarzy also appears to base his fraudulent inducement claim on Defendants' failure to disclose that the contract was not in compliance with certain rules of professional conduct. "Where the fraud is based on alleged omission of material fact -- as is the case here -- the plaintiff must show that the defendant had a duty to disclose." In re Refco Sec. Litig., 759 F. Supp. 2d 301, 316 (S.D.N.Y. 2010); see also United States v. Szur, 289 F.3d 200, 211 (2d Cir. 2002) ("[W]hen dealing with a claim of fraud based on material omissions, it is settled that a duty to disclose 'arises [only] when one party has information that the

other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.'" (quoting Chiarella v. United States, 445 U.S. 222, 228 (1980) (alterations in original)).  Tarzy has failed to allege that Dwyer had a duty to disclose that the fee sharing agreement could potentially be rendered unenforceable by New Jersey's or New York's rules of professional conduct.  Thus, he has failed to plead fraudulent inducement based on the omission of material fact.

### 3. The Complaint Alleges a Claim of Promissory Estoppel

Tarzy's third cause of action is for promissory estoppel. To establish a claim for promissory estoppel in New York, a plaintiff "must show '[1] a clear and unambiguous promise; [2] a reasonable and foreseeable reliance by the party to whom the promise is made; and [3] an injury sustained by the party asserting the estoppel by reasons of his reliance.'" Fantozzi v. Axsys Techs., Inc., No. 07 CIV 2667 LMM, 2007 WL 2454109, at *5 (S.D.N.Y. Aug. 20, 2007) (quoting City of Yonkers v. Otis Elevator Co., 844 F.2d 42, 48 (2d Cir. 1988)). In New Jersey, a plaintiff must show "(1) there was a clear and definite promise; (2) the promise was made with the expectation that the promisee would rely upon it; (3) the promisee reasonably did rely on the promise; and (4) incurred a detriment in said reliance." Ergowerx Int'l, LLC, 18 F. Supp. 3d at 442 (quoting Martin v.

Port Auth. Transit Corp., No. 09-3165 (NLH), 2010 WL 1256650, at
*5 (D.N.J. Mar. 25, 2010)).  The parties dispute whether New
York or New Jersey law governs this claim. (Mem. at 17; Opp. at
19.)  This Court, however, concludes that there is no
substantial difference between the elements of New York and New
Jersey law regarding promissory estoppel and, therefore, no
choice of law analysis is necessary.

Defendants move to dismiss Tarzy's promissory estoppel
claim on the ground that it is duplicative of Tarzy's breach of
contract claim. (Mem. at 17.)  Promissory estoppel, however, "is
a legal fiction which is used as consideration for contractual
consideration where a party relies, to its detriment, on the
promises of another without having entered into an enforceable
contract." Paxi, LLC v. Shiseido Americas Corp., 636 F. Supp. 2d
275, 287 (S.D.N.Y. 2009).  "It is a narrow doctrine which
generally only applies where there is no written contract, or
where the parties' written contract is unenforceable for some
reason." Id.  This Court disagrees with Defendants that Tarzy's
promissory estoppel claim is duplicative of its breach of
contract claim.  Because the fee sharing agreement between Tarzy
and Dwyer is unenforceable due to the parties' failure to comply
with rules of professional conduct, the door to a promissory
estoppel claim has opened. Mendez v. Bank of Am. Home Loans
Servicing, LP, 840 F. Supp. 2d 639, 654 (E.D.N.Y. 2012)

("Plaintiff is permitted to continue his claim for promissory estoppel because the existence of the contract itself is disputed . . . .").

Tarzy alleges that (1) in agreeing to the joint representation of the Client, Tarzy relied to his detriment on the clear and unambiguous promise that Dwyer would pay him forty percent of the legal fees recovered; (2) Tarzy's reliance was reasonable because the promise was made by Dwyer, "an attorney and officer of the Court in New York and New Jersey"; and (3) Tarzy "suffered damages in the amount of forty (40%) of the legal fees paid" in Client's action. (Am. Compl. ¶¶ 46-49.) These allegations are sufficient at this stage to plausibly allege a claim of promissory estoppel.

### 4. The Complaint Fails to Allege a Claim for Breach of an Implied-in-Fact Contract

Tarzy has failed to allege facts supporting his fourth cause of action: breach of a contract implied in fact. Tarzy alleges that an implied-in-fact contract is established "by the Client's execution of the Settlement Agreement which acknowledges the joint representation of Plaintiff and Defendants and their division of legal fees." (Id. ¶ 51.) Defendants move to dismiss this claim because it is "simply a restatement of the breach of contract claim." (Mem. At 17.)

In New York, a breach of an implied contract claim is governed by the same choice of law analysis as a breach of an

express contract claim.  See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 583 (2d Cir. 2006) (applying a "center of gravity" test to a breach of an implied-in-fact contract claim).  Therefore, for the reasons stated above, Tarzy's implied-in-fact contract claim is governed by New Jersey law.

In New Jersey, a claim to enforce a contract implied in fact fails where an express agreement "concern[s] the same subject matter" as the contract implied in fact. Saeed v. Kreutz, 606 F. App'x 595, 597 (2d Cir. 2015); accord Baer v. Chase, 392 F.3d 609, 618 (3d Cir. 2004).  This Court, however, has held the parties' express agreement unenforceable. Nevertheless, even if this Court were to find one existed, an implied-in-fact contract would be unenforceable because the parties failed to comply with the rules of professional conduct regarding fee sharing agreements.  See St. Paul Fire & Marine Ins. Co. v. Indem. Ins. Co. of N. Am., 32 N.J. 17, 23 (1960) ("An implied-in-fact contract is in legal effect an express contract."); Goldberger, 378 N.J. Super. at 25 (denying relief on a breach of contract claim because the parties failed to comply with the rules of professional conduct).  Accordingly, Tarzy's fourth cause of action must be dismissed.

### 5. The Complaint Fails to Allege a Claim for Tortious Interference

Defendants have moved to dismiss Tarzy's sixth cause of action for tortious interference with contract. (Mem. at 21; Defs.' Suppl. Resp. at 5.)

To plead a claim for tortious interference under New York law, a plaintiff "must show '(1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach, and (4) damages.'" <u>White Plains Coat & Apron Co. v. Cintas Corp.</u>, 460 F.3d 281, 285 (2d Cir. 2006) (quoting <u>Foster v. Churchill</u>, 87 N.Y.2d 744, 750–751 (1996)). Under New Jersey law, a plaintiff must plead "(1) the existence of the contract; (2) interference which was intentional and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages." <u>Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Pub. Inc.</u>, 49 F. Supp. 2d 673, 678 (S.D.N.Y. 1999) (quoting <u>Velop, Inc. v. Kaplan</u>, 301 N.J.Super. 32, 49 (App.Div.1997)).

Tarzy has failed to allege a claim for tortious interference under either New York or New Jersey law. He alleges that Defendants tortiously interfered with his retainer agreement with Client. (Am. Compl. ¶ 57.) This claim fails because Tarzy has not alleged that the Client breached his retainer agreement with Tarzy. <u>See</u> <u>G-I Holdings, Inc. v. Baron &</u>

Budd, 179 F. Supp. 2d 233, 253 (S.D.N.Y. 2001) ("New York law requires that to plead tortious interference with contract properly, the plaintiff must allege 'breach' of an existing contract."); see also id. ("[W]hile New Jersey law does not explicitly identify breach as an element of this cause of action, inducing a third party to violate some provision of its contract with the putative plaintiff is implicit in the element of 'interference' with the pre-existing contract."). Nowhere in the complaint has Tarzy made the claim that the Client breached the terms of the retainer agreement in any way. Without such allegations, Tarzy's claim for tortious interference of contract must be dismissed.

## III.  Leave to Amend

Federal Rule of Civil Procedure 15 instructs a court to "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, amendment "is not warranted absent some indication as to what [a plaintiff] might add to [its] complaint in order to make it viable." Horoshko v. Citibank, N.A., 373 F.3d 248, 249 (2d Cir. 2004) (internal quotation marks omitted). Accordingly, should Tarzy wish to amend, his motion must demonstrate how he will cure the deficiencies in his claims and that justice requires granting leave to amend. His motion must be filed within 30 days of the date of this Opinion.

## CONCLUSION

For the foregoing reasons, Defendants' motion to transfer venue is DENIED. Defendants' partial motion to dismiss Plaintiff's claims is GRANTED in part and DENIED in part. Defendants' motion to dismiss Plaintiff's claim for promissory estoppel is denied. Plaintiff's other causes of action for breach of contract, fraudulent inducement, breach of an implied-in-fact contract, and tortious interference are dismissed without prejudice.


**SO ORDERED.**

Dated:     New York, New York
           January 8 , 2019

                              _John F. Keenan_
                                    John F. Keenan
                            United States District Judge