UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALAN A. TARZY, ESQ.,

                Plaintiff,

-against-

ANDREW DWYER, DWYER & BARRETT, L.L.C. formerly known as THE DWYER LAW FIRM, L.L.C.,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/18/2020

18 Civ. 1456 (AT) (SDA)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Alan A. Tarzy, brings this action against Defendants, Andrew Dwyer and Dwyer & Barrett, L.L.C., formerly known as the Dwyer Law Firm, L.L.C., asserting three causes of action arising out of a purported fee-sharing agreement between the parties: (1) promissory estoppel, (2) unjust enrichment and *quantum meruit*, and (3) tortious interference with contract. Second Amended Complaint ("SAC") ¶¶ 2, 4, 48–60, ECF No. 44. In addition to compensatory damages, Plaintiff seeks punitive damages. *Id.* at 23–24. Defendants move for partial dismissal of the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 49; *see also* Def. Mem. at 1, ECF No. 50. For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in part.

                                    **BACKGROUND**

    The following facts are taken from the complaint and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).

    In February 2013, an individual seeking legal advice ("Client") consulted Plaintiff, an attorney, regarding Client's desire to pursue claims for wrongful termination, employment discrimination, and related claims against his employer (the "Underlying Action"). SAC ¶ 11.

Client and Plaintiff "agreed orally" to enter into a written retainer agreement pursuant to which Client agreed to pay Plaintiff a percentage of any money recovered in the Underlying Action. *Id.* ¶ 12. In November 2013, Plaintiff sent Client a written retainer agreement (the "Tarzy Retainer") backdated to February 1, 2013, which the Client executed. *Id.*

After Plaintiff and Client's former employer were unable to negotiate a satisfactory severance offer, *id.* ¶ 13, Plaintiff advised Client to bring an action and retain an employment discrimination attorney to lead the litigation, *id.* ¶ 14. Plaintiff explained to Client that the contingency fee payable under their retainer agreement would not change because Plaintiff would agree to share his fee with the attorney selected as lead counsel. *Id.*

In June 2013, Plaintiff contacted Andrew Dwyer to discuss representing Client in the Underlying Action. *Id.* ¶ 16. On June 13, 2013, Plaintiff, Dwyer, and Client met at Plaintiff's New York office, and Client "consented generally" to the attorney's fee sharing arrangement, which "would have no impact on the agreed upon legal fees to be paid by the Client." *Id.* ¶ 17. Following this meeting, Plaintiff and Dwyer met at Plaintiff's office and discussed the division of fees and agreed to a sixty-forty split, in favor of Defendants. *Id.* ¶ 18.

On June 24, 2013, the Underlying Action was filed in New Jersey Superior Court. *Id.* ¶ 22. On September 14, 2016, the court scheduled the case for trial and engaged the parties in settlement talks. *Id.* ¶ 24. Plaintiff reminded Defendants that they had an agreement in place as to the division of fees, but Dwyer claimed that any purported agreement was unenforceable based on New Jersey court rules and rules of professional conduct. *Id.*

After these discussions, Dwyer instructed Client to execute a new retainer agreement with Defendants (the "Dwyer Retainer") and did not advise Plaintiff about this new retainer. *Id.* ¶ 36. Dwyer advised Client that signing the Dwyer Retainer did not constitute a breach of the

Tarzy Retainer and that Plaintiff had left the case voluntarily, which Plaintiff alleges to be a knowingly false statement. *Id.* ¶ 38. Dwyer also assured Client that any disputed legal fees would be set aside in escrow until the dispute between counsel was resolved. *Id.*

In January 2017, Client and his former employer reached a settlement agreement, *id.* ¶ 25, pursuant to which sixty percent of the legal fees were payable to Defendants "without restriction" and forty percent of the legal fees were paid into Defendants' escrow account to cover Plaintiff's claims for legal fees, *id.* ¶ 26. Defendants received the settlement proceeds and, after deducting disbursements and legal fees, remitted the balance to Client. *Id.* ¶ 27. Dwyer, on behalf of himself and as principal of Dwyer & Barrett, L.L.C., did not remit Plaintiff's forty percent share of the legal fees. *Id.* ¶ 28. Defendants transferred all of the escrow funds deposited pursuant to the settlement agreement to Defendants' general business account. *Id.* ¶ 42.

On February 14, 2018, Plaintiff filed this action in Supreme Court, New York County. *Id.* ¶ 7. On February 17, 2018, Defendants removed the action to the Southern District of New York pursuant to 28 U.S.C. § 1441 and § 1446. *Id.* ¶ 8. Defendants moved to transfer venue pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of New Jersey and to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). *Id.*

In an Opinion and Order dated January 8, 2019, the Honorable John F. Keenan denied Defendants' request to transfer venue and granted in part and denied in part Defendants' motion to dismiss. *Tarzy v. Dwyer*, No. 18 Civ. 1456, 2019 WL 132280, at *12 (S.D.N.Y. Jan. 8, 2019). Specifically, Judge Keenan dismissed Plaintiff's claims for breach of contract, fraudulent

inducement, breach of an implied-in-fact contract, and tortious interference, and preserved Plaintiff's claims for promissory estoppel, *quantum meruit*, and unjust enrichment.  *Id.*

On June 3, 2019, Plaintiff filed the SAC, asserting claims for promissory estoppel, unjust enrichment and *quantum meruit*, and tortious interference with contract, and seeking compensatory and punitive damages.  SAC ¶¶ 48–60.  Defendants move to dismiss Plaintiff's promissory estoppel, tortious interference, and punitive damages claims.  Def. Mem. at 1.

## DISCUSSION

I.  Legal Standard

A.  Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level."  *Id*.  A court must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

II.  Analysis

A.  Choice of Law

Because this Court's subject matter jurisdiction is grounded on diversity between the

parties, the Court must first determine the body of substantive law that applies to Plaintiff's claims. *See Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 419 (2d Cir. 2001). "The state law to be applied is determined by the choice of law principles of the forum state." *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993). The jurisdictions involved in this case are New York, where this action was filed, and New Jersey, where the Underlying Action was litigated and where Defendants are domiciled. Because New York is the forum state, this Court will apply New York's choice of law principles, pursuant to which the Court's "first step . . . is to determine whether an actual conflict exists between the laws of the jurisdictions involved." *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012).

Plaintiff's promissory estoppel claim does not require a choice of law analysis because there is no material difference between the elements of the claim under New York and New Jersey law. In New York, a plaintiff claiming promissory estoppel must demonstrate "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reasons of his reliance." *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 48 (2d Cir. 1988) (internal quotation marks and citation omitted). In New Jersey, a plaintiff must prove that "(1) there was a clear and definite promise; (2) the promise was made with the expectation that the promisee would rely upon it; (3) the promisee reasonably did rely on the promise; and (4) incurred a detriment in said reliance." *Swider v. Ha-Lo Indus., Inc.*, 134 F. Supp. 2d 607, 619 (D.N.J. 2001) (citation omitted). Because these jurisdictions apply the same substantive rules, and the slight differences in word choice would not have "a significant possible effect on the outcome of the trial," a choice of law analysis is not necessary here. *AllGood Entm't, Inc. v. Dileo Entm't and Touring, Inc.*, 726 F. Supp. 2d 307, 313 (S.D.N.Y. 2010); *see Tarzy*, 2019 WL 132280, at

5

\*10 (finding no material difference between New York and New Jersey law with respect to promissory estoppel).

Plaintiff's claim for tortious interference with contract, however, requires a choice of law analysis because New York and New Jersey differ on the elements of the cause of action. In New York, a plaintiff "must show '(1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach; and (4) damages.'" *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281, 285 (2d Cir. 2006) (quoting *Foster v. Churchill*, 665 N.E.2d 583, 586 (N.Y. 1996) ). In New Jersey, a plaintiff must show that "(i) the plaintiff has a protectable interest, i.e., valid contract with a third party; (ii) the interference with that protected interest was intentional and malicious; (iii) the interference caused the loss; and (iv) plaintiff was damaged." *AllGood Entm't*, 726 F. Supp. 2d at 314 (collecting cases).

The first difference, the "breach" element, does not present an actual conflict. New York's "breach" element, while not explicitly paralleled in New Jersey law, is "implicit in the element of 'interference' with the pre-existing contract." *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 253 (S.D.N.Y. 2001); *Tarzy*, 2019 WL 132280, at \*12 (also finding no conflict on the breach element).

The second difference, the "malice" element, presents an actual conflict that requires determining the choice of controlling law. To satisfy New Jersey's "malice" element, a plaintiff "must affirmatively show that the defendant harbored some improper intention beyond mere competition or financial self-interest, or that the defendant employed inappropriate means." *AllGood Entm't*, 726 F. Supp. 2d at 314. By contrast, New York law "only requires proof of malice if the economic interest defense has been triggered." *Johnson & Johnson v. Guidant*

6

*Corp*, 525 F. Supp. 2d 336, 359 (S.D.N.Y. 2007) (internal quotation marks and citation omitted). Here, Defendants have not raised the economic interest defense, which only applies to "actions undertaken by the defendant in order to protect its legal or financial stake in the breaching party's business." *AllGood Entm't*, 726 F. Supp. 2d at 314.  Therefore, whether or not the Plaintiff must demonstrate "malice" will affect the outcome of the case and poses an actual conflict of law.

For tort claims, New York law requires an "interest analysis" to determine the choice of controlling law. *Id. at* 315.  Under this analysis, the law of the jurisdiction having the greatest interest in the litigation prevails. *Hidden Brook Air, Inc. v. Thabet Aviation Int'l., Inc*. 241 F. Supp. 2d 246, 277 (S.D.N.Y. 2002).  Where the parties are domiciled in different states, as is the case here, "the locus of the tort will almost always be determinative in cases involving conduct-regulating laws." *Krock v. Lipsay*, 97 F.3d 640, 646 (2d Cir. 1996).  Conduct-regulating laws are those that "people use as a guide to governing their primary conduct." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 158 (2d Cir. 2012).  The tort of "tortious interference with contractual relations is conduct-regulating" because people use it as a guide to govern their conduct with respect to existing contracts. *Hidden Brook*, 241 F. Supp. 2d at 277.

Here, because Defendants' allegedly tortious act of convincing the client to sign a retainer with their firm took place in New Jersey, and the Underlying Action was litigated there, New Jersey is the locus of the tort and has the greater interest in regulating the conduct of parties involved in this case.  Def. Reply at 3, ECF No. 52; *see also Tarzy*, 2019 WL 132280, at *8 (finding that New Jersey "has the most significant interest in, or relationship to, the dispute" with respect to Plaintiff's breach of contract claim (internal quotation marks and citation omitted)). Therefore, New Jersey law governs the tortious interference with contract claim.  Because

Plaintiff's claim for punitive damages derives from the tortious interference claim, the claim for punitive damages is also governed by New Jersey law.  *See* Pl. Opp. at 20.

      B.  Plaintiff's Claims

           i.  Promissory Estoppel

Plaintiff has alleged sufficient facts to state a promissory estoppel claim.  In his Opinion and Order, Judge Keenan held that Plaintiff plausibly alleged a claim of promissory estoppel because "(1) in agreeing to the joint representation of the Client, [Plaintiff] relied to his detriment on the clear and unambiguous promise that Dwyer would pay him forty percent of the legal fees recovered; (2) [Plaintiff's] reliance was reasonable because the promise was made by Dwyer . . . ; and (3) [Plaintiff] suffered damages in the amount of forty (40%) of the legal fees paid in Client's action."  *Tarzy*, 2019 WL 132280, at *11 (internal quotation marks and citation omitted).  Because neither party alleges new information, that holding governs under the law of the case doctrine.  *Tarzy*, 2019 WL 132280, at *11 ("This Court disagrees with Defendants that [Plaintiff's] promissory estoppel claim is duplicative of its breach of contract claim.  Because the fee sharing agreement between [Plaintiff] and [Defendants] is unenforceable due to the parties' failure to comply with rules of professional conduct, the door to a promissory estoppel claim has opened.").

The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," *Pepper v. United States*, 562 U.S. 476, 506 (2001) (internal quotation marks and citation omitted), unless there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," *DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992) (internal quotation marks and citation

omitted). The law of the case doctrine applies to Plaintiff's promissory estoppel claim, because Judge Keenan's Opinion and Order evaluated that claim against the same legal standard and none of the exceptions to the doctrine applies. Therefore, the Court continues to hold that Plaintiff plausibly alleged a claim of promissory estoppel.

A renewed motion to dismiss is not the proper procedural vehicle for seeking reconsideration of the Court's decision regarding Plaintiff's promissory estoppel claim. Defendants could have sought reconsideration pursuant to Southern District Local Civil Rule 6.3. Rule 6.3 provides that "a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion." Defendants did not seek reconsideration within fourteen days after the entry of the Opinion and Order. To the extent that Defendants seek reconsideration now, such a motion is untimely.

Accordingly, Defendants' motion to dismiss the promissory estoppel claim is DENIED.

### ii. Tortious Interference With Contract

Plaintiff has not pleaded sufficient facts to state a tortious interference with contract claim. The elements for such a claim under New Jersey law are "(i) the plaintiff has a protectable interest, i.e., valid contract with a third party; (ii) the interference with that protected interest was intentional and malicious; (iii) the interference caused the loss; and (iv) plaintiff was damaged." *AllGood Entm't*, 726 F. Supp. 2d at 314. Here, the existence of the contract, the loss of the contract and prospective gain as a result of the interference, and damages are easily satisfied and uncontested by the parties. However, because the implicit "breach" element is not satisfied, this claim must be dismissed. *See G-I Holdings*, 179 F. Supp. 2d at 253.

The "breach" element is not satisfied because Plaintiff has not alleged any facts to support the claim that the Client breached the Tarzy Retainer as a result of entering into the Dwyer Retainer. Plaintiff has not alleged that "the client did or even tried to do anything to deny [P]laintiff the fees to which he claims he is entitled." Def. Reply at 9. In fact, the SAC alleges "it is the Defendants and not the Client who are contesting the fees payable to Plaintiff, and by executing the [s]ettlement [a]greement, the Client has since ratified the division of legal fees in the agreed upon percentage." SAC ¶ 26. Plaintiff merely states a legal conclusion that "Defendant intentionally procured the Client's breach of the Tarzy Retainer by having the Client enter into the Dwyer Retainer." SAC ¶ 59. The conclusory allegation and formulaic recitation of the elements do not meet the plausibility standard to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Because Plaintiff failed to allege facts showing a breach of contract, it is not necessary to analyze the other elements.

Accordingly, Defendant's motion to dismiss the tortious interference with contract claim is GRANTED.

      iii. Punitive Damages

Plaintiff's claim for punitive damages must be dismissed. To claim punitive damages in New Jersey, the plaintiff must "prove by clear and convincing evidence that defendants had acted maliciously or in 'wanton and willful disregard of another's rights.'" *DiMaria Const., Inc. v. Interarch*, 799 A.2d 555, 563 (N.J. Super Ct. App. Div. 2001). When considering a motion to dismiss a cause of action for punitive damages, the "threshold question for the court is to identify whether the plaintiff has stated a tort independent of the contract." *Roman Catholic Diocese of Rockville Ctr. v. Gen. Reins. Corp.*, No. 16 Civ. 2063, 2016 WL 5793996, at *6 (S.D.N.Y. Sept. 23, 2016) (internal quotation marks and citation omitted); *Streamline Capital, L.L.C. v. Hartford*

*Cas. Ins. Co.*, No. 02 Civ. 8123, 2003 WL 22004888, at *4 (S.D.N.Y. Aug. 25, 2003) ("[R]ecovery of extra-contractual punitive damages requires the allegation of independent tortious conduct."); *see also Carvel Corp. v. Noonan*, 350 F.3d 6, 24 (2d Cir. 2003) ("[I]t is hornbook law that punitive damages are unavailable in ordinary contract actions.").  Because the only independent tort, the tortious interference claim, has been dismissed, Plaintiff has failed to state a tort independent of the contract to which the punitive damages claim could attach.  Accordingly, Defendants' motion to dismiss Plaintiff's punitive damages is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss the SAC is GRANTED in part and DENIED in part.  That portion of Defendants' motion seeking dismissal of Plaintiff's claims for tortious interference with contract and punitive damages is GRANTED.  That portion of Defendants' motion seeking dismissal of Plaintiff's claim for promissory estoppel is DENIED.

The parties are ORDERED to appear for a case management conference on **July 13, 2020**, at **10:40 a.m.**  By **July 6, 2020**, the parties shall submit their joint status report.  The parties should indicate whether they anticipate filing motion(s) for summary judgment and whether they believe the case should be referred to the magistrate judge for settlement discussions.

The Clerk of Court is directed to terminate the motion at ECF No. 49.

SO ORDERED.

Dated: June 18, 2020
      New York, New York

                                                     ANALISA TORRES
                                            United States District Judge